# Gleb Zaslavsky, Esq.

| | |
|---|---|
| **Subject:** | FW: Iterative Capital | DEMAND TO INSPECT BOOKS AND RECORDS |

**From:** Partners @ I.C. <partners@iterative.capital>
**Sent:** Tuesday, April 14, 2020 11:48 AM
**To:** Rika Khurdayan, Esq. <rk@dilendorf.com>
**Cc:** chris@iterative.capital; Gleb Zaslavsky, Esq. <gz@dilendorf.com>; Hilkemann, Adam <ahilkemann@akingump.com>; Mongan, William <wmongan@akingump.com>; Mike Quinn <mike@tripleleo.com>
**Subject:** Re: Iterative Capital | DEMAND TO INSPECT BOOKS AND RECORDS

Hi Rika,

Thank you for your note. Copying our outside legal counsel -- Adam w/r/t Fund Formation and Bill w/r/t to litigation. Also copying Mike w/r/t our Fund Administration.

A few comments from me and thereafter I will only communicate through our outside legal counsel.

- Your address for the Fund is incorrect. We are located at 233 Broadway, Suite 2703, New York, NY 10013
- Your request for demand does so on the basis of mismanagement, self-dealing, waste and/or wrongdoing in connection with our ownership of a separate company called Iterative OTC, LLC. Your clients are clearly misinformed as the Fund rarely, if ever, transacts through the OTC desk. To the extent it has/does, there are no profits generated from the sale or purchase of cryptocurrency, as the OTC desk does not charge a fee for those services.
- Your insinuation about activities deviating from the Partnership's investment goals is also one that is incorrect, as the Fund has been fully deployed for two years now. Offering materials made reference to cryptocurrency mining being the core activity of the Fund, which it continues to be.
- Your characterization of the restructuring being a take-it-or-leave it deal is equally incorrect. Investors have the choice to redeem and withdraw at a marked value of their capital account, roll the assets into a new entity, or receive in-kind their pro-rata assets.
- Your characterization of the reorganization being 100% related to our separate business, Iterative OTC, LLC is incorrect. There is no relation, overlap, or otherwise connection between the proposed new entity and the OTC business other than the management team being the same.
- You mention that no material or definite terms of the restructuring have been disclosed, which is in error. We have provided a 100 page document detailing the restructuring and the new entity. All of the terms are contained therein. We have also sent three update emails dating back to last year regarding the restructuring.

We have had many discussions with your clients and their advisor Masha. Unfortunately, they suffer from buyer's remorse and given the dramatic declines in cryptocurrency over the last two years are resulting in tactics like this to impede our management of the Fund. It's interesting to note that they have never submitted a withdrawal request - even for the liquid portion of their portfolio, for which they are able to redeem from. Not only did we outline all of the risk factors of investing in a Fund such as this in an asset class as volatile as cryptocurrencies, but we have been transparent along the way as a matter of ethos.

Given my bullets above, I believe your books and records demanded are beyond the scope of the statute. Some notes in that regard below (numerated to mirror your request):

1. We will provide both the MPA and any Loan document as it applies between the Fund and the OTC.
2. Triple Leo -- Copied on this email.
3. We don't charge fees.

4. We will not be providing Iterative OTC, LLC's records, broadly. We can, however, share a list of transactions facilitated by the OTC on behalf of the Fund.
5. The OTC only trades in PoW coins -- Mostly being bitcoin. Other coins that have been traded included Decred and ETH.
6. The OTC is registered with FinCEN as a MSB. It is also licensed as a money transmitter.
7. Defer to outside counsel on what, if anything, we will provide. It's clear you and your clients aren't familiar with OTC trading and how the onboarding process works and what the diligence of an OTC desk would entail.
8. We've already shared the general ledger with your clients. Happy to share that with you as well.
9. Sure - We will provide last year's tax filing.
10. To come from Triple Leo.
11. We won't be sharing the names of other limited partners. If you'd like more information from me and Chris personally, we'd be happy to share that.
12. Your client should already have these, but we will be happy to provide them again.
13. Sure - we can provide this information once we've redacted the names of investors. Alternatively, I can provide you with the numbers. We did one closing. There isn't an agreement to contribute capital at a future date.
14. There are no such documents.
15. There are no such documents.
16. Request will be fulfilled by documents produced above.
17. Request will be fulfilled by documents produced above.

Finally, please note that pursuant to Section 4.2(c) of the LPA, all expenses incurred as a result of this document production and beyond as it relates to this matter will be allocated specifically to your client.

Best,
Brandon