

**WILLIAM F. MONGAN**
+1 212.872.7452
wmongan@akingump.com

April 20, 2020

VIA E-MAIL (rk@dilendorf.com)

Rika Khurdayan, Esq.
Dilendorf Khurdayan
60 Broad Street, 24th Floor
New York, New York 10004

    Re:    Demand to Inspect Books and Records Pursuant to Delaware Revised Uniform Limited Partnership Act § 17-305

Dear Rika:

    We are counsel to Iterative Capital, L.P. (the "Partnership") and write in response to your letter dated April 14, 2020, demanding to inspect certain books and records pursuant to Section 17-305. We have reviewed the Demand[1] and consider it deficient under Delaware law. In particular, we take issue with the broad scope of the requests and the stated purposes for the demands for inspection.

    Nevertheless, in an effort to avoid the expense and inconvenience of litigation, the Partnership is willing to produce certain documents. The Partnership is prepared to produce: (i) the Master Cryptocurrency Purchase Agreements between Partnership entities and any OTC Entities; (ii) the April 17, 2019 Promissory Note[2] governing the Revolving Loan issued by Iterative Capital Master, L.P. for use by Iterative OTC, L.L.C. as a trade settlement loan on its standard form thereof; (iii) a record of transactions facilitated by the OTC on behalf of the Fund Complex; (iv) financial statements and portfolio holdings as of the closing of the last two fiscal quarters; (v) the Partnership's 2018 tax returns (the 2019 tax return has not yet been completed); and (vi) a redacted list of the contributions made to the Partnership. Any such production would be subject to (i) a suitable confidentiality agreement and (ii) your client's acknowledgement that it will bear the expense of the collection and preparation of such production.

    The substance of the Demand is discussed in more detail below.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in your letter dated April 14, 2020.

[2] The Revolving Loan was last repaid on July 25, 2019, and the Promissory Note expired on its Maturity Date of December 31, 2019.



Rika Khurdayan, Esq.
Dilendorf Khurdayan
April 20, 2020
Page 2

### 1. The Demand Fails to Identify a Proper Purpose.

In the Demand, you identify four "purposes" to support your requests. Not one of them states a "purpose reasonably related to" the Limited Partner's interest, and therefore there is no basis for an investigation. The Demand is a transparent fishing expedition.

Your first proposed purpose is to "investigate mismanagement, self-dealing, waste and/or wrongdoing . . . including but not limited to determining whether the General Partner [and affiliates] profited . . . in violation of their fiduciary duties to the Limited Partner and the Partnership." As the Limited Partner is aware, the General Partner and its affiliates *do not owe* fiduciary duties to the Limited Partner. Amended and Restated Limited Partnership Agreement ("LPA") § 4.5. Even if they did, this alleged purpose is impermissibly vague: "a stockholder whose stated purpose is investigating mismanagement must provide some evidence to suggest a credible basis" from which a court could infer possible mismanagement or wrongdoing may have occurred. *In re Plains All American Pipeline, L.P.*, 2017 WL 6016570, *2 (Del. Ch. Aug. 8, 2017) (internal quotations omitted).

The Demand's second purpose is to "investigate whether the General Partner accurately and fully disclosed . . . the Partnership's condition . . . in connection with [past activities] and in connection with [the pending restructuring]". This "purpose" is ambiguous; it does not seem to be a purpose as much as a *request* for "true and full information regarding the status of the business and financial condition of the limited partnership". Del. Code Ann. tit. 6, § 17-305(a)(1). Such information *may* be available to a limited partner following the enunciation of a proper purpose, but the simple desire to receive these documents does not qualify. No Delaware court would countenance such bootstrapping.

The third purpose you cite is to "exercise the Limited Partner's rights related to the contemplated restructuring in an informed manner, where no material or definite terms of the restructuring have been disclosed to the Limited Partner and where the proposed restructuring favors Buchanan's and Dannen's separate business". Your characterization is factually wrong and unsupported by any evidence. On or about March 2, 2020, the Limited Partner received the Consent and Disclosure Letter: a fifty-page letter that references all relevant information regarding the proposed restructuring. The Demand's reference to a "separate business" is unclear—which business?—and you provide no basis to infer that the restructuring "favors" any such separate business.



Rika Khurdayan, Esq.
Dilendorf Khurdayan
April 20, 2020
Page 3

Finally, your fourth suggested purpose is to "obtain information to determine whether the General Partner [and its affiliates] have performed their duty of loyalty and fair dealing and acted in good faith . . . ." This purpose is just as flawed as the first: it incorrectly assumes that a duty of loyalty is owed, and presents no evidence that a breach may have taken place.

## 2. The Requests Lack the "Rifled Precision" Required Under Delaware Law.

The Demand is further and separately deficient because it is manifestly overbroad. "In determining the proper scope of a books and records demand on a limited partnership, the Delaware Court of Chancery has relied on case law applying 8 Del. C. s. 220, the corporate analog to Section 17-305." *Plains American*, at *4. A books and records request is limited to those books and records that are "necessary and essential" to the satisfaction of the stated purpose. *Highland Select Equity Fund, L.P. v. Motient Corp.*, 906 A.2d 156, 164 (Del. Ch. 2006).

The wide-ranging, litigation-type requests in the Demand are plainly improper. Inspection under section 17-305 is not discovery; it is a "limited form of document production narrowly tailored to the express purpose of the [limited partner] requesting access . . . ." *Paul v. China MedicalExpress Holdings, Inc.*, 2012 WL 28818, at *6 (Del. Ch. Jan. 5, 2012). As such, requests must be circumscribed with "rifle precision." *Id*. at *8.

Here, the Demand fails to precisely circumscribe the documents sought, or demonstrate how they are "necessary and essential" to satisfy the claimed purpose. Even if you had demonstrated a proper purpose—and you have not—the Demand fails based on the broad scope of the requests themselves.

As noted above, and in spite of the Demand's deficiencies,[3] the Partnership is willing to provide a limited production, which would be subject to a confidentiality agreement and other reasonable conditions.

Please let us know how you would like to proceed. We look forward to resolving this matter.

---

[3] The foregoing is not intended, nor shall it be construed, as a complete recitation of the deficiencies in the Demand, not shall it be construed as a waiver of any rights, remedies or claims which the Partnership may have, all of which are expressly reserved.



Rika Khurdayan, Esq.
Dilendorf Khurdayan
April 20, 2020
Page 4

                        Sincerely,

                        */s/ William F. Mongan*

cc:    Brandon Buchanan