# Iterative Capital Management, L.P.

April 14, 2020

**To:**   The limited partners in Iterative Capital, L.P. and shareholders of Iterative Capital, Ltd. (collectively, the "**Investors**" and, such funds, the "**Feeder Funds**")

**From:** Iterative Capital Management, L.P. (the "**Investment Manager**"), Iterative Capital GP, L.L.C. (the "**General Partner**") and the board of directors of Iterative Capital, Ltd. (the "**Board**" and, together with the Investment Manager and the General Partner, "**Iterative**")

**RE:**   Updated Terms -- Conversion and Consolidation of Iterative Capital Fund Structure

Iterative previously communicated with you the terms of the conversion and consolidation of the Iterative Capital Fund Structure via letter dated March 1, 2020 (the "**Original Consent and Disclosure Letter**"). In the Original Consent and Disclosure Letter, Iterative described a series of Proposed Transactions that, if the requisite Investor Written Consents were received by March 27, 2020, would take place in order to provide immediate liquidity to Investors who wish to exit their investment in the Fund Complex or the ability for Investors who wish to continue their investment in the Fund Complex' mining activities to do so through a more streamlined and cost-efficient structure. On March 18, 2020, Iterative communicated to you via email that it had determined to extend the deadline to receive Investor Written Consents until April 27, 2020 in order to provide additional time to consider the Proposed Transactions in light of the impact that COVID-19 has had on the global economy. Iterative is now writing to update the terms of the Proposed Transactions as communicated in the Original Consent and Disclosure Letter, and further extend the deadline for receiving Investor Written Consents as required by applicable regulations **until midnight, New York, New York time on April 28, 2020**. Capitalized terms used but not defined herein have the meaning assigned to such terms in the Restructuring Consent and Disclosure Letter.

As described in the Original Consent and Disclosure Letter, the Proposed Transactions were to be effected at the December 31, 2019 valuation of the Fund Complex' assets (the "**Original Valuation**"). Due to the impact of recent market volatility caused by COVID-19 on the Master Funds' investments and delay in consummating the Proposed Transactions until after the end of the first quarter of 2020, Iterative has determined to base the Proposed Transactions on an updated valuation of the Fund Complex' assets, instead of the Original Valuation. Accordingly, all amounts calculated in order to effect the Proposed Transactions will be based on the net asset value of each Feeder Fund and Master Fund as of March 31, 2020 (as calculated in accordance with the applicable governing documents, the "**New Valuation**"). Copies of the New Valuation have been provided to Investors via separate communication  with the Fund Complex' March 31, 2020 financials.

Investors should note that the New Valuation reflects a significant decline in the value of the Master Funds' assets (approximately 30%) compared to the Original Valuation. As such, Exiting Investors will receive less cash upon being redeemed and Continuing Investors will receive a lower basis in Mining NewCo based on the assets that are to be transferred to Mining NewCo as part of the Proposed Transactions. As was true of the Original Valuation, there is no guarantee that the New Valuation will reflect the fair market value of the Fund Complex' assets

at the time the Proposed Transactions are consummated (assuming the requisite level of Investor Written Consents are received), nor is there any guarantee as to the performance of Mining NewCo's investments once the Proposed Transactions have been consummated and existing mining assets have been transferred in-kind from the Fund Complex to Mining NewCo.

**IMPORTANT NOTE:** As many Investors have already pointed out, the March 31, 2020 "Investor Statements" reflect a $0 ending net asset value. This does not mean the value of your investment was $0. In connection with the Proposed Transactions, the Fund Complex' administrator (Triple Leo) has indicated that this is the proper method of showing that the Proposed Transactions are currently intended to be consummated based on the March 31, 2020 valuations. Essentially, for purposes of the financial statements, the value of your investment as of March 31, 2020 is shown as the withdrawal (redemption) value, as if your entire investment were being withdrawn (redeemed) as of March 31, 2020, which is currently the last valuation date as of which the Fund Complex will continue to function as an investment fund.[1] However, the actual effectiveness of the Proposed Transactions and the actual transactions that will occur will be as described in the Original Consent and Disclosure Letter, as modified to date.

**OTHER THAN WITH RESPECT TO THE CHANGE IN VALUATION OF THE FUND COMPLEX' ASSETS DESCRIBED ABOVE AND THE EXTENDED DEADLINE BY WHICH INVESTOR WRITTEN CONSENTS MUST BE RECEIVED, ALL TERMS AND ASSOCIATED RISKS OF THE PROPOSED TRANSACTIONS WILL REMAIN THE SAME AS DESCRIBED IN THE ORIGINAL CONSENT AND DISCLOSURE LETTER.**

Any Investor that has previously submitted its Investor Written Consent to Iterative and does not wish to change its election to be a Continuing Investor or Exiting Investor as provided therein does not need to take any action in response to this letter. Any Investor who has already submitted its Investor Written Consent to Iterative but wishes to change its election to be a Continuing Investor or Exiting Investor as provided therein, as well as any Investor who has yet to respond to Iterative with its Investor Written Consent, has **until midnight, New York, New York time on April 28, 2020**, in order to change or make its election with respect to the Proposed Transactions. Attached hereto is the Investor Written Consent contained in Exhibit B to the Original Consent and Disclosure Letter, which is still the valid form of Investor Written Consent that Investors must return to Iterative if they have not already done so (or if they wish to change their prior election).

As explained in the Original Consent and Disclosure Letter, Investors who do not timely respond (i.e., by midnight, New York, New York time on April 28, 2020) or who do not elect to be either an Exiting Investor or Continuing Investor will be mandatorily redeemed prior to the effectiveness of the Proposed Transactions through an in-kind distribution of their pro rata share of the Master Funds' assets (and bear any cost and tax liability associated with such in-kind distribution). Such in-kind distribution is expected to consist of both crypto assets (in the form of a hardware wallet) and mining equipment (disconnected from the internet and packaged in a shipping container at the expense of the receiving Investor).

---

[1] Accordingly, the New Valuation is the March 31, 2020 valuation shown prior to the withdrawal (redemption) being booked for purposes of the Fund Complex' financial statements.

The information in this letter and the Original Consent and Disclosure Letter (along with its cover letter) comprise all of the material information that will be provided by Iterative. Neither Iterative nor any constituent fund of the Fund Complex makes any recommendation to the Investors as to whether or not they should participate in this exchange offer. Each Investor must make his/her own decision as to whether or not to participate in the exchange offer. In doing so, each Investor should consult with his/her own advisors, including his/her own tax, financial, immigration, and legal advisors, before making any decisions regarding the exchange offer.

Should you have any questions, please contact Brandon Buchanan directly at: ████ @iterative.capital.

THIS LETTER AND THE INFORMATION INCORPORATED BY REFERENCE HEREIN ARE "CONFIDENTIAL INFORMATION" AND ACCORDINGLY, ARE SUBJECT TO THE APPLICABLE PROVISIONS OF THE GOVERNING DOCUMENTS OF THE FUND COMPLEX AND THE SUBSCRIPTION DOCUMENTS OF THE FEEDER FUNDS.

Thank you for your support and your consideration of these matters.

| | | |
|---|---|---|
| **Iterative Capital Management, L.P.** | **Iterative Capital GP, L.L.C.** | **Board of Directors of the Offshore Fund** |
| By: Iterative Instinct UPG, LLC, its general partner | | |
| | | |
| **Brandon Buchanan** | **Chris Dannen** | |

---

Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of the Mergers or the other Proposed Transactions or determined whether this Consent and Disclosure is accurate or adequate. Any representation to the contrary is a criminal offense.

## EXHIBIT B

## ITERATIVE CAPITAL, L.P. AND ITERATIVE CAPITAL, LTD.

### INVESTOR WRITTEN CONSENT

*All capitalized terms used in this Investor Written Consent but not defined shall have the meanings ascribed to such terms in the cover letter to which this Investor Written Consent is attached.*

**As more fully described in the Consent and Disclosure Letter, this Investor Written Consent is being used to seek consent of the Investors to the Proposed Transactions.**

The Investor agrees that he/she has had sufficient opportunity to (i) review and understand the materials relating to the Proposed Transactions, including, but not limited to, those sections of the attached Consent and Disclosure Letter dealing with risk factors, conflicts of interest, expenses (including, but not limited to, associated transaction expenses), and tax consequences of the Proposed Transactions, (ii) ask questions of, and receive answers from, the Investment Manager or its affiliates relating to all materials provided in connection with the Proposed Transactions, and (iii) obtain any additional information that the Investment Manager can acquire without unreasonable effort or expense prior to midnight, New York, New York time on March 27, 2020, that is necessary to evaluate the merits and risks of the Proposed Transactions and its election with respect thereto.

The Investor hereby directs Iterative to effectuate the Proposed Transactions when it receives this completed and executed Investor Written Consent. The Investor hereby acknowledges that the election with respect to becoming a Continuing Investor or Exiting Investor on the signature pages hereto is binding and irrevocable and may not be withdrawn, even in the event of an extension of the period of time during which the exchange offer is open.

The Investor acknowledges and agrees that each warranty, representation, covenant, and agreement made in, and all other information provided in, the subscription documents that he/she submitted to become an Investor of the relevant Feeder Fund (the "**Subscription Documents**") is still true, accurate, and complete as of the date hereof. The Investors further agrees to update any information in such Subscription Documents as soon as possible after discovering that such information is no longer true, accurate, or complete.

The Investor acknowledges that it made representations as to its status as an "accredited investor" as represented in its Subscription Documents and, if electing to be a Continuing Investor, this Investor Written Consent. The Investor further agrees that if its status as an "accredited investor" has changed since it submitted its Subscription Documents or it is otherwise a non-accredited investor, it will automatically be deemed an Exiting Investor, regardless of its response below.

The Investor acknowledges and agrees that he/she possesses by himself/herself, or together with his/her professional advisors, sufficient knowledge of the investment, legal and tax consequences of participating in the Proposed Transaction in the capacity corresponding to its election to participate as either an Exiting Investor or Continuing Investor on the Investor's

signature page to make such an informed and sophisticated investment decision. The Investor certifies that he/she has not received any investment, legal or tax advice from any constituent fund of the Fund Complex, the General Partner, the Investment Manager or Akin Gump Strauss Hauer & Feld LLP ("**Akin Gump**") and understands that Akin Gump acts as U.S. counsel to the constituent funds of the Fund Complex, the General Partner, and their respective affiliates. The Investor also understands that, in connection with the Proposed Transactions, and ongoing advice to the constituent funds of the Fund Complex, the General Partner, the Investment Manager and their respective affiliates, Akin Gump will not be representing Investors in the Feeder Funds, including the Investor, and no independent counsel has been retained to represent the Investor, other than any counsel or professional advisors retained by such Investor.

Except as otherwise provided in the current Domestic LPA or Offshore Articles, as applicable, the current limited partnership agreements of the Master Funds, or, with respect to Continuing Investors the Mining NewCo LLCA, the Investor, on behalf of himself/herself, his/her affiliates, and each of their respective employees, officers, directors, owners, shareholders, insurers, representatives, agents, successors, and assigns, expressly, irrevocably, and unconditionally fully and forever waives, releases, and discharges each constituent fund of the Fund Complex (including Mining NewCo), the General Partner, the Investment Manager, and any of their respective affiliates from any and all claims, demands, damages, actions, causes of action, debts, obligations, and liabilities of any kind whatsoever whether known or unknown, arising out of or attributable to (i) the entire process by which the Investor will participate in the Proposed Transactions as an Exiting Investor or Continuing Investor when Iterative receives his/her executed signature page to the Investor Written Consent and directing Iterative to give effect to such exchange, and (ii) with respect to Continuing Investors, the performance of the Investor's investment in Mining NewCo, as further evidenced in the Mining NewCo LLCA, as amended, revised or supplemented from time to time.

*[Signature pages follow]*

<u>**This offer will expire at midnight, New York, New York time on March 27, 2020**</u>.

<u>Investors who do not timely respond *or* who do not elect to be either an Exiting Investor or Continuing Investor will be mandatorily redeemed prior to the effectiveness of the Proposed Transactions through an in-kind distribution of their pro rata share of the Master Funds' assets. Therefore, if you do not consent to the Proposed Transactions, you may simply retain these materials and wait to be redeemed.</u>

By electing to participate as an Exiting Investor or Continuing Investor, each Investor will approve the Proposed Transactions (including the conversion of the Domestic Fund, which approval will also serve as a consent to the conflicts and risks associated with the Proposed Transactions and the adoption of the Mining NewCo LLCA, as well as a waiver of any applicable provisions of the Domestic LPA or Offshore Articles, as applicable (and the limited partnership agreements of the Master Funds).

<u>**Please check only ONE box below:**</u>

❑ **I consent to the Proposed Transactions and desire to be a <u>Continuing Investor</u>, continue my investment through Mining NewCo and become bound by the Mining NewCo LLCA as a member thereof.**

> By checking the box above, the Investor hereby acknowledges that he/she has received, read, and understood the Mining NewCo LLCA, which will go into effect once the Domestic Fund has converted into a limited liability company, and has been given the opportunity to (i) ask questions of and receive answers from the General Partner or one of its affiliates, including the Investment Manager, concerning the terms and conditions of the Mining NewCo LLCA and other matters pertaining to the conversion of the Domestic Fund, and (ii) obtain any additional information that the General Partner can acquire without unreasonable effort or expense that is necessary to evaluate the conversion of the Domestic Fund and the exchange of interests hereby. The Investor hereby approves and consents to the execution of the Mining NewCo LLCA, directs the Investment Manager as his/her true and lawful attorney-in-fact, with full power of substitution, to execute such Mining NewCo LLCA once the Domestic Fund has been converted, and agrees to be bound by all of the terms and provisions of the Mining NewCo LLCA. The Investor understands and agrees that the foregoing power-of-attorney is a special power-of-attorney and is coupled with an interest in favor of the Investment Manager, and as such it will: (i) be irrevocable and continue in full force and effect notwithstanding the subsequent death or incapacity of any party granting the foregoing power-of-attorney, regardless of whether the Investment Manager shall have had notice thereof; and (ii) survive the delivery of an assignment by the Investor of the whole or any portion of my membership interest in Mining NewCo.

> <u>By checking the box above, the undersigned hereby acknowledges that it is an "accredited investor," as such term is defined in the U.S. Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.</u> Please refer to <u>Appendix I to this Exhibit B</u> for a list of the criteria pursuant to which you may qualify as an accredited investor. If you are not able to truthfully make the foregoing representation,

you will be deemed to be an Exiting Investor. If you have any questions with respect to your status, please contact the Investment Manager for a questionnaire.

❑ **I consent to the Proposed Transactions and desire to be an <u>Exiting Investor</u> and be redeemed, for cash, from the relevant Feeder Fund.**

By checking either box above, the undersigned (to the extent the undersigned is a shareholder in the Offshore Fund) (a) understands and agrees that, in light of the Proposed Transactions, the Offshore Fund will ultimately be struck-off and dissolved pursuant to section 156 of the Companies Law (2020 Revision) of the Cayman Islands, and represents and warrants that it will not apply to the Grand Court of the Cayman Islands for the reinstatement of the Offshore Fund and its restoration to the Cayman Islands Companies Register (to the extent eligible to do so). The undersigned further understands that the Offshore Fund will not be recommending to its shareholders that it be placed in voluntary winding up and voluntary liquidators will not be appointed. The undersigned further represents and warrants that it will not pass any special resolution to the effect that the Offshore Fund be placed in voluntary winding up.

<u>Investors who do not timely respond **or** who do not elect to be either an Exiting Investor or Continuing Investor will be mandatorily redeemed prior to the effectiveness of the Proposed Transactions through an in-kind distribution of their pro rata share of the Master Funds' assets. Therefore, if you do not consent to the Proposed Transactions, you may simply retain these materials and wait to be redeemed.</u>

[*Signature pages continued*]

By signing below, the Investor (a) agrees to the terms of the Investor Written Consent and (b) directs Iterative to effectuate the Proposed Transactions and its election with respect thereto.

Dated: _____, 2020

_____
Name of Investor's Spouse
 *(if a natural person and purchased jointly)*

_____
Signature of Spouse
*(if a natural person and purchased jointly)*

_____
Name of Investor

_____
Investor's Signature

_____

_____
Name and title or representative
capacity, if applicable

**NOTES**

1.  If the Investor is a corporation, this form must be executed under its common seal or the hand of a duly authorized officer.

2.  In the case of joint holders of an interest as an Investor in a Feeder Fund, any holder may sign this form (other than a natural person who purchased jointly).

The relevant Iterative bodies accept the Investor's election with respect to the Proposed Transactions and, based on such election and its status as an "accredited investor" (if electing as a Continuing Investor), will effect the Proposed Transactions with respect to the Investor's election as a(n) _____ Investor.

**Iterative Capital Management, L.P.**
By: Iterative Instinct UPG, LLC, its general partner

**Iterative Capital GP, L.L.C.**

**Board of Directors of the Offshore Fund**

**Brandon Buchanan**

**Chris Dannen**

Dated: _____, 2020

You should return your completed Investor Written Consent to the Manager using the enclosed prepaid overnight delivery package, or:

| Via hand delivery or regular mail or overnight courier to:<br><br>Iterative Capital Management, L.P.<br>233 Broadway, Suite 2703<br>New York, NY 10279<br>(917) 288-5544 | Via email in PDF form to:<br><br>█████@iterative.capital<br><br>*Please include "Fund Restructuring" in the subject line.* |
|---|---|

## <u>APPENDIX I</u>

### ACCREDITED INVESTOR CRITERIA

#### <u>FOR NATURAL PERSONS:</u>

☐    The Subscriber is a *natural person* whose individual net worth, or joint net worth with that person's spouse, at the time of purchase exceeds $1,000,000, excluding the value of the Subscriber's primary residence;[2]

☐    The Subscriber is a *natural person* with individual income (without including any income of the Subscriber's spouse) in excess of $200,000 or joint income with that person's spouse of $300,000, in each of the two most recent years and who reasonably expects to reach the same income level in the current year; or

☐    The Subscriber is a trust that is revocable or able to be amended by the grantor at any time or an individual retirement account and the grantor of the grantor trust or the owner of the individual retirement account is a *natural person* who meets either or both of the requirements described above.

#### <u>FOR ENTITIES:</u>

☐    The Subscriber is an *entity* with total assets in excess of $5,000,000 that was not formed for the purpose of investing in the Partnership and is one of the following:

    ☐    a corporation;

    ☐    a partnership;

    ☐    a limited liability company;

    ☐    a business trust; or

    ☐    a tax-exempt organization described in Section 501(c)(3) of the Code;

☐    The Subscriber is a personal (non-business) trust, other than an employee benefit trust, with total assets in excess of $5,000,000 that was not formed for the purpose of investing in the Partnership and whose decision to invest in the Partnership has been directed by a person who has such knowledge and experience in financial and business matters that such person is capable of evaluating the merits and risks of the investment;

---

[2]    An individual need not deduct from his or her net worth the amount of mortgage debt secured by an excluded primary residence other than (i) the amount by which the mortgage liability exceeds the fair value of the residence and (ii) any increase in the amount of the debt secured by the primary residence in the 60 days preceding the date hereof unless the increase was a result of the acquisition of the residence.

☐   The Subscriber is an employee benefit plan within the meaning of Title I of ERISA, (including an individual retirement account), which satisfies at least one of the following conditions:

   ☐   it has total assets in excess of $5,000,000;

   ☐   the investment decision is being made by a plan fiduciary that is a bank, savings and loan association, insurance company or registered investment adviser; or

   ☐   it is a self-directed plan (*i.e.*, a tax-qualified defined contribution plan in which a participant may exercise control over the investment of assets credited to his or her account) and the decision to invest is made by those participants investing, and each such participant qualifies as an accredited investor;

☐   The Subscriber is an employee benefit plan established and maintained by a state, its political subdivisions or any agency or instrumentality of a state or its political subdivisions that has total assets in excess of $5,000,000;

☐   The Subscriber is licensed, or subject to supervision, by federal or state examining authorities such as a "bank," "savings and loan association," "insurance company," or "small business investment company" (as such terms are used and defined in 17 CFR §230.501(a)) or is an account for which a bank or savings and loan association is subscribing in a fiduciary capacity;

☐   The Subscriber is registered with the Securities and Exchange Commission as a broker or dealer or an investment company; or has elected to be treated or qualifies as a "business development company" (within the meaning of Section 2(a)(48) of the Investment Company Act of 1940, as amended (the "***Investment Company Act***"), or Section 202(a)(22) of the Investment Advisers Act of 1940, as amended (the "***Investment Advisers Act***")); or

☐   The Subscriber is an entity in which *all* of the equity owners are persons described above.[3]

---

[3]   If the entity is an irrevocable trust, please contact Iterative to discuss whether the trust may be "looked through".