USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __May 20, 2020__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------X
KDH CONSULTING GROUP LLC,                    :
                                             :
                         Plaintiff,          :        20 Civ. 3274 (VM)
                                             :
      - against -                            :        **DECISION AND ORDER**
                                             :
ITERATIVE CAPITAL MANAGEMENT L.P., :
et al.,                                      :
                                             :
                         Defendants.         :
--------------------------------------X

**VICTOR MARRERO, United States District Judge.**

     Plaintiff KDH Consulting Group LLC ("KDH") brought this
action against Iterative Capital Management L.P.
("Iterative"), Iterative Capital GP, LLC, Iterative OTC, LLC
("Escher/Iterative OTC"), Iterative Mining, LLC, Brandon
Buchanan, and Christopher Dannen (collectively,
"Defendants"). KDH sought an Order to Show Cause and Temporary
Restraining Order to enjoin Defendants from converting
Iterative Capital, L.P. (the "Partnership") into an operating
limited liability company (the "Restructuring") and taking
other actions related to the Restructuring. (See "Complaint,"
Dkt. No. 1; "Memorandum of Law," Dkt. No. 5.) The Court (Part
I) granted the Temporary Restraining Order on April 27, 2020,
and scheduled the preliminary injunction hearing for May 11,
2020, at 10:00 a.m. (See "TRO," Dkt. No. 9.) By letter dated
May 1, 2020, Defendants sought immediate relief from the TRO

and argued that KDH was unlikely to prevail at the preliminary injunction hearing. (See "May 1 Letter," Dkt. No. 14.) Consistent with the Court's order (see Dkt. No. 15), KDH responded by letter on May 4, 2020. (See "May 4 Letter," Dkt. No. 17.)

In a telephone conference on May 5, 2020, the Court alerted the parties of its intent to construe the May 1 Letter as a motion to dissolve the TRO pursuant to Federal Rule of Civil Procedure 65(b)(4) ("Rule 65(b)(4)") (the "Motion"). (See Docket Minute Entry Dated May 5, 2020.) During the conference, the Court heard the parties' arguments regarding whether KDH had demonstrated irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping in KDH's favor.[1] Based on the parties' arguments and the Court's review of the Complaint, the Memorandum of Law, the Declarations of Rika Khurdayan (see "Khurdayan Decl.," Dkt. No. 6) and Wayne Hatami

---

[1] See Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers, 415 U.S. 423, 439 (1974) ("[If] the parties, at the time of the hearing on the motion to dissolve the restraining order, find themselves in a position to present their evidence and legal arguments for or against a preliminary injunction," then the court "may proceed with the hearing as if it were a hearing on an application for a preliminary injunction" in which "the party seeking the injunction bear[s] the burden of demonstrating the various factors justifying preliminary injunctive relief . . . .").

(see "Hatami Decl.," Dkt. No. 27[2]) and accompanying exhibits, the Motion as set forth in the May 1 Letter, and the May 4 Letter, the Court found that injunctive relief was not merited. Specifically, the Court found that KDH had not made a sufficiently compelling showing of irreparable harm, and further found that the balance of the equities did not weigh in KDH's favor. Therefore, the Court granted the Motion to dissolve the TRO pursuant to Rule 65(b)(4). (See "Order," Dkt. No. 18.) The Court indicated that a decision memorializing its ruling would follow. (Order at 2.) The Court now issues this Decision setting forth in greater detail the reasons for its Order.

## I.    BACKGROUND[3]

### A.    KDH's Allegations

KDH became a limited partner in Iterative Capital, L.P. (the "Partnership," and together with Iterative Capital Master, L.P. and Iterative Mining Master, L.P., the "Fund Complex") in January 2018 with a $1,000,000 investment. Iterative provided KDH with a subscription agreement, a

---

[2] KDH originally filed the Hatami Declaration and its accompanying exhibits under seal, as permitted (temporarily) by the Court (Part I). (See Dkt. Nos. 8, 10.) The Court ordered the parties to submit a proposed protective order (see Dkt. Nos. 19, 23), following which KDH refiled, in redacted form, the Hatami Declaration and accompanying exhibits (see Dkt. No. 27).

[3] The factual background below derives from the Complaint, the Memorandum of Law, the Khurdayan Declaration, and the Hatami Declaration. Throughout, the page numbers of the exhibits to the declarations refer to the page numbers of the document.

limited partnership agreement ("LPA"), and a Private Placement Memorandum ("PPM").

KDH alleges that Defendants fraudulently induced it into investing in a cryptocurrency investment and trading fund by misrepresenting the purpose of the fund, its prior performance history, and the liquidity options. Brandon Buchanan and Christopher Dannen (the "Individual Defendants") allegedly promised a highly liquid fund with quarterly withdrawal rights, with 70 percent of the assets invested in trading cryptocurrencies and network tokens and the remaining 30 percent invested in cryptocurrency mining operations including cryptocurrency mining equipment. To the contrary, KDH alleges, Defendants knew at the time KDH entered the Partnership that cryptocurrency trading was no longer viable, and planned to use KDH's funds for "highly illiquid mining operations." (Complaint ¶ 3.) For example, KDH points to a statement made on December 10, 2019 by a principal of Iterative, Leo Zhang, indicating that Iterative's strategy of focusing on mining (instead of trading cryptocurrencies and network tokens) was formed in 2016-2017. According to KDH, Defendants' offering documents failed to disclose their primary investment objective and strategy and failed to reflect Iterative's actual prior performance.

Concurrently with KDH's initial investment, the cryptocurrency market (in particular, Bitcoin) declined. When KDH requested immediate withdrawal, Buchanan assured KDH that their funds had not yet been invested, that the Fund Complex would not invest heavily in Bitcoin, and that KDH would be able to withdraw at any time. Then, to prevent KDH and other investors from withdrawing funds, Defendants allegedly made the portfolio illiquid by deviating from the stated investment strategy and turning to mining, including spending $6.5 million of the remaining assets on "rapidly depreciating mining equipment." (Complaint ¶ 11.) Even though mining was meant to be a "minor side strategy" comprising "up to 30% of the assets," Iterative eventually spent "half of the fund's total assets" on the mining equipment. (Complaint ¶ 41; Memorandum of Law at 3.) This led to losses including $3,400,000 in depreciation to the mining equipment by the end of 2019. To pay for the Fund Complex's shift to mining, Defendants set aside a substantial part of the funds into a "side-pocket." (Complaint ¶¶ 12, 58.) KDH alleges that Defendants withheld information about what they were doing.

KDH also alleges that Defendants engaged in self-dealing with their affiliated entities, including Escher/Iterative OTC (Defendants' over-the-counter cryptocurrency trading business) and Iterative Mining LLC (Defendants' separate

mining company). The PPM stated that Escher/Iterative OTC would have an exclusive right to purchase all the digital assets produced and owned by Iterative Mining Master, L.P., in exchange for "more favorable pricing terms." (Complaint ¶ 46.) But Defendants never disclosed these "more favorable pricing terms" to KDH and released only vague information about Escher/Iterative OTC's operations and regulatory compliance. KDH alleges that Defendants breached their duty of good faith and fair dealing by putting the interests of Escher/Iterative OTC ahead of the interests of the Partnership, and by "attempting to retrofit" the Fund Complex's operations so that any mined digital assets were funneled to Escher/Iterative OTC, such that Individual Defendants personally profited. (Complaint ¶ 80.)

In December 2019, Defendants told KDH and the other investors of their plan to convert the Fund Complex to an LLC through a series of transactions. The Restructuring would also consolidate the Fund Complex with Escher/Iterative OTC. On March 1, 2020, Defendants gave KDH and the other investors three options: (1) continue as an investor in the new venture, (2) withdraw from the Fund Complex in exchange for a refund based on the remaining assets less a deduction for Restructuring expenses, or (3) receive a pro rata share of assets-in-kind (digital assets and cryptocurrency mining

equipment) less shipping expenses. Defendants asked for KDH's and other investors' consent for the Restructuring by midnight on April 28, 2020 (the "April 28 Offer").

B.   Order to Show Cause

On April 27, 2020, the Court (Part I) granted a TRO that (1) enjoined Defendants from carrying out the Restructuring; (2) enjoined Defendants from acting on the April 28 Offer (including distributing assets in kind); (3) prohibited Defendants from destroying documents; (4) enjoined Defendants from taking any action that would impair the value of the Fund Complex; and (5) directed Defendants to turn over the books and records specified in KDH's demand dated April 14, 2020.[4] The Order to Show Cause directed Defendants to address the relief granted by the TRO in addition to the following requested relief: redeeming to KDH its portion of the Fund Complex's liquid portfolio without charging Restructuring expenses; enjoining Iterative Capital GP, LLC and its affiliates from acting as the general partner of the Partnership; and enjoining Defendants from paying costs associated with this litigation out of the Fund Complex.

C.   Defendants' Arguments

---

[4] The fifth provision, relating to the production of certain books and records, was suspended by the Court's Order dated May 1, 2020. (See Dkt. No. 16.) The Court notes that the date of the request for books and records was given in the TRO as April 14, 2018, which appears to be incorrect. (See Khurdayan Decl. Ex. B.)

Defendants wrote to the Court seeking immediate relief on May 1, 2020. Defendants argue, first, that the TRO is causing irreparable harm to other investors and to unrelated businesses named as Defendants. With respect to other investors, while two thirds have chosen to convert their investment into an interest in the new entity, one third opted to liquidate, but cannot do so while the TRO is in place; these investors' funds may be imperiled by the TRO due to the volatility of the market. With respect to unrelated businesses, Defendants argue that numerous Iterative entities named as defendants have only a "tenuous relation to the issues being litigated." (May 1 Letter at 2.) In particular, they note that the Complaint does not identify any agreements between KDH and Escher/Iterative OTC, a separate money services business that acts as a wholesale principal trading firm for cryptocurrencies. Yet, as a result of the TRO, Escher/Iterative OTC's account has been flagged by trading partners, resulting in the effective suspension of its business.

Relatedly, Defendants assert that because money damages would make KDH whole, KDH cannot demonstrate that it would suffer irreparable harm such that a TRO or a preliminary injunction would be appropriate. Defendants note that the law is clear that monetary damages do not constitute irreparable

harm, absent insolvency. Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999). Separately, Defendants note that the Partnership would not be liable for a judgment; in fact, the Partnership is named as a nominal plaintiff.

Defendants also point out that the only emergency is one of KDH's making. KDH had months of advance notice -- since December 20, 2019 -- of the plan to restructure. KDH received extensive disclosures, including over 100 pages on March 1, 2020, yet waited until the eve of the April 28 Offer to seek a TRO ex parte. Defendants also note that they had no notice of the TRO -- KDH provided Defendants with copies of the papers only after filing. (May 1 Letter at 4.)

Defendants make several arguments regarding the appropriateness of venue and the Court's jurisdiction over KDH's claims. They assert that with respect to claims arising under Delaware Revised Uniform Limited Partnership Act ("DRULPA"), pursuant to which KDH requested documents, enforcement actions "shall be brought in the Court of Chancery" of Delaware, which has "exclusive jurisdiction." DRULPA § 17-305.[5] More generally, the LPA contains an

_____

[5] Defendants contend that not only does the Court not have jurisdiction over the Section 17-305 claim, but by requiring Defendants to comply with KDH's document request pursuant to DRULPA Section 17-305, the TRO imposes an enormous burden on Defendants and does not merely maintain the status quo. They point out that KDH does not acknowledge the standard to obtain

exclusive venue provision, and Defendants argue that KDH has thus consented to litigate all claims arising under the LPA in Delaware Chancery Court.

Lastly, Defendants contend that KDH is not likely to succeed on the merits. They point to instances where KDH misquoted the PPM, which, in the section called "Investment Strategy/Purpose" of the executive summary, states that the Partnership seeks to appreciate "by investing all of its investible assets in the Master Funds, which invest, directly or indirectly, in cryptocurrencies and network tokens, as well as in mining operations and equipment relating to the generation thereof." (May 1 Letter at 5 (quoting Hatami Decl. Ex. C, at 1).) Defendants point to key places where KDH has disregarded similar language.

D.   KDH's Response

KDH makes several arguments in its May 4 Letter. In response to Defendants' arguments on irreparable harm, KDH suggests that none of the Defendants could be harmed by injunctive relief because there was no transaction scheduled to close on April 28, 2020 -- and in fact, Defendants had refused to set any deadline for the Restructuring. KDH further

_____

a mandatory injunction, much less attempt to meet it. Furthermore, Defendants argue that most of the requested documents are beyond the scope permitted by Section 17-305. Because the Court suspended this provision of the TRO by Order dated May 1, 2020, the Court need not address the matter further. (See Dkt. No. 16.)

states that Escher/Iterative OTC and Iterative Mining, LLC (1) would not be affected by the TRO, and (2) were named as defendants because the Complaint alleges that they benefited from Defendants' fraudulent conduct. KDH quotes the March 1, 2020 explanation of the Restructuring, which noted that "[t]here are inherent conflicts of interest in this offering" because "affiliates of Iterative will benefit from extending the existence of the Domestic Fund in the form" of the new entity. (May 4 Letter at 5-6 (quoting Hatami Decl. Ex. L, at 6).) KDH also states that it would suffer irreparable harm without injunctive relief by being forced to consent to the April 28 Offer without the additional disclosures they requested from Defendants.

In response to Defendants' arguments regarding the timing of the TRO and the lack of notice, KDH writes that it did provide notice to Defendants' prior counsel. The timing of the TRO was directly caused by Defendants' refusal to provide the books and records requested by KDH, which was only necessary because the December 20, 2019 notice provided "absolutely no information . . . about the upcoming restructuring." (Id. at 3.)

KDH counters Defendants' arguments regarding jurisdiction over its document request by claiming that it is permitted to inspect books and records under the LPA. (Id. at

11

6 (citing Khurdayan Decl. Ex. B, at 1).) KDH points out that it is being forced to acknowledge that it has received all the information it needs. (Id. at 6-7.) With respect to venue, KDH argues that supplemental jurisdiction permits the Court to hear its state law claims. Since venue is appropriate for the Complaint's federal securities fraud claims, KDH argues, venue is also appropriate for the state law claims. (Id. at 7.) KDH notes that the LPA's forum selection clause did not provide any federal district court with jurisdiction over the federal securities fraud claims. It also notes that the Subscription Agreement (through which KDH acquired an interest in the Partnership) did not have a forum-selection clause. (Id. at 7-8.)

Finally, with respect to the merits, KDH alleges that Defendants turned the liquid investment into a "full-blown mining operation," which "locked KDH in an illiquid investment vehicle." (Id. at 2.) Specifically, instead of being limited to 30 percent of the assets, Defendants "expended nearly half of the Fund's assets on mining equipment." (Id.) KDH states that this arrangement permitted Defendants to profit through Escher/Iterative OTC, the affiliated trading entity. (Id.)

## II.  LEGAL STANDARD

Under Second Circuit law, "the standard for an entry of a TRO is the same as for a preliminary injunction." Herrick v. Grindr, LLC, No. 17 Civ. 932, 2017 WL 744605, at *2 (S.D.N.Y. Feb. 24, 2017) (quoting Andino v. Fischer, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)). A court may grant a motion for a preliminary injunction pursuant to Rule 65 when the movant has shown "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 192 (2d Cir. 2004) (internal quotation marks omitted). "The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotation marks and alteration omitted). To demonstrate irreparable harm, the movant must show "an injury that is neither remote nor speculative, but actual and imminent and cannot be remedied by an award of monetary damages." Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006) (internal quotation marks omitted). "When considering a motion for a preliminary injunction, unlike a motion to dismiss, the Court need not accept as true the well-

pleaded allegations in Plaintiff['s] complaint." <u>Victorio v.</u>
<u>Sammy's Fishbox Realty Co.</u>, No. 14 Civ. 8678, 2014 WL 7180220,
at *4 (S.D.N.Y. Dec. 12, 2014) (citing <u>Incantalupo v. Lawrence</u>
<u>Union Free Sch. Dist. No. 15</u>, 652 F. Supp. 2d 314, 317 n.1
(E.D.N.Y. 2009)).

The purpose of an injunction is to preserve the status
quo pending a trial on the merits. <u>Tom Doherty Assocs., Inc.</u>
<u>v. Saban Entm't, Inc.</u>, 60 F.3d 27, 34 (2d Cir. 1995). In
particular, "[e]x parte temporary restraining orders . . .
should be restricted to serving their underlying purpose of
preserving the status quo and preventing irreparable harm
just so long as is necessary to hold a hearing, and no
longer." <u>Granny Goose Foods</u>, 415 U.S. at 439 (internal
citation omitted). Rule 65(b)(4) permits the party adverse to
the TRO to "move to dissolve or modify the order" with 2 days'
notice to the party who obtained the TRO. If the adverse party
moves to dissolve or modify the TRO, "[t]he court must then
hear and decide the motion as promptly as justice requires."
Rule 65(b)(4). A district court need not find proof of changed
circumstances in modifying a temporary restraining order or
preliminary injunction, but rather applies its discretion in
exercising the trial court's inherent power to modify its
orders. <u>Sierra Club v. U.S. Army Corps of Engineers</u>, 732 F.2d
253, 256-57 (2d Cir. 1984). A court may grant a motion to

dissolve a TRO pursuant to Rule 65(b)(4) if the TRO was improperly issued. Rabbi Jacob Joseph School v. Province of Mendoza, 342 F. Supp. 2d 124, 127 (E.D.N.Y. 2004).

### III. DISCUSSION

As the Court stated during the May 5, 2020 teleconference, its decision to dissolve the TRO is based on KDH's failure to demonstrate irreparable harm as well as the Court's finding that the balance of equities tilts in favor of Defendants.

### A. Irreparable Harm

The Court must first determine whether the damages alleged by KDH are economic in nature. It is well-established that money damages do not constitute irreparable harm absent "a finding of current or imminent insolvency" of the defendant such that any judgment may be uncollectible. CapLOC, LLC v. McCord, No. 17 Civ. 5788, 2019 WL 1236415, at *3 (S.D.N.Y. Mar. 18, 2019) (quoting WestLB AG v. BAC Florida Bank, No. 11 Civ. 5398, 2012 WL 3135825, at *5 (S.D.N.Y. Aug. 2, 2012)).

In its Memorandum of Law, KDH points to three irreparable injuries that it claims it will suffer absent a TRO and preliminary injunction: (1) injury arising from the proposed Restructuring and forced consent negating KDH's right to properly calculate and redeem its investment, (2) injury arising from the proposed Restructuring materially changing

KDH's position, including distribution rights and interest in the new post-Restructuring entity, and (3) injury caused by Defendants' refusal to turn over books and records. (Memorandum of Law at 16.)

The first two of these are plainly economic injuries. KDH urges a contrary result, but the cases it cites are distinguishable.

Several of the cases KDH cites in support of its claim that its injuries are not economic involve violations of statutory rights that cannot be redressed with money damages, and these cases are thus distinguishable. For example, KDH writes that irreparable harm "can" be found where a "transaction -- particularly a change-of-control transaction -- . . . is influenced by noncompliance with the disclosure provisions of the various federal securities laws." (May 4 Letter at 7 (quoting MONY Grp., Inc. v. Highfields Capital Mgmt., L.P., 368 F.3d 138, 147 (2d Cir. 2004)).) But in MONY Group, the SEC rules in question mandated certain disclosures to ensure the integrity of shareholder votes; here, KDH cites no parallel disclosure provision mandated by federal law. See Litwin v. OceanFreight, Inc., 865 F. Supp. 2d 385, 401 (S.D.N.Y. 2011) ("MONY thus holds only that a legally deficien[t] proxy statement may give rise to a situation in which failure to grant injunctive relief would lead to

irreparable harm."). Similarly, in <u>Street v. Vitti</u>, 685 F.
Supp. 379, 384 (S.D.N.Y. 1988), the court found irreparable
harm where plaintiffs were about to be discharged as officers
and would lose their statutory right to inspect corporate
books; the court also found irreparable harm in defendants'
plan to sell shares, which would nullify the plaintiffs'
rights under New York's dissolution statute. KDH is not an
officer, and points to no similar statutory right; indeed,
the LPA makes clear that the General Partner, Iterative
Capital GP, LLC, must only "establish such standards as it
deems appropriate regarding the access of Limited Partners to
the books and records of the Partnership." (Hatami Decl. Ex.
B, at 42.) Nor does KDH allege that the corporate records
will be lost or destroyed, or that the Restructuring affects
its future business prospects. <u>See</u>, <u>e.g.</u>, <u>Mgmt. Techs., Inc.
v. Morris</u>, 961 F. Supp. 640, 650 (S.D.N.Y. 1997) (finding
possible irreparable harm where corporate records would be
lost); <u>Alcatel Space, S.A. v. Loral Space & Commc'ns Ltd.</u>,
154 F. Supp. 2d 570, 584 (S.D.N.Y. 2001) (loss of minority
shareholders' rights and breach of agreement leading to loss
of potential future business constituted non-monetary harm).

Cases involving effects beyond the entities in question
are also distinguishable. In an antitrust case, <u>Consolidated
Gold Fields PLC v. Minorco, S.A.</u>, injunctive relief was

necessary to prevent an irreversible change to a global
market. 871 F.2d 252, 261 (2d Cir. 1989). KDH quotes
Consolidated Gold Fields for the proposition that a court
cannot "unscramble the eggs," but while it is true that tender
offers cannot easily be undone, any harm that flows from
permitting the April 28 Offer to proceed would affect only
the Partnership's investors, and would result in money
damages only. Thus, "'unscrambling' -- restoration to pre-
transaction positions -- is not necessary to remedy any harm
if [KDH] succeeds on its claims. [KDH] can be compensated
with an amount of money consistent with the economic harm
suffered." Solus Alt. Asset Mgmt. LP v. GSO Capital Partners
L.P., No. 18 Civ. 232, 2018 WL 620490, at *6 (S.D.N.Y. Jan.
29, 2018).

KDH next argues more generally that "the dilution of a
party's stake in, or a party's loss of control of, a business"
constitutes irreparable harm. (Memorandum of Law at 20
(quoting Int'l Equity Invest., Inc. v. Opportunity Equity
Partners Ltd., 441 F. Supp. 2d 552, 563 (S.D.N.Y. 2006)
(internal quotation marks omitted)).) KDH claims that it will
have a diluted stake in the new post-Restructuring entity,
and that Defendants are "dissipating" its capital account in
the existing Partnership. (Memorandum of Law at 21.) But KDH
is not being forced to invest in the new entity: It can choose

instead to exit. Nor did KDH have "the right to participate in the management" of the Partnership, such that its right is under threat. Int'l Equity Invest., Inc., 441 F. Supp. 2d at 563 (internal quotation marks omitted). (See Hatami Decl. Ex. B, at 29 (specifying that limited partners "may not take any part in the management, control or operation" of the Partnership).) To the extent Defendants are indeed "dissipating" its capital account, that claim can be redressed with money damages.

The Court also finds that KDH's third claimed irreparable injury -- stemming from its inability to see Defendants' books and records before being required to consent to the April 28 Offer -- can be redressed monetarily. In its May 4 Letter, KDH all but abandons its argument that it is entitled to the requested documents under DRULPA Section 17-305, and argues more generally that its demand was reasonable, permitted by the LPA, and in line with Supreme Court precedent allowing district courts to issue orders to enforce a state-granted right to inspect corporate records. The Court is not persuaded. KDH cites no provision of the LPA that would govern its request, and as noted above, the LPA makes clear that Iterative Capital GP, LLC must only "establish such standards as it deems appropriate regarding the access of Limited Partners to the books and records of

the Partnership." (Hatami Decl. Ex. B, at 42.)[6] In the Supreme
Court case cited by KDH, Stern v. South Chester Tube Co., 390
U.S. 606, 609 (1968), the question was whether a federal court
may enforce a right under state law that permitted inspection
of a corporation's books and records; the case did not pertain
to the effect of an exclusive venue provision.  Even if KDH
were entitled to see such documents, and even assuming its
demand was reasonable, the Court finds that any violation of
this right could be redressed with money damages. Indeed, KDH
couches this injury in economic terms when it writes that "if
the requested documents are not provided and KDH does not
consent to the offer," it will be "expelled from the Fund
with no proper liquid refund equal to the value of KDH's
remaining investment." (May 4 Letter at 7.)

Thus, all three of KDH's claimed irreparable injuries
are redressable with money damages and insufficient to
support injunctive relief absent insolvency. "The standard
for demonstrating insolvency is high" and requires "more than
allegations of the defendant's 'weak financial condition.'"
CapLOC, LLC, 2019 WL 1236415, at *3 (quoting Seda Specialty
Packing Corp. v. Am. Safety Closure Corp., No. 95 Civ. 4745,
1995 WL 404821, at *2 (S.D.N.Y. July 7, 1995)). Defendants

---

[6] In contrast, the new post-Restructuring entity does seem to provide for
such inspection. (Hatami Decl. Ex. L, App'x II, at 19.)

argue that KDH does not show, as required to meet the "insolvency" exception to the prohibition on money damages, that the risk of insolvency is "likely and imminent." (May 1 Letter at 4 (quoting CRP/Extell Parcel I, L.P. v. Cuomo, 394 F. App'x 779, 782 (2d Cir. 2010).) In this regard, KDH writes that the Partnership is "at risk of dissipation of all of its funds." (Memorandum of Law at 16.)

Again, the Court is not persuaded.[7] While the Fund has "never been profitable," Defendants' projection of KDH's refund was still $225,120.18 as of April 14, 2020, which suggests the Fund is not insolvent. (Memorandum of Law at 19.) To be sure, the refund estimation does not account for restructuring expenses, and, according to the Hatami Declaration, "Iterative admits [the Restructuring expenses] may deplete the Partnership's assets and KDH's capital account." (Hatami Decl. ¶ 48.) But the evidence for Hatami's statement appears to be scant. In Exhibit M to the Hatami Declaration, an email exchange between Buchanan and KDH's representative, Buchanan declines to confirm whether Restructuring expenses will be equal or less than $100,000,

---

[7] The Court notes that some recent cases have cast doubt on whether the "insolvency exception" to the prohibition on money damages is still valid. See Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc., 149 F. Supp. 3d 376, 393 (E.D.N.Y. 2016) (casting doubt on the insolvency exception following Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999)). The Court need not decide whether the exception exists, because even assuming it does, KDH has not demonstrated imminent insolvency.

though he estimates that that figure would be "on the high
end," and that, of that amount, "KDH would be responsible for
approximately 6.5% as their pro-rata share of costs." (Hatami
Decl. Ex. M, at 1-2.) And while Exhibit N shows an "Ending
Net Asset Value" of $0.00, Exhibit O contains a strongly
worded warning that "[t]his does not mean the value of your
investment was $0," but only that, according to the Fund
Complex's administrator, $0 is the "proper method of showing"
that the Restructuring is "intended to be consummated based
on the March 31, 2020 valuations." (Hatami Decl. Ex. O, at
B2.) Instead, "the value of your investment as of March 31,
2020 is shown as the withdrawal (redemption) value," which
puts the value of KDH's investment, as KDH concedes, at
$225,120.18. (Hatami Decl. Ex. N, at 1.) Furthermore, while
the March 1, 2020 communication discloses that dissolving
legal entities in the Cayman Islands may involve additional
unknown costs, it also states that if expenses exceed the
reserves, the new post-Restructuring entity would bear the
cost. (Hatami Decl. Ex. L, at C16-C17.) Based on these figures
and statements, the Court finds that KDH has not met its
"high" burden of demonstrating insolvency, as opposed to
merely a weak financial condition.

     In short, KDH cannot demonstrate irreparable harm. In
contrast, Defendants would, in fact, be injured by injunctive

relief. KDH claims that Defendants would not experience harm from any injunctive relief because no transaction was scheduled to close on April 28, and so the TRO was not preventing any transaction. This argument is belied by the terms of the TRO, which prevented Defendants, along with "their agents, representatives, employees, or anyone else acting on their behalf, . . . from proceeding with the Restructuring." (TRO at 3.) In this day and age, complicated corporate transactions such as the Restructuring do not generally close, out of the blue, without significant pre-closing work; because the injunction would prevent Defendants from proceeding with the Restructuring, it could cause Defendants harm by increasing costs and uncertainty. As for the claim that no transaction was scheduled to close on April 28, again the TRO itself contradicts KDH's argument, as it "enjoined and restrained" Defendants "from acting on their offer currently set to expire on April 28, 2020, including distributing assets in kind." (TRO at 3.) Indeed, if the TRO did not prevent Defendants from undertaking efforts related to that transaction and the Restructuring, it is unclear what the purpose of the TRO would have been.

Defendants also persuasively argue that the TRO is causing harm to defendant Escher/Iterative OTC, a "separate, FinCen-regulated money services business." (May 1 Letter at

2.) Defendants note that the "Complaint does not identify any agreements between Iterative OTC and Plaintiff, nor could it, as there were no such agreements." (May 1 Letter at 2.) Yet, as a result of the TRO, Escher/Iterative OTC's "account has been flagged by multiple trading partners, thereby limiting its liquidity pool, access to markets and ability to offer competitive pricing." (May 1 Letter at 3.) KDH replies that Escher/Iterative OTC is "not affected by the TRO, which only concerns the restructuring and access to material information about such restructuring," but the Court finds this assertion dubious in light of Defendants' clear statement to the contrary.

Therefore, KDH has not demonstrated that it will suffer an irreparable injury absent injunctive relief, while Defendants have demonstrated that injunctive relief would cause them harm.

B.   <u>Balance of the Equities</u>

Setting aside the merits of KDH's claims, the Court would deny injunctive relief solely on the basis of its holding that KDH has not demonstrated irreparable harm. But even if KDH could demonstrate that its claims raise sufficiently serious questions to make them fair ground for litigation, the balance of equities does not tilt in KDH's favor.

In balancing equities, the Court is struck by the effect of injunctive relief on other investors. Defendants note that one third of investors have opted to liquidate their investments. Injunctive relief would freeze this process. Because the Partnership is invested in a particularly volatile class of assets, preventing it from transacting business could place the assets of all investors in peril, in addition to preventing the one third of exiting investors from proceeding with the liquidation process.

Finally, the Court also finds KDH's claim of emergency to be entirely unpersuasive. KDH had notice, as of the December 20, 2019 communication to investors, that the Fund would be restructured in order "to scale [its] mining operation" (Hatami Decl. Ex. K, at 1), and KDH had notice of the substance of the April 28 Offer (i.e., the three exit options) as of March 1, 2020. (Hatami Decl. Ex. L, at 1, 4.) The urgency stems instead from Defendants' refusal to provide all of the documents KDH demanded, but even here, the equities do not tilt in KDH's favor. Despite knowing about its exit options as of March 1, 2020, KDH waited until April 14, 2020 -- just two weeks before the April 28 Offer -- to request books and records. That same day, April 14, 2020, Buchanan notified KDH's counsel that it would only comply in part with the document request. (Khurdayan Decl. Ex. C, at 1-2.) KDH

filed for injunctive relief almost two weeks later. Even if KDH were entitled to the requested documents -- and as noted above, the Court has serious doubts in that regard -- the equities do not favor KDH.

## IV.   ORDER

Accordingly, it is hereby

**ORDERED** that defendants' motion so deemed by the Court as described above (Dkt. No. 14) to dissolve the Temporary Restraining Order (Dkt. No. 9) dated April 27, 2020 pursuant to Federal Rule of Civil Procedure 65(b)(4) is **GRANTED.**


**SO ORDERED.**


Dated: New York, New York
       20 May 2020


_____
                         Victor Marrero
                           U.S.D.J.