# DILENDORF KHURDAYAN

| | |
|---|---|
| 60 Broad Street, 24th Floor | Rika Khurdayan, Esq. |
| New York, New York 10004 | Partner |
| Tel. 212.457.9797 | Cel. 646.764.1630 |
| Dilendorf.com | rk@dilendorf.com |

TO:   ROBERT BOLLER OF BARNES & THORNBURG LLP     **May 27, 2020**
      445 PARK AVENUE, SUITE 700, NEW YORK, NY 10022

  **VIA ECF AND EMAIL TO** RBOLLER@BTLAW.COM

RE:   KDH CONSULTING GROUP LLC V. ITERATIVE CAPITAL MANAGEMENT L.P. ET AL.
      **20-CV-03274 | PLAINTIFF'S RESPONSE TO DEFENDANTS' PRE-MOTION TO DISMISS LETTER**

Mr. Boller:

    This letter is in response to Defendants' letter, dated May 20, 2020, pursuant to Judge Marrero's Individual Rules ("Letter"). Plaintiff intends to oppose Defendants' motion to dismiss under Fed. R. 12(b)(1) and 12(b)(6), if filed. The allegations of fraud are pleaded with sufficient particularity, are not time barred, and the representations made in the offering documents do not refute but support allegations in the Verified Complaint when considered together with other actions, representations and omissions comprising the overall fraudulent scheme. Plaintiff's "theory of securities law violations rests not upon a single decisive action which manifestly demonstrates [Defendants'] alleged wrongdoing, but on a series of interrelated events which, viewed as a whole, represent the big picture of fraudulent conduct." *Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 640 (S.D.N.Y. 2012).

    At the time of making representations to Plaintiff, Individual Defendants knew that trading cryptocurrency was no longer a viable strategy and set out to build mining operations instead. ¶¶36-37, 39-40, 48, 56, 58, 103-105. Yet, they also knew that it would be much harder to raise funds for highly illiquid mining operations, coupled with their limited prior experience in mining. They intentionally chose to highlight prior trading performance and liquid nature of the fund to convince Plaintiff to put capital at risk. ¶¶1-5, 36, 105. Boilerplate disclosures about speculative nature of the investment and risks, as well as general disclaimers, cannot shield Defendants from intentional misconduct and preclude reasonable reliance on misrepresentations made outside of the agreements. *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140-41 (2d Cir. 2019); *Dodona*, 847 F. Supp. 2d at 647.

    Once Defendants raised the funds, they quickly turned most of the assets illiquid and placed their own interests before those of their investors, profiting via Iterative OTC ("OTC"). Such scheme remains ongoing as they restructure the fund into a mining business at investors' expense, effectively forcing investors to consent and waive any claims based on associated risks and conflicts of interest, as well as lowering the watermark by approximately 80%.

    KDH is willing to make amendments to include this information about restructuring in more detail from exhibits in the docket. Generally, to the extent pleadings are deficient in that they don't (1) fully specify misleading statements made prior to, at the time of and after the investment and the reasons why they're misleading, (2) specifically indicate how OTC is a part of the alleged fraudulent scheme, and (3) contain other specifics mentioned below (all of which may be inferred from Complaint), Plaintiff will seek to amend Complaint to cure such deficiencies.

    **1.  SDNY has jurisdiction despite the forum-selection clause in the Limited Partnership Agreement ("LPA")**. First, for the purposes of the forum selection clause, the claims arose out of the Subscription Agreement ("SA"), which does not contain a forum selection clause. *Roselink Inv'rs, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 225–26 (S.D.N.Y. 2004) (securities dispute arose out of the subscription agreement); See also *Credit Suisse Sec. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103 (S.D.N.Y. 2007), *Phillips v.*

*Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007). Second, SDNY has jurisdiction under the exclusive jurisdiction provisions of 15 U.S.C. § 78aa. See also *Lawrence v. Cohn*, 932 F. Supp. 564 (S.D.N.Y. 1996). Even if applicable, the LPA clause only designates Delaware state court and failed to designate a federal court in Delaware. As such, no forum was selected for adjudicating federal claims. *O & G Carriers, Inc. v. Rosenthal & Co.*, 685 F. Supp. 66, 67 (S.D.N.Y. 1988) ("a state forum is necessarily precluded" by jurisdictional provisions of a federal statute).

In *Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*, 992 A.2d 1239 (Del. Ch. 2010), cited by Defendants, both the subscription agreement and the share sale agreement contained forum-selection clauses and "most of the relevant conduct occurred in" the selected forum. Here, absolutely all relevant events giving rise to this action took place in New York, the SA does not contain a forum selection clause and LPA fails to designate a forum for federal claims. Moreover, Plaintiff is an unsophisticated investor and did not sign the LPA. *See Phillips* at 494 F.3d at 393 ("The first inquiry is whether the clause was reasonably communicated.")

**2.     Counts One and Two are timely and state claims for violations of § 10(b), Rule 10b-5 and § 20 of the 1934 Act**. The SOL period under 28 U.S.C. § 1658 does not begin to run until reasonable discovery of the facts constituting the violation, including scienter, or "until [plaintiff] can plead that fact with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011). "[W]hether a plaintiff had sufficient facts to place it on inquiry notice is often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6)." *Clark v. Nevis Capital Mgmt., LLC*, No. 04 CIV.2702(RWS), 2005 WL 488641, at *8 (S.D.N.Y. Mar. 2, 2005). Here, only subsequent developments, including June 12, 2018 (¶62), February 2019 inquiry (¶64), developments that followed and the proposed 2019-20 restructuring, provided sufficient facts to plead Defendants' violations, including scienter. *See also* ¶¶13, 15, 17, 68-69; *Beach v. Citigroup Alternative Investments LLC*, No. 12 CIV. 7717 PKC, 2014 WL 904650, at *14–15 (S.D.N.Y. Mar. 7, 2014).

Plaintiff sufficiently pleaded Defendants' scienter, as Defendants knew or recklessly disregarded the possibility that the representations in the PPM were false when made. *See Beach v. Citigroup Alternative Investments LLC*, No. 12 CIV. 7717 PKC, 2014 WL 904650, at *14–15 (S.D.N.Y. Mar. 7, 2014); *Gissin v. Endres*, 739 F. Supp. 2d 488, 502 (S.D.N.Y. 2010) ("statements are not protected where defendants had no basis for their optimistic statements and already knew (allegedly) that certain risks had become reality.") Plaintiff adequately alleged misleading statements and specified reasons why the statements were misleading. ¶¶103-105. *Dodona*, 847 F. Supp. at 646 ("Reading the Complaint in its entirety, it is clear that the alleged omission amounts to an allegation that Defendants inaccurately represented the risk, of which they were actually aware, associated with investing in the [red-flagged assets]."); *id.* at 647 ("Complaint indicates that Goldman had determined in late 2006 that the risks associated with subprime-related assets were substantial enough to warrant a major shift in strategy. Yet, in addressing the risks, the Offering Circulars provide only boilerplate statements regarding the 'SPECULATIVE' and risky nature of investing in securities") If necessary, KDH is willing to amend the Complaint to add more statements from PPM where risk disclosures were inaccurate and misleading.

Also, Plaintiff, being unsophisticated and inexperienced in cryptocurrencies, could rely on Defendants' statements outside of the PPM and LPA. *San Diego Cty. Employees Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 120 (S.D.N.Y. 2010). Unlike in *Kelter*, "where a sophisticated investor advised by an investment advisor, invested millions of dollars in an arms length transaction." *Kelter v. Apex Equity Options Fund, LP*, No. 08 CIV. 2911 (NRB), 2009 WL 2599607, at *8 (S.D.N.Y. Aug. 24, 2009) Unsophisticated Plaintiff here relied on Defendants' experience and representations about the investment, did not have financial advisers, and pooled funds from several individuals to be formed specifically for the investment. All while Individual Defendants, who rushed KDH's principals to invest, knew that the transaction was not arm's length, investment strategy was false and associated risks were misrepresented. ¶¶1, 35, 47. KDH is willing to add more detailed allegations about these circumstances, including lack of sophistication, which can be inferred. Further, "[t]he forced sale doctrine provides a cause of action under the securities laws to plaintiffs who are forced to convert their shares for money or other consideration, or forced to fundamentally change the nature of plaintiffs' investments as the result of a fraudulent scheme." *Gordon Partners v. Blumenthal*, No. 02 CIV 7377 LAK AJP, 2007 WL 431864, at *11 (S.D.N.Y. Feb. 9, 2007).

3.      **There is a private right of action under Counts Three and Four**. In *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11 (1979), the Supreme Court has recognized the limited private right of action under the Investment Advisers Act ("IAA") for rescission and restitution. Unlike in *Clark*, this action is also brought derivatively on behalf of the partnership ("there are no factual allegations from which it might be inferred that Clark was a party to an investment advisory contract with Nevis Capital, and no allegations such as might support a derivative claim here." *Clark v. Nevis Capital Mgmt., LLC*, No. 04 CIV.2702(RWS), 2005 WL 488641, at *12–14 (S.D.N.Y. Mar. 2, 2005)). On the other hand, in the court in *In re J.P. Jeanneret Assocs., Inc.*, where investors in feeder funds brought claims against such funds and their fiduciaries, unambiguously held that the IAA, 15 U.S.C. § 80b–6(a) and 15 "renders void any investment contract whose formation or performance would violate the Investment Advisers' Act" in declining defendants' argument that Plaintiffs lacked standing to assert such claims. *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 367 (S.D.N.Y. 2011). Moreover, even if the Court concludes that Plaintiff lacks standing to bring a claim under the IAA against Iterative Capital Management LP ("Iterative"), Individual Defendants and Iterative GP LLC ("GP") acted as investment advisors under the IAA and received compensation. ¶¶1, 82, 127. *See Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1977); *S.E.C. v. Saltzman*, 127 F. Supp. 2d 660, 669 (E.D. Pa. 2000); *S.E.C. v. ABS Manager, LLC*, No. 13CV319-GPC BGS, 2014 WL 7272385, at *4–5 (S.D. Cal. Dec. 18, 2014).

The court in *Wellington* did not hold that there is no private cause of action for aiding and abetting violations of the IAA but only that "none of the recoverable consideration was paid to any of the [aiding and abetting] defendants". *Wellington Int'l Commerce Corp. v. Retelny*, 727 F. Supp. 843, 845–46 (S.D.N.Y. 1989).

4.      **Counts Five through Twelve should stand**. Counts Five and Eight rely on sufficient misrepresentations and omissions of Defendants' regarding securities and demonstrate the overall fraudulent scheme. Also, holder claims must stay as a part of common law fraud allegations. *San Diego Cty. Employees Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 124 (S.D.N.Y. 2010) (New York and Delaware recognize the right to pursue holder claims.) LPA allows to bring Counts Six and Seven. 6 Del. C. § 17–1101; *Employees Ret. Sys. of City of St. Louis v. TC Pipelines GP, Inc.*, No. CV 11603-VCG, 2016 WL 2859790, at *6 (Del. Ch. May 11, 2016) ("partnership agreement may not eliminate the implied contractual covenant of good faith and fair dealing."). In *Norton*, the court enforced the fiduciary duty waiver due to independent expert opinion on which the GP relied in the proposed transaction. *Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354 (Del. 2013). Independently, the IAA imposes fiduciary duties on investment advisers. *Omega Overseas Partners, Ltd. v. Griffith*, No. 13-CV-4202 RJS, 2014 WL 3907082, at *8 (S.D.N.Y. Aug. 7, 2014). Count Nine stays per LPA's provisions. Contrary to Defendants' assertion, §2.5 of the LPA does reference PPM, as it sets forth the Partnership's sole "object and purpose of indirectly investing in Investments," definition of which specifically references PPM. LPA § 1. Count Ten should stay, other than against GP, as they were unjustly enriched at KDH's expense, and KDH agrees to amend Complaint accordingly. Claims related to all valid claims should also stay but KDH is willing to amend Complaint to separate direct and derivative claims.

5.      **Claims against Mining and OTC should stay.** KDH alleges a tight weave of connections between GP, Iterative, OTC and Iterative Mining LLC ("Mining"). *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 406 (S.D.N.Y. 2010). Complaint contains allegations sufficient to infer that OTC and Mining knew of the alleged fraud and enabled/substantially assisted it. *Dodona*, 847 F. Supp. 2d at 652. It may be concluded that OTC and Mining benefitted from the alleged fraud proceeds. ¶¶14, 74-76, 83-85. However, if discovery shows that Mining has not been a part of the scheme, KDH is willing to remove it. OTC's representations were in fact contained in PPM, as it had a right to buy all digital assets from the fund (¶43-44) and promised favorable pricing and consideration to the fund. ¶¶ 46, 103(i)-(j). OTC particularly is so closely connected with the fund that the restructuring was aimed at consolidating the fund with the OTC business. ¶¶ 86, 91, 103(k), 155. If necessary, KDH is willing to amend complaint to be more specific that Count Six and Seven are not asserted against OTC and Mining.

Sincerely,<br>
Rika Khurdayan

cc: Hon. V. Marrero, USDJ