**BARNES & THORNBURG** LLP

Robert Boller
Partner
(646) 746-2020
rboller@btlaw.com

445 Park Avenue, Suite 700
New York, NY 10022-8634
Tel. (646) 746-2000
Fax (646) 746-2001

www.btlaw.com

June 18, 2020

VIA ELECTRONIC MAIL AND ELECTRONIC COURT FILING

Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street, Suite 1610
New York, NY 10007

      RE:    *KDH Consulting Group, LLC v. Iterative Capital Mgmt L.P., et al.*, 20 CV 3274

Dear Judge Marrero:

      We write on behalf of Defendants, pursuant to section II.B.2 of Your Honor's Individual Practices, to state that a motion to dismiss remains warranted in this case. Plaintiff has indicated its intention to amend the Complaint but, as explained below, Plaintiff's claims are incapable of rehabilitation. It is now appropriate for the Court to intervene.

      By way of background, on May 20, 2020, Defendants sent a letter to Plaintiff identifying the numerous pleading deficiencies and fundamental infirmities that require dismissal of the Complaint. On May 27, 2020, Plaintiff responded to Defendants' May 20 letter. The parties met and conferred thereafter, and on June 8, 2020, Plaintiff provided additional details regarding its proposed amendments. *See* Exhibit A hereto (June 8, 2020 email from R. Kurdayan to R. Boller).

      Plaintiff's May 20 letter and June 8 email indicated that Plaintiff intends to press on with each of its claims except Count 11, for attorney's fees. Plaintiff intends to amend the Complaint to provide additional allegations in support of certain claims, but none of Plaintiff's proposed amendments can salvage the Complaint.

      Post-amendment, Plaintiff's state law claims will still "arise out of" the LPA, and therefore may only be litigated in the Delaware Chancery Court. Plaintiff's federal securities fraud claims will still improperly rely on alleged statements that Plaintiff previously disclaimed or that were not made in connection with the purchase of Plaintiff's interest in the Partnership. And Plaintiff's proposed amendments to its IAA claims will still leave those claims insufficient as a matter of law. A motion to dismiss will therefore remain necessary and we request the Court's guidance.

      **I.**    **The State Law Claims Must Be Brought In Delaware**

      As previously explained, the LPA contains a forum selection clause which requires any action "arising out of" the LPA to be litigated in the Delaware Chancery Court. LPA, § 8.5. Applicable Second Circuit law requires enforcement of this provision and applicable Delaware law requires its application to each of the state law claims, because each arises out of the LPA. *See* May 20, 2020 Letter from R. Boller to R. Kurdayan (Dkt. 29), 1-2.

Hon. V. Marrero 20 CV 3274
June 18, 2020 Page 2

In response, Plaintiff appears to argue (1) that its state law claims arise under the Subscription Agreement, so the LPA's forum selection clause doesn't apply, and (2) that Plaintiff is unsophisticated and cannot be bound by the LPA's forum selection clause. Each of these arguments is frivolous. Moreover, Plaintiff does not—and cannot—identify any amendments that would impact the purely legal question of whether the forum selection clause is enforceable.

First, Plaintiff's suggestion that its claims arise solely out of the Subscription Agreement is belied by the claims themselves and the theories behind them. The LPA, not the Subscription Agreement, is the primary source of the rights and obligations running from Defendants to limited partners, such as Plaintiff. Thus, each of the state law claims reference the LPA or Defendants' actions in connection with the Partnership. *See* Count 5 (fraud in connection with Plaintiff's purchase and retention of its limited partnership interests); Count 6 (breach of fiduciary duties owed to the Partnership); Count 7 (breach of duties arising under the LPA and Subscription Agreement); Count 8 (negligence in managing the Partnership's assets and negligent misrepresentations in connection with Plaintiff's purchase and retention of its limited partnership interests); Count 9 (breach of the LPA); Count 10 (unjust enrichment based on Plaintiff's investment in the Partnership); Count 12 (injunction based on Defendants' alleged "wholesale disregard of their obligations to the Partnership.") The Subscription Agreement, by contrast, is the vehicle through which limited partners confirm their qualification for investment and agree to be bound by the LPA. Further, Plaintiff's purported reliance on the Subscription Agreement is self-defeating because the Subscription Agreement includes an explicit consent to be bound by the LPA. Sub. Agm't., § 8. In sum, Plaintiff does not identify any amendments that might impact the legal analysis on this point. Nor could it, because no amount of creative pleading can obscure that Plaintiff's claims arise under the LPA.

Second, Plaintiff's professed unsophistication is a cynical and transparent ploy to be released from the Subscription Agreement's disclaimer and the LPA's obligations. Plaintiff was represented by counsel and invested $1 million into the Partnership. Plaintiff's members are themselves wealthy business owners whose transactions are discussed frequently in the press. *See* Ex. B hereto (recent articles regarding the business activities of KDH's members, Feliks Kogan, Anthony Degradi and Wayne Hatami.) And Plaintiff specifically acknowledged that: (1) it or an advisor had sufficient "knowledge and experience in financial, tax, regulatory and business matters" to evaluate the merits of the investment and to make an informed decision regarding whether to invest (Sub. Agm't., § 3(f)); (2) it received, read and understood the LPA (*id*., §1(a)); (3) it irrevocably agreed to subscribe for a partnership interest "subject to" the LPA (*id*., § 2(a)); and (4) it agreed to join and be bound by the LPA (*id*., § 8).

Now, Plaintiff claims that these representations were false when made, and should not bind Plaintiff, because Plaintiff was not sophisticated enough to understand them. But these kinds of suitability representations are included in subscription documents precisely to avoid the very issues that Plaintiff is attempting to raise here. And no amount of additional allegations can provide cover for Plaintiff's troubling theory that it can be released from its own prior representations simply by stating that it did not mean to make them. The Court can resolve this dispute as a purely legal matter and need not await Plaintiff's doomed amendment.

II. **The Federal Claims Will Remain Infirm**

Plaintiff's federal claims are also incapable of rehabilitation. Regarding the federal securities fraud claims (Counts 1-2), as the Court recognized, the LPA and the PPM contained

Hon. V. Marrero 20 CV 3274
June 18, 2020 Page 3

explicit and comprehensive disclosures concerning (1) the investment manager's discretion in choosing investments and in allocating portions of the portfolio to the mining strategy and (2) the risks of investing in the Partnership, including the risk of illiquidity, the possibility of redemptions being suspended, and the potential loss of Plaintiff's investment.  May 5, 2020 Hr'g Tr., 15-16.

Plaintiff acknowledged being advised of these risks and specifically represented that it was not relying on any representations, oral or otherwise, outside the four corners of the Partnership's offering documents.  Sub. Agm't, § 3(g).

In its May 20 letter and June 8 email, Plaintiff makes clear that it intends to double down on its reliance on alleged oral representations made by Defendants by amending the Complaint to include additional allegations regarding alleged extra-contractual representations, notwithstanding the disclaimers in the Subscription Agreement.  Once again, Plaintiff argues that the disclaimers should be ignored and Plaintiff should not be bound by them because Plaintiff was unsophisticated and did not understand what it was signing.  But the Court can resolve this issue as a matter of law by holding Plaintiffs to their prior representations regarding their sophistication and the disclaimers to which they have agreed.

Additionally, as explained in our May 20 letter, the Complaint includes allegations regarding representations made after Plaintiff invested in the Partnership which cannot support a claim for securities fraud.  In response, Plaintiff has offered to include additional allegations of alleged post-investment misstatements.  Because the law is clear that such statements cannot be the basis of a securities fraud claim, such amendments would be irrelevant to the analysis.

Finally, Plaintiff proposes to amend the Investment Advisers Act ("IAA") claims (Counts 3 and 4) to re-plead them as derivative claims.  But this proposed amendment addresses only one deficiency in those claims.  Most notably, *even if* Plaintiff had standing to sue on behalf of the Partnership (which Defendants do not concede), Plaintiff's IAA claims are premised solely on allegations that the Investment Manager and its principals engaged in conduct prohibited under Section 206 of the IAA.  It is well established that there is no private cause of action for relief under Section 206.  Instead, the only private right of action available under the IAA is a claim for rescission under Section 215(b) of the act.  Although Plaintiff asks for rescission of the contact between the Investment Manager and the Fund Complex, Plaintiff does not plead that the contract was made illegally or required illegal performance such that rescission is an available remedy.  Plaintiff's backdoor attempt to assert a private claim under Section 206 must be rejected.  Additionally, because the only private right of action is one for rescission, there can be no claim for aiding and abetting against non-parties.

Time is of the essence.  Each day that Plaintiff's reckless and unfounded claims remain alive via this lawsuit, Defendants suffer reputational harm and lost opportunities.  This case should be dismissed with prejudice, and quickly.  Thus, we request the Court's guidance and respectfully ask the Court to promptly schedule a conference aimed toward finding the best path forward.

                        Respectfully submitted,

                        */s/ Robert J. Boller*
                        Robert J. Boller

cc:    Rika Khurdayan

**BARNES & THORNBURG** LLP