**BARNES & THORNBURG LLP**

Robert Boller
Partner
(646) 746-2020
rboller@btlaw.com

445 Park Avenue, Suite 700
New York, NY 10022-8634
Tel. (646) 746-2000
Fax (646) 746-2001

www.btlaw.com

June 24, 2020

VIA ELECTRONIC MAIL AND ELECTRONIC COURT FILING

Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street, Suite 1610
New York, NY 10007

RE:   *KDH Consulting Group, LLC v. Iterative Capital Mgmt L.P., et al.*,  20 CV 3274

Dear Judge Marrero:

We write in response to Plaintiff's June 22, 2020 letter seeking the return of the security that Plaintiff posted in connection with the TRO that issued against Defendants on April 27, 2020 and that this Court dissolved on May 5, 2020.  (Dkt. 35).  Out of an abundance of caution, Defendants are treating Plaintiff's June 22 letter as a pre-motion letter submitted pursuant to Section II.A.2 of Your Honor's Individual Rules.  However, it is not clear that Section II.A.2 applies here: the June 22 letter never references Section II.A.2 and never identifies any motion that Plaintiff intends to make or that the Court could rule on.

Regardless of whether a response is required, Defendants do oppose the return of Plaintiff's TRO security.  Plaintiff's request is premature and is plainly unfounded in fact or law. At a high level, Plaintiff argues that Defendants ***could not have been*** damaged by the TRO that was wrongfully entered against them, and that even if Defendants ***were*** damaged, those damages must have been caused by something else and cannot be recovered from the TRO security.  Arriving at this pre-ordained conclusion requires numerous logical leaps and circular arguments.

First, the June 22 letter repeats a number of bald, unsupported assertions about the effects of the TRO, stating in conclusory fashion:

- The TRO "had no effect on Defendants or their planned transaction" (Dkt. 35, 2);

- "Defendants incurred no costs or damages in complying with the part of the TRO mandating production of documents" (*id.*);

- "Defendants did not incur any damages complying with the remaining part of the TRO" (*id.*);

- "At all times when the TRO was pending, Defendants were merely collecting consents from investors in connection with the planned restructuring."  (*id.*);

- "[T]he TRO had no effect on Defendants or their planned transaction." (*id.*)

- "Defendants cannot claim that any legal expenses were, with reasonable certainty, proximately caused by the TRO…" (*id.*, 3)

Each of these blanket assertions assumes that because Plaintiff was unaware of any activity undertaken by Defendants or damages incurred during the eight-day period that the TRO was in place, there must have been none. But Plaintiff is in no position to speak to damages suffered by Defendants and its "objections", such as they are, do not constitute evidence. Moreover, the main theme of Plaintiff's submission is that no harm could have accrued to Defendants because the TRO was only in place for a few days. But TROs are *always* only in place for a few days; FRCP 65(b)(2) provides a 14-day maximum.

Second, Plaintiff appears to have completely inverted the procedure here. Rather than objecting to specific damages claimed by Defendants, Plaintiff affirmatively objects to the ***very idea*** of Defendants' having been damaged, before any such evidence has been presented. Plaintiff's effort here is woefully premature; Defendants have not yet had the opportunity to seek recovery of damages and prove them, particularly given the early stage of this lawsuit. *See U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 138 (2d Cir. 2014) ("Although resolving the propriety of temporary relief can be distinct from the final adjudication on the merits . . . in the usual case the wrongfulness inquiry generally must be resolved by a trial on the merits.").

Third, Plaintiff's fundamental assumptions—that Defendants experienced no repercussions from imposition of the TRO and that for the eight days the Court's order was in place, Defendant made no attempt to comply with it—is flat out wrong. Defendants did incur damages, and Defendants are entitled to recover them from the security that Plaintiff posted for that very purpose. *See, e.g.*, *Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (bond serves to "protect [] adversary from loss in the event that future proceedings prove that the injunction issued wrongfully"); *Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 240 (3d Cir. 2003) (bond is like "a contract in which the court and the applicant 'agree' to the bond amount as the 'price' of a wrongful injunction"). Aside from reputational damage within the small cryptocurrency investment community, the improperly granted TRO caused Plaintiffs to spend time and money and to incur legal fees separate and apart from litigating the TRO's propriety, including in connection with investor outreach and communications, analyzing potential means of compliance, and analyzing the potential effects of the TRO on the proposed transaction. For example, as explained in Defendants' May 1 letter, the TRO order signed by Judge McMahon constituted a massive overreach by Plaintiff and required Defendants to provide vastly greater access to books and records than Delaware law and the LPA permit. (*See* Dkt. 14, 3.) The June 22 letter actually concedes this point, albeit implicitly and accidentally, by discussing Plaintiffs' efforts and negotiations regarding compliance with the document production portion of the TRO. (Dkt. 35, 2.)

Fourth, Plaintiff conspicuously omits the basic standard for recovery of a TRO bond under FRCP 65(c), including the presumption of damages in this instance. The Second Circuit has held "that wrongfully enjoined parties are entitled to a presumption in favor of recovery against the bond for provable damages." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011). As such, a court must have "good reason" to deny these damages. *Id.* at 559. Further, once the party seeking damages has had the opportunity to adequately establish them, "[t]he burden of demonstrating that recovery should be denied is on the party opposing recovery." *Id.*

**BARNES & THORNBURG** LLP

Hon. V. Marrero  20 CV 3274
June 24, 2020
Page 3

Fifth, Plaintiff does not dispute that the TRO did in fact issue and that it was in fact wrongful. Indeed, Plaintiff recognizes the TRO was "promptly dissolved" by the Court. (Dkt. 35, 1). Nor does Plaintiff dispute that attorney's fees of some sort may be recoverable. (*Id.*, 2). Just as the *Nokia* Court allowed for fees incurred in moving to stay another matter, it follows that fees incurred here—for example, for advice on compliance with the TRO, on collecting and preparing books and records for production, on communications with investors—are likewise recoverable.

In conclusion, to the extent that Plaintiff intends to make a motion and the June 22 letter was an attempt to invoke the pre-motion letter process implicated by Section II.A.2 of Your Honor's Individual Rules, Defendants would object to such a motion and are available at the Court's convenience to discuss further. We would welcome such a discussion and respectfully suggest that it might take place in conjunction with a discussion of the issues addressed in Defendants' prior letter to the Court regarding the Complaint's fundamental infirmities and the need for dismissal. As previously explained to the Court, Defendants are damaged every day that Plaintiff's meritless claims continue.

Respectfully submitted,

*/s/ Robert J. Boller*
Robert J. Boller

CC:   Rika Khurdayan
      Dilendorf Khurdayan PLLC
      60 Broad Street, 24th Floor
      New York, NY 10004
      rk@dilendorf.com

**BARNES & THORNBURG** LLP