**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------X
KDH CONSULTING GROUP LLC,      :

                              :

              Plaintiff,    :     20 Civ. 3274

                              :

     - against -          :     <u>DECISION AND ORDER</u>

                              :

ITERATIVE CAPITAL MANAGEMENT L.P., :
et al.,                         :

                              :

              Defendants.   :
-----------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiff KDH Consulting Group LLC ("KDH") brought this action against Iterative Capital Management L.P., Iterative Capital GP, LLC, Iterative OTC, LLC, Iterative Mining, LLC, Brandon Buchanan ("Buchanan"), and Christopher Dannen ("Dannen," and together with Buchanan, "Individual Defendants") (collectively, "Defendants"). The complaint alleges twelve counts. (See "Complaint," Dkt. No. 20.) Counts One through Four allege violations of the federal securities laws, while Counts Five through Twelve bring claims under state and common law. (Complaint ¶¶ 102-86.)

Before the Court are the pre-motion letters filed by the parties regarding Defendants' contemplated motion to dismiss. Defendants notified KDH of their intent to seek permission to file a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule

1

12(b)(6)") and forum non conveniens[1] on May 20, 2020. (See "Motion," Dkt. No. 29.) Defendants argue that the offering documents rebut many of KDH's allegations, venue is improper in the Southern District of New York, and the Complaint's allegations are otherwise deficient. By letter dated May 27, 2020, KDH responded to the Motion and argued that the Complaint is well-pled. (See "Opposition," Dkt. No. 30.) By letter dated June 18, 2020, Defendants replied to the Opposition and reiterated their intent to file a motion to dismiss, notwithstanding KDH's stated intent to amend its Complaint to provide additional support for certain claims. (See "Reply," Dkt. No. 33.) By letter dated June 19, 2020, KDH responded to the Reply, alleging that the Reply contained serious factual misstatements and omissions, demonstrating Defendants' lack of good faith. (See "June 19 Letter," Dkt. No. 34.)

---

[1] Defendants cite to Federal Rule of Civil Procedure 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction. Until recently, it was not clear within the Second Circuit which provision of Rule 12 applied to a motion seeking to enforce a forum selection clause. The Supreme Court has clarified that the proper vehicle is the doctrine of forum non conveniens, not Rule 12. Martinez v. Bloomberg LP, 740 F.3d 211, 216 (2d Cir. 2014) (citing Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tx., 571 U.S. 49 (2013)). The issue is academic, because Atlantic Marine "did not alter the legal principles governing the enforcement of such clauses." Jones v. Ponant USA LLC, No. 19 Civ. 3041, 2020 WL 2489076, at *3 n.1 (S.D.N.Y. May 14, 2020). Accordingly, the Court will construe Defendants' motion as having been brought under the doctrine of forum non conveniens. E.g., Fubon Ins. Co. Ltd. v. OHL Int'l, No. 12 Civ. 5035, 2014 WL 1383604, at *5 (S.D.N.Y. Mar. 31, 2014). For avoidance of doubt, the Court has independently satisfied itself -- as it must -- that it has subject matter jurisdiction over this dispute.

The Court now construes Defendants' Motion and Reply as a motion by Defendants to dismiss the Complaint pursuant to Rule 12(b)(6) and forum non conveniens (the "Letter Motion").[2] For the reasons set forth below, the Letter Motion is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

A.   FACTUAL BACKGROUND[3]

KDH became a limited partner in Iterative Capital, L.P. (the "Partnership," and together with Iterative Capital Master, L.P. and Iterative Mining Master, L.P., the "Fund Complex") in January 2018 with a $1,000,000 investment. KDH's investment is generally governed by three documents:

- The Subscription Agreement ("Subscription Agreement"), signed by KDH on January 5, 2018 (see "Hatami Decl.," Dkt. No. 27, ¶ 7 & Ex. A);
- The Limited Partnership Agreement ("LPA"), signed by Iterative Capital Management L.P. on January 12, 2018 (see Hatami Decl. ¶ 8 & Ex. B); and
- The Private Placement Memorandum ("PPM"), dated December 2017 (see Hatami Decl. ¶ 10 & Ex. C).

---

[2] Kapitalforeningen Lægernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.) (affirming district court ruling deeming exchange of letters as motion to dismiss).
[3] The Court presumes familiarity with the factual background of this litigation, which was described in greater detail in the Court's previous decision, and provides only the facts necessary to resolve Defendants' Letter Motion. Except as otherwise noted, the factual background below derives from the Complaint and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See infra Section II.A-B. Except where specifically quoted, no further citation will be made to the Complaint. When quoting the Complaint, all internal quotation marks are omitted.

KDH alleges that Defendants fraudulently induced it to invest in a cryptocurrency investment and trading fund by misrepresenting the purpose of the fund, its prior performance history, and the liquidity options. The Individual Defendants allegedly promised a highly liquid fund with quarterly withdrawal rights, with 70 percent of the assets invested in trading cryptocurrencies and network tokens and the remaining 30 percent invested in cryptocurrency mining operations including cryptocurrency mining equipment. To the contrary, KDH alleges, Defendants knew at the time KDH entered the Partnership that cryptocurrency trading was no longer viable, and planned to use KDH's funds for "highly illiquid mining operations." (Complaint ¶ 3.) According to KDH, Defendants' offering documents failed to disclose their primary investment objective and strategy and failed to reflect accurately their prior performance.

KDH also alleges that Defendants misrepresented the liquidity of their investment. When the cryptocurrency market (in particular, Bitcoin) declined, KDH requested immediate withdrawal. Buchanan assured KDH that their funds had not yet been invested, that the Fund Complex would not invest heavily in Bitcoin, and that KDH would be able to withdraw at any time. Then, to prevent KDH and other

4

investors from withdrawing funds, Defendants allegedly made the portfolio illiquid by deviating from the stated investment strategy and turning to mining, including spending $6.5 million of the remaining assets on "rapidly depreciating mining equipment." (Complaint ¶ 11.)

KDH further alleges that Defendants engaged in self-dealing with their affiliated entities, including Iterative OTC, LLC (Defendants' over-the-counter cryptocurrency trading business) and Iterative Mining LLC (Defendants' separate mining company). KDH alleges that Defendants breached their duty of good faith and fair dealing by putting the interests of Iterative OTC, LLC ahead of the interests of the Partnership, and by "attempting to retrofit" the Fund Complex's operations so that any mined digital assets were funneled to Iterative OTC, LLC, such that the Individual Defendants personally profited. (Complaint ¶ 80.)

KDH brings twelve counts. Count One alleges violations of Section 10(b) ("Section 10(b)") of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities Exchange Commission ("SEC") Rule 10b-5 ("Rule 10b-5"). See 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Count Two, brought against the Individual Defendants only, alleges violations of Section 20(a) ("Section 20(a)") of the

Exchange Act. <u>See</u> 15 U.S.C. § 78t(a). Count Three, brought against Iterative Capital Management L.P. only, alleges violations of fiduciary duty under Section 206 ("Section 206") of the Investment Advisers Act ("IAA"). <u>See</u> 15 U.S.C. § 80b-6. Count Four, brought against the Individual Defendants only, alleges that the Individual Defendants aided and abetted violations of Section 206. The remaining counts are for common law fraud and fraudulent inducement (Count Five); breach of fiduciary duty (Count Six); breach of the duty of good faith, fair dealing, and loyalty (Count Seven); negligence and negligent misrepresentation (Count Eight); breach of contract, against Iterative Capital GP, LLC and Iterative Capital Management L.P. (Count Nine); unjust enrichment (Count Ten); attorneys' fees (Count Eleven); and injunctive relief (Count Twelve).

KDH sought an Order to Show Cause and Temporary Restraining Order to enjoin Defendants from converting the Partnership into an operating limited liability company (the "Restructuring") and taking other actions related to the Restructuring. (<u>See</u> "Memorandum of Law," Dkt. No. 5.) After the Court (Part I) granted the Temporary Restraining Order on April 27, 2020, Defendants sought immediate relief from the TRO. (<u>See</u> "May 1 Letter," Dkt. No. 14.) Consistent with the Court's order, KDH responded by letter on May 4,

2020. (<u>See</u> "May 4 Letter," Dkt. No. 17.) The Court deemed the May 1 Letter as a motion to dissolve the TRO pursuant to Federal Rule of Civil Procedure 65(b)(4) ("Motion to Dissolve"). The Court thereafter granted the Motion to Dissolve (<u>see</u> Dkt. No. 18), finding that KDH had not made a sufficiently compelling showing of irreparable harm and that the balance of the equities did not weigh in KDH's favor. <u>KDH Consulting Group LLC v. Iterative Capital Mgmt. L.P.</u>, No. 20 Civ. 3274, 2020 WL 2554382 (S.D.N.Y. May 20, 2020). The instant Letter Motion followed.

B.   THE PARTIES' ARGUMENTS

Defendants make five arguments in their Motion. First, Defendants argue that most of KDH's claims are subject to a forum selection clause in the LPA that provides for the adjudication of disputes in the Delaware Court of Chancery. Second, Defendants assert that Counts One and Two (alleging violations of the Exchange Act) are time-barred and contradicted by the documents cited in the Complaint, including the LPA, the PPM, and the Subscription Agreement. Third, Defendants state that because no private right of action exists under Section 206 of the IAA, Counts Three and Four should be dismissed. Fourth, Defendants contend that, for several reasons, Counts Five through Twelve fail to state a claim. Fifth, Defendants urge the Court to

dismiss claims against defendants Iterative Mining, LLC and
Iterative OTC, LLC, because the Complaint does not allege
misconduct by either entity or identify any duty that
either entity owes to KDH.

In its Opposition, KDH counters each of these
arguments. KDH disputes the applicability of the forum
selection clause, noting that, first, its claims arise out
of the Subscription Agreement, which does not contain such
a clause, and second, that federal courts have exclusive
jurisdiction over claims arising under the Exchange Act.
KDH also suggests that it is an unsophisticated investor
and did not sign the LPA. Next, KDH argues that Counts One
and Two are timely because the statute of limitations
period does not run until reasonable discovery of the facts
constituting the violation, and further that Counts One and
Two are sufficient to state a claim. Third, KDH contends
that a private right of action exists under the IAA such
that Counts Three and Four should not be dismissed, and
even if KDH lacks standing to bring a claim under the IAA
against Iterative Capital Management L.P., the Individual
Defendants and Iterative GP, LLC acted as investment
advisers under the IAA. Fourth, KDH argues that Counts Five
through Twelve are well-pled. Last, KDH addresses
Defendants' arguments regarding Iterative OTC, LLC and

Iterative Mining, LLC, maintaining that the Complaint sufficiently alleges that these entities knew of and enabled the fraud. In addition to making these arguments, KDH states its willingness to amend the Complaint to allege more specifically the misleading statements made by Defendants, add allegations regarding KDH's lack of sophistication, better indicate how Iterative OTC, LLC is a part of the alleged scheme, and cure any other defects in the pleadings.

Defendants alerted the Court that the letter exchange with KDH had not resolved the parties' dispute and attached a June 8, 2020 email exchange between the parties. (Reply Ex. A.) In Defendants' view, KDH's proposed amendments to the Complaint would not cure the defects identified in the Motion. Defendants maintain that the forum selection clause in the LPA requires dismissal of the state-law claims, and that because no additional factual allegations could change this analysis, the Court should resolve the issue as a purely legal matter. Defendants also submit that Counts One and Two are incapable of rehabilitation through amendment to the Complaint because the LPA and PPM contained explicit disclosures of the risks of investing and KDH acknowledged those risks. Last, Defendants argue that Counts Three and Four remain infirm, and that even assuming KDH repleads

these claims as derivative claims, and even assuming KDH has standing to sue on behalf of the Partnership, the only available private right of action under the IAA is a claim for rescission under Section 215(b) ("Section 215(b)") of the IAA; Defendants argue such a claim should fail here because it would essentially be an impermissible assertion of a private right of action. See 15 U.S.C. § 80b-15.

In response, KDH writes in its June 19 Letter that Defendants made serious factual misstatements and omissions in their Reply. In particular, KDH clarifies that its proposed amendments to the Complaint are not intended to demonstrate that the disclaimers in the operating documents do not apply, but rather that additional facts shed light on KDH's sophistication as it pertains to the reliance element of securities fraud claims.

Having considered the parties' briefing, the facts as set forth in the Complaint, and the relevant case law, the Court will grant in part and deny in part Defendants' Letter Motion to dismiss the Complaint pursuant to Rule 12(b)(6) and for forum non conveniens.

## II.  **LEGAL STANDARDS**

### A.  MOTION TO DISMISS FOR FORUM NON CONVENIENS

The plaintiff has the burden of pleading venue. See Cold Spring Harbor Lab. v. Ropes & Gray LLP, 762 F. Supp.

2d 543, 551 (E.D.N.Y. 2011). If the court relies only on pleadings and affidavits, the plaintiff need only make a prima facie showing of venue. See Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005). Thus, if an evidentiary hearing on the question of venue has not been held, "the Court accepts facts alleged in the complaint as true and draws all reasonable inferences in [plaintiff's] favor." Person v. Google Inc., 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006) (quoting Caremark Therapeutic Servs. v. Leavitt, 405 F. Supp. 2d 454, 457 (S.D.N.Y. 2005)). The Court is permitted, however, to consider facts outside of the pleadings on a motion to dismiss for improper venue. Martinez, 740 F.3d at 216 (explaining that the Supreme Court's decision in Atlantic Marine did not "appear to alter the materials on which a district court may rely in granting a motion to dismiss based on a forum selection clause"). "Whether to hold a hearing on disputed facts and the scope and method of the hearing is within the sound discretion of the district court." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1139 (9th Cir. 2004).

Under the standard set forth by the Supreme Court in M/S Bremen v. Zapata Off-Shore Co., forum selection clauses are prima facie valid and should control questions of venue absent a "strong showing" that enforcement would be

11

"unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." 407 U.S. 1, 15 (1972). Forum selection clause language must, however, be mandatory to be enforced. John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs., Inc., 22 F.3d 51, 52-53 (2d Cir. 1994).

The Second Circuit has developed a framework to determine the validity of forum selection clauses in the context of motions to dismiss. Under this framework, a clause is "presumptively enforceable" if the moving party can demonstrate the following: (1) the clause was reasonably communicated to the party challenging enforcement, (2) the clause is mandatory rather than permissive in nature, and (3) the claims involved are subject to the clause. See Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007). The burden then shifts to the non-moving party who, to overcome the presumption of enforceability, must make "a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" Id. at 383-84 (quoting M/S Bremen, 407 U.S. at 15). Whether the resisting party has rebutted the presumption of enforceability is a question of federal law. See id. at 384 ("Despite the presumptive validity of choice

12

of law clauses, our precedent indicates that federal law should be used to determine whether an otherwise mandatory and applicable forum clause is enforceable under . . . step four in our analysis.").

B.   <u>RULE 12(B)(6) MOTION TO DISMISS</u>

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. <u>See id.</u> However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005), aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006); accord In re MF Glob. Holdings Ltd. Sec. Litig., 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013). In this context, the Court must draw reasonable inferences in favor of the non-moving party. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the claim as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

In adjudicating a Rule 12(b)(6) motion, a court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999). However, plaintiffs claiming fraud -- including securities fraud concerning material misstatements and omissions -- must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") by "stat[ing] with particularity the circumstances

constituting fraud." Fed. R. Civ. P. 9(b). "Allegations that are conclusory or unsupported by factual assertions are insufficient." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

The PSLRA also imposes heightened pleading standards for plaintiffs alleging securities fraud. When a plaintiff alleges that defendants made misleading statements or omissions, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Plaintiffs "must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so." Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004). To adequately plead scienter, "the complaint shall . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). A court shall grant a motion to dismiss a securities fraud complaint if these requirements are not met.

B.   THE EXCHANGE ACT

To state a claim for misrepresentation or omission under Section 10(b) and Rule 10b-5, "a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." ATSI Commc'ns, 493 F.3d at 105; see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008).

Separately, "Section 20(a) of the Exchange Act imposes derivative liability on parties controlling persons who commit Exchange Act violations." In re Vivendi, S.A. Sec. Litig., 838 F.3d 223, 238 n.6 (2d Cir. 2016) (internal quotations omitted). "To establish a prima facie case" for Section 20(a) liability, "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." ATSI Commc'ns, 493 F.3d at 108.

C.   THE INVESTMENT ADVISERS ACT

The Investment Advisers Act of 1940 was enacted "to achieve a high standard of business ethics in the

securities industry." SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 186 (1963). To this end, the Act imposes on investment advisers "an affirmative duty of utmost good faith, and full and fair disclosure of all material facts" about their services to their clients. Id. at 194 (internal quotations omitted). In particular, investment advisers must tell their clients about "all conflicts of interest which might incline an investment adviser -- consciously or unconsciously -- to render advice which [is] not disinterested." Id. at 191-92.

The Supreme Court has limited the availability of a private right of action under the IAA. Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 24 (1979). "[R]emedies under the IAA are only available where an investor brings suit on the investment adviser's allegedly improper conduct (or vice versa) pursuant to a contract for services, and seeks a remedy consistent with a determination that the contract is void." Norman v. Salomon Smith Barney, Inc., 350 F. Supp. 2d 382, 388 (S.D.N.Y. 2004); see also In Re J.P. Jeanneret Assocs., Inc., 769 F. Supp. 2d 340, 367 (S.D.N.Y. 2011) ("[15 U.S.C. §§ 80b-6(a) and 80b-15] render[] void any investment contract whose formation or performance would violate the [IAA]."); Omega Overseas Partners, Ltd. v. Griffith, No. 13 Civ. 4202, 2014

WL 3907082, at *7 (S.D.N.Y. Aug. 7, 2014) (similar). Recovery is limited to rescission of the contract and "restitution of the consideration given under the contract, less any value conferred by the other party." Transamerica Mortgage Advisors, 444 U.S. at 24 n.14; see also Wellington Int'l Commerce Corp. v. Retelny, 727 F. Supp. 843, 845 (S.D.N.Y. 1989).

### III. **DISCUSSION**

A.   FORUM SELECTION CLAUSE

Defendants argue that most of KDH's claims are subject to a forum selection clause in Section 8.5 of the LPA that provides for the adjudication of disputes in the Delaware Court of Chancery. Defendants contend that the forum selection clause prevents this Court from considering all but the first four causes of action.

The forum selection clause states:

The parties hereby consent to the exclusive jurisdiction and venue for any action arising out of this Agreement in the Delaware Court of Chancery. Each Partner consents to service of process in any action or proceeding involving the Partnership by the mailing thereof by registered or certified mail, postage prepaid, to such Partner's mailing address set forth in the Schedule of Partners maintained by the General Partner.

(Hatami Decl. Ex. B, at 48.)

As noted above, a court may enforce a forum selection clause if the clause meets a four-part test. See generally In re Facebook, Inc., IPO Sec. Deriv. Litig., 922 F. Supp. 2d 445, 459-60 (S.D.N.Y. 2013). First, the clause must have been "reasonably communicated to the party resisting enforcement." Phillips, 494 F.3d at 383. Second, the court must determine whether the clause is "mandatory or permissive, i.e., . . . whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so." Id. Third, the court "asks whether the claims and parties involved in the suit are subject to the forum selection clause." Id. If the clause was reasonably communicated, has mandatory force, and covers the claims and parties involved, then it is presumptively enforceable.[4]

KDH appears to contest only the first and third prongs. The Court finds that KDH's argument with respect to the first prong is easily dispensed with; KDH argues summarily that it "is an unsophisticated investor and did not sign the LPA." (Opposition at 2.) However, KDH provides no factual basis for finding that it qualifies as "unsophisticated," and as Defendants point out, KDH was

---

[4] The fourth and final step permits the party resisting enforcement to rebut the presumption of enforceability by "making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" Phillips, 494 F.3d at 383-84 (quoting M/S Bremen, 407 U.S. at 15).

represented by counsel when it made its investment. (Reply at 2.) KDH does not allege that it was somehow unaware of the clause. Indeed, by signing the Subscription Agreement, KDH acknowledged that it had read and understood the LPA. (Hatami Decl. Ex. A, at 1.) The Court thus finds that the clause was reasonably communicated to KDH.

As for the third prong, the Court similarly finds that the forum selection clause covers KDH. When KDH signed the Subscription Agreement, it "agree[d] to be bound by the Partnership Agreement as a limited partner." (Hatami Decl. Ex. A, at 16.) KDH offers no support for holding that the clause does not bind it, and ample case law counsels against such a holding, because "it is well established that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." Weingard v. Telepathy, Inc., No. 05 Civ. 2024, 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005) (internal quotation marks and alteration omitted)).

Whether the clause covers the claims in the Complaint -- the other inquiry under the third prong -- is another matter altogether. Here, KDH makes two main arguments. First, KDH contends that its claims arise out of the Subscription Agreement, which does not contain a forum selection clause. Second, KDH points out that federal

courts have exclusive jurisdiction over federal securities fraud claims, and since venue is appropriate for the Complaint's federal securities fraud claims, venue is also appropriate for the state law claims under the doctrine of supplemental jurisdiction. Ultimately, the Court is not persuaded by either argument.

Turning first to matter of whether KDH's arise out of the LPA or the Subscription Agreement, the Court finds that the crux of KDH's complaint is that Defendants defrauded investors in the Partnership by overinvesting in mining equipment and mining activities. Neither KDH's common law claims nor its federal law claims can feasibly be raised without reference to the LPA. Its common law claims revolve around Defendants' alleged failure to abide by their duties with respect to the Partnership, and the Partnership is governed by the LPA. Palm Bay International, Inc. v. Winebow Group, LLC, No. 18 Civ. 1094, 2018 WL 5776266 (E.D.N.Y. Nov. 1, 2018), cited by KDH in its May 4 Letter, is distinguishable on this ground. In Palm Bay International, the court held that the plaintiff's claims were not subject to the forum selection clause in the parties' sales contract because the claims arose under federal law (the Lanham Act), not the contract, and could "be raised without reference to the agreement." 2018 WL

5776266, at *4. In other words, the claims did "no[t] invoke or seek to enforce a contractual right or duty." <u>Id.</u> Here, in contrast, KDH's claims depend on allegations that Defendants made misrepresentations about the nature of the Fund Complex. In particular, KDH cites to allegedly false statements in the PPM, and the PPM in turn states that the LPA governs. (Hatami Decl. Ex. C, at iii ("the terms of the [LPA] control" in the event of "any inconsistency" between the PPM and LPA).) Thus, unlike in <u>Palm Bay International</u>, KDH's claims cannot be raised without reference to the LPA, and "assert rights or duties originating from the [c]ontract." 2018 WL 5776266, at *3.

In its Opposition, KDH relies on <u>Roselink Investors, LLC v. Shenkman</u>, 386 F. Supp 2d 209, 225-26 (S.D.N.Y. 2004), but <u>Roselink</u> does not provide strong support for KDH's argument either. There, the parties entered into a Subscription Agreement that included a forum selection clause providing for jurisdiction in New York state or federal courts, as well as the application of New York law. The court enforced the clause and applied New York law. In doing so, the court relied on a Second Circuit case, <u>Turtur v. Rothschild Registry Int'l, Inc.</u>, 26 F.3d 304, 310 (2d Cir. 1994), which involved a very similar clause, and noted that in that case, the "claim clearly arose out of or was

related to their investment, which was governed by the subscription note containing the forum selection clause." Roselink, 386 F. Supp. 2d at 226. Turtur involved a subscription agreement that contained a forum selection clause, and the party resisting enforcement argued that the claim sounded in tort rather than contract; the court rejected this argument because the fraud claim arose out of the plaintiff's investment and so was subject to the subscription agreement's forum selection clause. The Second Circuit did not imply that if the clause appeared instead in a different subscription document it would not have applied. Taken together, in fact, Roselink and Turtur directly *contradict* KDH's argument -- they suggest that a forum selection clause is enforceable no matter where it appears in the subscription documents, assuming it meets the Phillips test.[5]

KDH's second argument for why the forum-selection clause does not apply to its claims -- namely, that federal

---

[5] KDH also cites to Credit Suisse Securities (USA) LLC v. Hilliard, 469 F. Supp. 2d 103, 107-08 (S.D.N.Y. 2007), for the proposition that a forum selection clause in one contract cannot be applied to "a different, separately negotiated contract lacking such a clause." In that case, the forum selection clause appeared in an agreement that authorized the plaintiff to sell stock during a certain period. That agreement expired, and plaintiff's claim related to the sale of stock pursuant to a later agreement. The LPA and Subscription Agreement here are not separate contracts in the sense that they govern different business relationships or different periods of time. Instead, KDH entered the Partnership -- and became a party to the LPA -- through the Subscription Agreement. Credit Suisse Securities (USA) LLC is thus inapposite.

courts have exclusive jurisdiction over federal securities law claims -- is a closer call, but again the Court is not persuaded. The Exchange Act contains a venue clause, 15 U.S.C. Section 78aa ("Section 78aa"), which confers "exclusive jurisdiction" on federal courts for any violations of the Exchange Act.[6] Furthermore, 15 U.S.C. Section 78cc(b) ("Section 78cc") provides that any contract made in violation of any provision of the Exchange Act is void.

While the Supreme Court has carved out mandatory arbitration clauses from being voided under Section 78cc, see Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974); Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987), courts have reached mixed results when it comes to mandatory forum selection clauses providing for state court jurisdiction. Some courts have enforced the forum selection clause and required state court jurisdiction over all claims. E.g., Solid Q Holding, LLC v. Arenal Energy Corp., No. 15-cv-419, 2017 WL 935891, at *2 (D. Utah Mar. 8, 2017) (forum selection clause providing for Utah state court

---

[6] "The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." Section 78aa(a).

jurisdiction did not violate Section 78aa); _Spenta Ents., Ltd. v. Coleman_, 574 F. Supp. 2d 851, 857 (N.D. Ill. 2008) (forum selection clause providing for Illinois state court jurisdiction did not violate Section 78aa).[7] Other courts decline to enforce the forum selection clause entirely, and instead require federal court jurisdiction for all claims. _E.g._, _Butorin ex rel. KBR Inc. v. Blount_, 106 F. Supp. 3d 833, 837-38 (S.D. Tex. 2015) (refusing to enforce the forum selection clause because Section 78aa required federal court jurisdiction, and noting that the court could "think of no worse use of judicial resources than severing and staying one portion of this case so that the other related claims can be brought in Delaware state court"); _Wu v. Sunrider Corp._, No. 17 Civ. 4825, 2017 WL 3475665, at *3 (C.D. Cal. Aug. 11, 2017) (refusing to remand to state court in part because "[w]hile the Court could retain the claims over which it has exclusive jurisdiction and remand the rest, to do so would be unreasonable," because the

---

[7] In one case from this District, the court found that a forum selection clause providing for exclusive jurisdiction in the Delaware Chancery Court was not valid, but only because it was adopted after the claims arose. _In re Facebook, Inc., IPO Sec. Deriv. Litig._, 922 F. Supp. 2d at 460-63. This case involved at least some claims under the Exchange Act. _See_ _In re: Facebook, Inc., IPO Sec. Derivative Litig._, 899 F. Supp. 2d 1374 (Mem.) (MDL 2012).

federal securities claims were "based on the same nucleus of operative facts" as the remaining claims).[8]

The better result, in this Court's view, is to decline to enforce the forum selection clause, but only for the claims subject to Section 78cc. With this approach, the Court heeds Congress's clear intent to keep Exchange Act claims in federal court while upholding the contract negotiated by the parties. Furthermore, this approach enjoys the strongest support in this Circuit: In <u>Luce v. Edelstein</u>, 802 F.2d 49, 57 (2d Cir. 1986), the Second Circuit held that the district court correctly dismissed most claims due to a forum selection clause providing for state court jurisdiction, but agreed that the district court correctly retained the Exchange Act claims. Because this case presents substantially the same factual scenario, the analysis in <u>Luce</u> requires the same result here. The Court may therefore enforce the forum selection clause as to the state-law claims, and because Defendants do not dispute that venue is proper in the Southern District of

---

[8] In <u>SST Global Technology, LLC v. Chapman</u>, 270 F. Supp. 2d 444, 453-54 (S.D.N.Y. 2003), the court declined to consider the forum selection clause given that venue was proper for the Exchange Act claims under Section 78aa, though it is not clear whether the clause provided for state court jurisdiction, nor is it clear whether the clause was mandatory or permissive. KDH also cites <u>O&G Carriers, Inc. v. Rosenthal & Co.</u>, 685 F. Supp. 66, 67 (S.D.N.Y. 1988), but there, the Court enforced the forum selection clause and transferred to the Northern District of Illinois precisely because the clause was "susceptible of meaning either [an] Illinois state court or [the] federal court in Chicago" had jurisdiction.

New York for the Exchange Act claims, the Court declines to dismiss the Exchange Act claims for improper venue.

Because the Court finds that the first three prongs of the forum selection clause analysis are met, the burden shifts to KDH to demonstrate that enforcement of the clause would be "unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching." Thibodeau v. Pinnacle FX Invests., No. 08 Civ. 1662, 2008 WL 4849957, at *4 (E.D.N.Y. Nov. 6, 2008) (quoting Phillips, 494 F.3d at 384) (alterations omitted). KDH does not claim the clause is unreasonable or unjust. Even if it did, "the fraudulent actions capable of overcoming the presumption of validity for a forum selection clause must be directly related to that clause, not the contract more generally." Person, 456 F. Supp. 2d at 494. KDH has not argued that it was fraudulently induced with respect to the forum selection clause. Therefore, the clause applies and requires dismissal of KDH's state-law claims.

Because it concludes that the forum-selection clause requires dismissal of the state-law claims, the Court need not address Defendants' alternative arguments for dismissal of Counts Five through Twelve. (See Motion at 3.) The Court further notes that in dissolving the TRO, the Court has already found that injunctive relief was not merited,

27

thereby disposing of Count Twelve. As for Count Eleven, for attorneys' fees, the Second Circuit has noted that "attorney's fees are not permitted in actions brought solely under section 10(b) of the Securities and Exchange Act." Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); see also Van Alen v. Dominick & Dominick, Inc., 560 F.2d 547, 553 (2d Cir. 1977); In re BioScrip, Inc. Sec. Litig., 273 F. Supp. 3d 474, 490-91 (S.D.N.Y. 2017). Because the claims arising under Section 10(b) are the only remaining claims, as discussed below, it follows that attorneys' fees are not available, and dismissal of Count Eleven is appropriate at this time.[9]

As it stands, the record presents no disputed factual questions related to the forum selection clause. See Donnay USA Ltd. v. Donnay Int'l S.A., 705 F. App'x 21, 26 n.4 (2d Cir. 2017) ("Where, as here, a plaintiff adduces no evidence that places any material fact in dispute, it is within a district court's discretion to rely on pleadings and affidavits in resolving a motion to dismiss based on a forum selection clause."). The Court therefore holds as a matter of law that the forum selection clause applies and

---

[9] Given the parties' ongoing and separate dispute regarding the return of the security bond (see Dkt. Nos. 35, 36), the Court will direct Defendants to move for costs within thirty days of the date of this Order. See Sterling Indus., Inc. v. Sheet Metal Workers' Nat'l Pension Fund, No. 14 Civ. 5956, 2015 WL 3407927, at *2-*3 (E.D.N.Y. May 27, 2015).

will direct KDH to show cause why Counts Five through Twelve should not be dismissed with prejudice. See Amaker v. Haponik, 198 F.R.D. 386, 391 (S.D.N.Y. 2000).

B.   REMAINING FEDERAL CLAIMS

1. Investment Advisers Act

It is not clear whether, in Defendants' view, the forum-selection clause applies only to Counts Five through Twelve. Defendants focus their forum selection clause arguments on the state law claims, and with respect to Counts Three and Four, argue instead that KDH may not avail itself of the limited private right of action recognized under the IAA. (See May 1 Letter at 5 (contrasting the four federal law claims with the "remaining eight claims [that] all unquestionably arise under the LPA"); Motion at 1 (the LPA "covers all of Counts Five through Twelve"); Reply at 1 (forum selection clause must be applied "to each of the state law claims").) One could argue that Counts Three and Four are also covered by the forum selection clause. See 15 U.S.C. § 80b-14 (providing for concurrent jurisdiction in federal and state courts for claims under the IAA); CWCapital Cobalt VR Ltd. v. CWCapital Invs. LLC, No. 17 Civ. 9463, 2018 WL 2731270, at *5 (S.D.N.Y. May 23, 2018) ("Congress also provided for concurrent jurisdiction over IAA violations in state and federal courts.").

29

However, the Court need not consider whether
Defendants have conceded the issue, because it finds that
Counts Three and Four fail to state a claim. These counts
face multiple hurdles. As noted above, "[t]he only remedy
available under the [IAA] is rescission of the investment
advisory contract and restitution of consideration paid for
investment advisory services." Kassover v. UBS AG, 619 F.
Supp. 2d 28, 34 (S.D.N.Y. 2008). As an initial matter, KDH
has not alleged, as required under Transamerica Mortgage
Advisors, any facts indicating that its "contract was made
illegally or requires illegal performance." Omega Overseas
Partners, Ltd., 2014 WL 3907082, at *3.

Even if KDH had alleged such facts, the Supreme Court
has explained that any "[r]estitution would not . . .
include compensation for any diminution in the value of the
rescinding party's investment alleged to have resulted from
the adviser's action or inaction. Such relief could provide
by indirection the equivalent of a private damages remedy
that we have concluded Congress did not confer."
Transamerica Mortgage Advisors, 444 U.S. at 24 n.14.
Because KDH appears to bring its IAA causes of action in
order to demand the return of its investment, its IAA claim
is, as Defendants put it, a "backdoor attempt to assert a
private claim under Section 206." (Reply at 3.) The Court

declines KDH's invitation to circumvent clear precedent that disallows its claim. See Omega Overseas Partners, Ltd., 2014 WL 3907082, at *2 (holding that the theory that Section 215 "voids an investment adviser contract anytime an investment adviser defrauds a client in violation of the IAA" is precisely what "the Supreme Court refused to find").

Inability to recover is not the only issue with KDH's IAA causes of action. KDH does not allege facts to support a finding (or even appear to argue) that it has standing to bring a claim on behalf of the Partnership, nor does it allege with particularity any facts demonstrating that any of the Defendants acted as investment advisers to KDH. The IAA's definition of an "investment adviser" requires that the individual be compensated in exchange for advising others. See 15 U.S.C. § 80b-2(a)(11). The Complaint does not allege that any of the Defendants accepted compensation from KDH, and the allegations that Defendants enriched themselves at the expense of the Partnership are conclusory. (E.g., Complaint ¶ 81 ("Defendants put their own interest to sell digital assets mined by the Mining Master Fund through [Iterative OTC, LLC], and profit from such transactions, before the interests of the Partnership . . . ."); Complaint ¶ 82 ("Upon information and belief,

31

Individual Defendants personally profited from trades through [Iterative OTC, LLC] at the expense of Plaintiff and other investors . . . ."; Complaint ¶ 127 (alleging that Iterative Capital Management L.P. and its officers acted to enrich the Individual Defendants and secure personal benefits).)[10] In sum, the allegations in the Complaint regarding Defendants' enrichment at the expense of the Partnership are too conclusory to support a finding that any Defendant acted as an investment adviser.

Because Count Three fails, Count Four, a derivative claim against the Individual Defendants for aiding and abetting Iterative Capital Management L.P. in violating Section 206 of the IAA, must also fail. See SEC v. Pimco Advisors Fund Mgmt. LLC, 341 F. Supp. 2d 454, 470 (S.D.N.Y. 2004) (aiding and abetting liability requires a primary violation).

The Court therefore holds that Defendants' Letter Motion should be granted as to Counts Three and Four, and will direct KDH to show cause why Counts Three and Four should not be dismissed with prejudice.

2. Exchange Act

---

[10] While the Court's analysis is confined to the allegations in the Complaint, it also notes that Buchanan has represented to KDH that "the Fund rarely, if ever, transacts through the OTC desk. To the extent it has/does, there are no profits generated from the sale or purchase of cryptocurrency, as the OTC desk does not charge a fee for those services." (See "Khurdayan Decl.," Dkt. No. 6, Ex. C, at 1.)

The only remaining claims consist of the federal securities law claims under the Exchange Act. KDH offers to amend its Complaint to "provide the relevant facts and context relating to the 'degree of sophistication,' which is a generally accepted factor assessing reliance in securities fraud cases." (June 19 Letter at 2 (citing San Diego County Emps.' Ret. Ass'n v. Maounis, 749 F. Supp. 2d 104, 120 (S.D.N.Y. 2010)).) Because KDH has indicated that it wishes to file an amended complaint to bolster the factual allegations supporting these claims, and because, in general, a party may amend the complaint as a matter of right, see Pettaway v. Nat'l Recovery Sols., LLC, 955 F.3d 297, 303 (2d Cir. 2020), the Court will not address the claims under the Exchange Act at this time. Rather, the Court will direct KDH to file an amended complaint, or, in the alternative, notify the Court that it wishes to rest on the Complaint as filed, within twenty days of the date of this Order.

## IV. ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendants Iterative Capital Management L.P., Iterative Capital GP, LLC, Iterative OTC, LLC, Iterative

Mining, LLC, Brandon Buchanan, and Christopher Dannen ("Defendants") to dismiss the complaint (Dkt. No. 20) of plaintiff KDH Consulting Group LLC ("KDH") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for forum non conveniens (Dkt. Nos. 29, 33) is **DENIED IN PART** and **GRANTED IN PART** as set forth above, and it is further hereby

**ORDERED** that KDH file an amended complaint for Counts One and Two or, in the alternative, notify the Court that it wishes to rest on the complaint as filed, within twenty days of the date of this Order, and it is further hereby

**ORDERED** that KDH show cause why Counts Three through Twelve should not be dismissed with prejudice within twenty days of the date of this Order, and it is further hereby

**ORDERED** that Defendants move for costs, or notify the Court that they will not seek costs, within thirty days of the date of this Order.

**SO ORDERED.**

Dated: New York, New York
       27 June 2020

_____
                    Victor Marrero
                    U.S.D.J.

34