UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

KDH CONSULTING GROUP LLC,
                Plaintiff,

                                                                         1:20 Civ. 3274 (VM)

   – against –

ITERATIVE CAPITAL MANAGEMENT L.P., et al.,
                Defendants.

------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO RECOVER COSTS AND DAMAGES FROM THE TRO SECURITY POSTED BY PLAINTIFF**

                                                         BARNES & THORNBURG LLP

                                                         Robert J. Boller
                                                         Lawrence Gerschwer
                                                         445 Park Avenue, Suite 700
                                                         New York, NY  10022
                                                         646-746-2000 (Office)
                                                         646-746-2001 (Facsimile)
                                                         RBoller@btlaw.com

                                                         *Counsel for Defendants*

July 29, 2020

Defendants Iterative Capital Management, L.P., Iterative Capital GP, LLC, Iterative OTC, LLC, Iterative Mining, LLC, Brandon Buchanan, and Christopher Dannen (collectively, "Defendants"), through their undersigned counsel, for their motion pursuant to Fed. R. Civ. P. 65(c), to recover damages from the TRO security bond posted by Plaintiff KDH Consulting Group, LLC ("Plaintiff"), state as follows:

## INTRODUCTION

The issue before the court is discrete and its resolution is straightforward. Defendants move pursuant to Fed. R. Civ. P. 65(c) and 65.1 to recover the security posted by Plaintiff KDH Consulting Group LLC, in connection with the entry of a TRO in this matter. Defendants are entitled as a matter of law to do so.

At the outset of this litigation, Plaintiff obtained an *ex parte* TRO against Defendants which (a) enjoined Defendants from proceeding with a long planned restructuring, (b) enjoined Defendants from taking steps to honor investor elections in connection with that restructuring, and (c) required Defendants to search for and produce 17 different categories of documents to Plaintiff within five days. As a condition to granting that TRO, the Court (Part 1) required Plaintiff to post $20,000 in security to protect Defendants in the event that it was later determined that Defendants were wrongfully restrained. Upon motion by Defendants, this Court dissolved the TRO, denied Plaintiff's request for a preliminary injunction, and dismissed the claim that supported the TRO in the first place. Thus, there is no question that Defendants were wrongfully restrained within the meaning of FRCP 65(c).

As described in more detail below, Defendants incurred a variety of costs and damages as a direct result of the improper TRO. Those costs included legal fees incurred for advice regarding compliance with the TRO, the TRO's impact on the proposed restructuring transaction

2

that it delayed and communications with investors regarding same, and for advice from regulatory and compliance counsel regarding the TRO's impact on Defendants' various businesses. In addition, Defendants incurred damages resulting from disruption of their businesses and reputational damages within the small cryptocurrency community.

In total, Defendants' damages from the imposition of the wrongful TRO far exceed the amount posted by Plaintiff. Under relevant Second Circuit law, a wrongfully restrained defendant is entitled to a presumption of recovery in these circumstances. Defendants are therefore entitled to recover the $20,000 TRO security posted by Plaintiff.

## RELEVANT FACTUAL BACKGROUND

For purposes of this motion, Defendants will recite only those background and procedural facts that are relevant here.

**Procedural Background**

On April 27, 2020, Plaintiff commenced this action by filing the original Complaint. (Dkt. 1.) The original Complaint asserted 12 causes of action against Defendants, arising under federal and state law. (*Id.* at 21–39.) One of those claims sought an injunction barring Defendants from completing the imminent wind down and restructuring of Iterative Capital, L.P. (the "Partnership"). (*Id.* at 38–39.)

Also on April 27, Plaintiff moved *ex parte* by Order to Show Cause for a TRO against Defendants. (Dkt. 4, 5.) The Court (Part 1) granted Plaintiff's *ex parte* TRO request that day and entered an Order (the "TRO Order") that, *inter alia:* (1) immediately enjoined Defendants from proceeding with the restructuring, (2) immediately enjoined Defendants from honoring any withdrawal or roll-over requests made by other limited partners and/or distributing any assets in kind to those partners, and (3) required Defendants to produce 17 different categories of

3

documents to Plaintiff within five days.  (Dkt. 9.)  These categories of documents demanded by Plaintiff went well beyond anything that Plaintiff would have been entitled to under Delaware Partnership law or the terms of the parties' Limited Partnership Agreement.  (Dkt. 14 at 3.)  The TRO Order also required Plaintiff to post $20,000 in security to protect Defendants against any costs or damages they might incur from being wrongfully restrained.  (Dkt. 9.)

On May 1, Defendants submitted a letter to this Court, providing additional context to the parties' dispute and arguing that the TRO was improperly granted and should be lifted.  (Dkt. 14.) That day, the Court issued a new Order, suspending the portion of the TRO requiring Defendants' document production.  (Dkt. 16.)

On May 5, after oral argument, the Court issued another Order, dissolving the remaining portions of the TRO and denying Plaintiff's request for a preliminary injunction.  (Dkt. 18.)

On May 20 and May 27, the parties exchanged letters, copied to the Court, regarding Defendants' intention to move to dismiss the Complaint.  (Dkt. 29, 30.)

On June 22, Plaintiff submitted a letter motion to the Court requesting a conference and seeking an Order requiring that the $20,000 security be returned to Plaintiff.  (Dkt. 35.)  In the June 22 letter, Plaintiff argued in summary fashion that Defendants could not have been damaged by the wrongful TRO because the TRO was only in place for a short period of time, the restructuring was eventually allowed to close, and Defendants were not ultimately forced to produce the scores of documents originally contemplated when the TRO was entered.  (*Id.* at 2.)

On June 24, Defendants submitted a response to Plaintiff's June 22 letter in which they opposed the return of Plaintiff's security.  (Dkt. 36.)  Defendants explained that they had, in fact, been damaged by imposition of the improper TRO, and described those damages.  (*Id.* at 2.) Defendants also pointed out the illogic of Plaintiff's argument that the limited duration of the

4

TRO precluded damages, *i.e.*, that FRCP 65(b)(2) requires a fourteen-day maximum duration for TRO's, and thus **all** TRO's are of limited duration, by design. (*Id.*)

On June 29, the Court entered an Order dismissing ten of the Complaint's twelve claims, including the claim that gave rise to the TRO in the first place; permitting plaintiffs to re-plead two of the counts; and instructing Defendants to move within 30 days for an award of costs from the security posted by Plaintiff. (Dkt. 37.) Defendants now so move.

### **The Improper TRO Damaged Defendants**

Defendants incurred significant costs and damages as a result of the wrongful TRO. As explained in the Declaration of Brandon Buchanan, Co-Founder and Partner of Iterative Capital, submitted in support of this motion, Defendants first raised the proposed wind down and restructuring of the Partnership with investors in December 2019. (Buchanan Dec., ¶ 2.) After months of deliberation, the investment manager believed a restructuring was in the best interests of investors because of deteriorating market conditions in a rapidly evolving and still nascent asset class. (*Id.*) The Partnership's domestic and on-shore master/feeder structure was also very expensive to administer, with third party expenses in 2019 accounting for over 5% of the Partnership's assets. (*Id.*) Restructuring to a more streamlined limited liability company structure would reduce these costs for continuing investors and provide a liquidity opportunity for investors looking to exit. (*Id.*)

On March 1, 2020, Defendants provided the details of the proposed restructuring to limited partners, including Plaintiff. (*Id.*, ¶ 3.) At a high level, each limited partner was given three options: (1) convert its Partnership interest to an interest in a new vehicle structured as a limited liability company, (2) redeem its Partnership interest and receive cash equal to their pro rata share of the Partnership's assets, or (3) redeem its Partnership interest and receive an in-kind

distribution of the limited partner's pro rata share of Partnership assets. (*Id.*) The deadline for limited partners to make that election was April 28, 2020. (*Id.*, ¶ 4.)

The Court (Part 1) entered the TRO Order on April 27, the day before investor elections were due. (*Id.*, ¶ 5.) Defendants had spent months preparing for the restructuring and the last minute TRO created a significant amount of disruption and cost. (*Id.*, ¶ 6.) Separate from costs incurred in litigating the propriety of the TRO, Defendants incurred legal fees resulting from the improperly granted TRO. (*Id.*, ¶ 7.) Defendants' recoverable legal fees fall into three categories. First, Defendants incurred legal fees related to analyzing and attempting to comply with the TRO's books and records requirement. (*Id.*, ¶ 10.) Plaintiff readily conceded this point in its June 22 letter, noting that after the TRO was entered, Defendants "immediately reached out to Plaintiff in relation to the production." (Dkt. 35 at 2.) Second, Defendants incurred fees related to analyzing the TRO's impact on the restructuring, the offering deadline for which was set to close on the day after the TRO was entered. (*Id.*, ¶ 9.) These fees included advice and counsel regarding communicating with the other 59 limited partners in the Partnership for whom the restructuring was frozen and whose investments hung in the balance. (*Id.*) Third, Defendants incurred fees for regulatory and compliance counsel to analyze how the TRO, which applied to all Defendants, impacted the various regulated entities named in the Complaint. (*Id.*, ¶ 8.) In sum, these legal fees amounted to at least $23,300, separate and apart from fees incurred by Defendants in connection with litigating this dispute.

Defendants also suffered damages in the form of disruption to their affiliated businesses. (*Id.*, ¶ 11.) On its face, the TRO the required production of scores of documents—17 categories in all—almost immediately. Defendants spent time attempting to identify and locate responsive materials, considering how they could be produced to Plaintiff and the implications of doing so,

etc. (*Id.*, ¶ 12.) Also, certain business counterparties cut ties with Defendants. For example, counterparties of Defendant Iterative OTC terminated their relationships and/or suspended ongoing business with that entity. *Id.*, ¶ 13.)

Finally, Defendants suffered additional reputational damages that are difficult to quantify but nonetheless real. (*Id.*, ¶ 14.) The cryptocurrency investment space is relatively small and the competition for investor dollars can be fierce. Defendants continue to feel the notoriety associated with the imposition of the TRO.

## ARGUMENT

As a condition precedent to the granting of a TRO, a plaintiff must post security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FRCP 65(c). The purpose of the injunction security is to "assure[] the enjoined party that it may readily collect damages from the funds posted in the event it was wrongfully enjoined, and that it may do so without further litigation…." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011).

As courts have explained, the party seeking a TRO "consents to liability up to the amount of the bond" as the price for the injunction. *Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo S.A.*, 190 F.3d 16, 20 (2d Cir. 1999) (citations omitted); *see also Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.,* 335 F.3d 235, 240 (3d Cir.2003) ("The [injunction] bond can ... be seen as a contract in which the court and the applicant 'agree' to the bond amount as the 'price' of a wrongful injunction.") Thus, a claim against TRO security "can and should be expected" when a TRO is wrongfully entered. *Nokia Corp.,* 645 F.3d at 558.

In the Second Circuit, wrongfully restrained parties are therefore entitled to a presumption in favor of recovery against Plaintiff's posted security, and a Court must have

"good reason" to deny those damages. *Id*. 558-559. The wrongfully restrained party is entitled to recover any damages proximately caused by imposition of the improper TRO. *Sterling Industries, Inc. v. Sheet Metal Workers' Nat'l Pension Fund*, No. 14 Civ. 5956, 2015 WL 3407925, at *3 (E.D.N.Y. May 27, 2015). And, while attorney's fees incurred in litigating a TRO are not recoverable, "costs and expenses incurred as a result of complying" with a wrongful TRO are recoverable. *Id*.

Moreover, while a wrongfully restrained defendant must demonstrate that its requested damages were proximately caused by the wrongful TRO, the proof of damages "does not need to be to a mathematical certainty." *Nokia Corp.,* 645 F.3d at 559. Once the wrongfully restrained party makes such a showing, "[t]he burden of demonstrating that recovery should be denied is on the party opposing recovery." *Id.*

Here, the TRO Order required Plaintiff to post $20,000 as security in the event that Defendants were wrongfully restrained. There is no dispute that Defendants were, in fact, wrongfully restrained within the meaning of FRCP 65(c). The Court dissolved a portion of the TRO on May 1, dissolved the remainder of the TRO and denied the request for a preliminary injunction on May 5, and dismissed the claim giving rise to the TRO in the first place on June 29.

Thus, Defendants are entitled to a presumption in favor of recovery from the security posted by Plaintiff. And, as explained above and in more detail in the Buchanan Declaration, Defendants' damages arising from the improper TRO were far greater than $20,000.

Moreover, there is no good faith argument that Defendants were not harmed by wrongful imposition of the TRO. Plaintiff has already conceded that Defendants incurred *some* legal fees in connection with attempting to comply; Plaintiff's only real issue appears

to be the quantum of damages. But the arguments previously propounded by Plaintiff are unavailing. As explained in Defendants' June 24 letter, the argument that the limited duration of the TRO here should relieve Plaintiff of its damages burden could be applied to shield plaintiffs from liability for TRO damages in literally every case involving a wrongful TRO, because TRO's are statutorily capped at a 14-day maximum.

And the fact that Defendants were eventually able to consummate the restructuring and were not ultimately required to produce the books and records does not undercut Defendants' argument, it reinforces it. By definition, every defendant who is subjected to a wrongful TRO and successfully litigates to have that TRO lifted is freed from the wrongful restraint. That success is not proof that the defendant was not harmed, it is proof that the defendant never should have been restrained in the first place.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that they are entitled, pursuant to FRCP § 65(c), to recover the $20,000 posted by Plaintiff as security against wrongful restraint. Defendants therefore request that the Court order the security be turned over to Defendants.

Respectfully Submitted,

*/s/ Robert J. Boller*
Robert J. Boller (NY Bar No. 4440996)
Lawrence Gerschwer
BARNES & THORNBURG LLP
445 Park Avenue, Suite 700
New York, NY  10022
646-746-2000 (Office)
646-746-2001 (Facsimile)
RBoller@btlaw.com
LGerschwer@btlaw.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2020, I served a copy of the foregoing upon the Court and upon opposing counsel, listed below, via the SDNY ECF system.

Rika Khurdayan
Dilendorf Khurdayan PLLC
60 Broad Street, 24th Floor
New York, NY 10004
rk@dilendorf.com

*Counsel for Plaintiff*

                                          */s/ Robert J. Boller*
                                          Robert J. Boller