# BARNES & THORNBURG LLP

Robert Boller
Partner
(646) 746-2020
rboller@btlaw.com

445 Park Avenue, Suite 700
New York, NY 10022-8634
Tel. (646) 746-2000
Fax (646) 746-2001
www.btlaw.com

August 10, 2020

VIA ELECTRONIC MAIL AND ELECTRONIC COURT FILING

Rika Khurdayan
Dilendorf Khurdayan PLLC
60 Broad Street, 24th Floor
New York, NY 10004
rk@dilendorf.com

      RE:    *KDH Consulting Group, LLC v. Iterative Capital Mgm't L.P., et al.*, 20 CV 3274

Dear Ms. Khurdayan:

As discussed, I write to inform you that Defendants intend to move to dismiss KDH's First Amended Verified Complaint (the "Amended Complaint") (Dkt. 40). The Amended Complaint presents the same speculative and inconsistent securities fraud allegations presented in the original Complaint. Many of Plaintiff's allegations still misread the relevant documents while others misquote them intentionally. And Plaintiff still ignores that it specifically disclaimed reliance on many of the "representations" alleged in the Amended Complaint. Rather than correct the flaws identified in Defendants' May 20, 2020 letter regarding dismissal of the original Complaint, Plaintiff has chosen to double down, piling on more of the same types of unsupported allegations.

## I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED

Plaintiff now appears to be pursuing three theories of liability under Section 10(b) of the Exchange Act: (a) material omissions in connection with Plaintiff's purchase of a Partnership interest, (b) material misrepresentations in connection with that purchase, and (c) fraud in connection with the wind down of the Partnership, which Plaintiff alleges are actionable under the "forced sale" doctrine. None of Plaintiff's theories is availing.

**A.**    **Plaintiff has not pled a material omission claim.** First, the Amended Complaint generally, and the material omissions argument specifically, are internally inconsistent and self-contradictory. For example, the Amended Complaint alleges that Defendants secretly believed all along that cryptocurrency trading was not a viable strategy and instead planned to run the Partnership as a mining operation, and that they withheld that information from Plaintiff. (Am. Compl. ¶ 3.) But the Amended Complaint also alleges that Defendants *did not* focus on mining at first, and only changed their strategy to increase the mining focus "Upon information and belief, at some point between April and June 2018…." (*Id.*, ¶ 70.) And, the February 2020 investor letter that the Amended Complaint cites repeatedly shows that the majority of the Partnership's assets were invested in cryptocurrency—not mining equipment—as late as December 31, 2019. (Dkt. 27, Ex. 7) (showing $2.57 million in cryptocurrency and $2.06 million in mining assets).

More fundamentally, Plaintiff's fraudulent omission theory ignores the PPM's repeated disclosures that Defendants would engage in mining to generate cryptocurrency "coins". (*See, e.g.*, PPM, 3.) The PPM explained that the Partnership would generate a return in three ways: (1) by trading cryptocurrencies, (2) through "Token Generation Events", and (3) by mining. (*Id.*)

Moreover, the PPM, LPA, and Subscription Agreements all included extensive disclosures regarding the risks of the Partnership's strategy. And, although the Amended Complaint dismisses them as "boilerplate", the risk disclosures are specific and significant. *See* PPM at *iii*, 18, 42 (potential

Atlanta  California  Chicago  Delaware  Indiana  Michigan  Minneapolis  Ohio  Raleigh  Salt Lake City  Texas  Washington, D.C.

R. Khurdayan                                                                              20 CV 3274
August 10, 2020
Page 2

illiquidity); *id.* at 21–26, 42–43 (redemption and withdrawal terms); LPA § 5.5 (same); PPM at 49–53 (potential conflicts of interest); *id.* at 1, 3–4, 7, 9 (intent to engage in mining); *id.* at 34–53 (investment risks); *id*. at 4 (manager could adjust strategies as appropriate "depending on conditions and trends in the market"); Sub. Agm't, § 1(a) (Plaintiff acknowledges it read the PPM and LPA and understood "risk factors" and "conflicts of interest"); *see also* May 5, 2020 Hr'g Tr., 15-16 (this Court recognizing the explicit and comprehensive disclosures).   It is simply false to claim that Defendants failed to disclose their intention to engage in mining or the risks associated therewith.

        **B.**      **Plaintiff has not pled a misrepresentation claim**.   Count One again alleges that the defendants made 16 false statements.   (Am. Compl.)  ¶¶ 103(a)–(p)). As with the original Complaint, those allegations fail to support a claim for securities fraud.  ***First***, seven of the alleged misrepresentations (Am. Compl. ¶¶ 115 (d), (k)–(p)) post-date Plaintiff's January 2018 investment and were therefore not made "in connection with the purchase or sale of a security." *Abrahamson v. Fleschner*, 568 F.2d 862, 868 (2d Cir. 1977) (fraudulent inducement to retain securities is insufficient to state securities fraud claim).  ***Second***, disclaimers in the PPM and Subscription Agreement bar Plaintiff from relying on the three alleged oral misrepresentations made in late 2017 or early 2018.  (*See* Am. Compl. ¶¶ 115(a)–(c); Sub. Agm't, § 3(g) (disclaiming reliance on "any representations. . . except as set forth in the Private Placement Memorandum or the Partnership Agreement"); PPM, *ii* (same); *see also Dodds v. Cigna Securities, Inc.,* 12 F.3d 346, 351 (2d Cir. 1993) (plaintiff alleging § 10(b) violation could not rely on allegedly misleading oral statements contradicted by offering materials).  These disclaimers went beyond mere integration clauses to include specific denials of reliance on the sorts of statements on which Plaintiff rests much of its case.  (Sub. Agm't, § 3(g); PPM, *ii*.)   Courts consistently reject claims alleging reliance on oral representations where the plaintiff has previously disclaimed such reliance.  *See, e.g., Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, Fed. Sec. L. Rep. P 100071, 2018 WL 1627266, at *15 (S.D.N.Y. Mar. 30, 2018)).

        ***Third***, Plaintiff crops four quotes from the PPM (Am. Compl. ¶¶ 115(e)–(h)), implying they are false because they do not mention or under-emphasized the use of mining.  But any honest reading of the PPM confirms that it disclosed the importance of mining to the investment strategy.  (*See, e.g.,* PPM at 1, 3.) These excerpts also intentionally misquote the PPM.  For example, paragraph 115(e) purports to quote from the PPM's discussion of the Partnership's investment strategy, but intentionally omits the phrase "(iii) mining operations and equipment." And paragraph 115(h) incorrectly quotes the PPM as committing to "only invest up to 30%" of the Partnership's assets in mining, but the Court has previously rejected this interpretation of the PPM's language.  (May 5, 2020 Hr'g Tr., 16.)  ***Fourth***, two of the alleged misstatements (Am. Compl. ¶¶ 115 (i), (j)) merely quote from the PPM without explaining how the statements are false. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) ("[P]laintiffs must do more than simply assert that a statement is false—they must demonstrate with specificity why that is so.")(citation omitted).

        **C.**      **Plaintiff cannot rely on the forced sale doctrine**.  Plaintiff now also attempts to invoke the "forced sale" doctrine to assert a securities fraud claim in connection with the wind down-of the Partnership. But the "forced sale" doctrine plainly does not apply here and, even if it did, the Amended Complaint does not plead the basic elements of a "forced sale" claim.

        The "forced sale" theory of securities fraud applies in the narrow circumstance where (1) shareholder votes in favor of a corporate transaction are procured by fraud and (2) a plaintiff was in the minority who voted against the proposed transaction but was forced to participate as a result of losing the vote.  *Grace v Rosenstock*, 228 F.3d 40, 49 (2d Cir. 2000). In that scenario, a

**BARNES & THORNBURG** LLP

R. Khurdayan                                                                        20 CV 3274
August 10, 2020
Page 3

dissenting plaintiff can assert a "forced sale" claim if it can show (a) the majority was deceived into voting for the transaction and (b) the deception caused plaintiff's alleged injury.  *Id.*

The Amended Complaint does not even attempt to plead these elements.  Counts I and II focus exclusively on the fraudulent purchase theories, framing all allegations in the context of Plaintiff's decision to invest and remain in the Partnership.  Neither Count mentions the the wind down or the alleged forced sale of Plaintiff's interest.  (*See* Am. Compl. ¶¶ 113-139.)  More broadly, the Amended Complaint refers to the redemption of Plaintiff's interest as a "forced sale", but does not even mention voting or allege that a vote was required and procured by fraud. (*See id*., ¶¶ 99-112.)  On the contrary, Plaintiff describes its redemption as a "forced removal" by Defendants (*id*., ¶ 110) and explicitly accepts that the disclosures made in advance of the restructuring were accurate.  (*See, e.g.*, *id.* at ¶ 102 ("These are the disclosures that should have been provided to Plaintiff when Defendants solicited investment into the Fund Complex…").)[1]

## II.        COUNT II SHOULD BE DISMISSED

Count II also fails to state a claim for control person liability under Section 20(a) of the Exchange Act.  To state a 20(a) claim, a plaintiff must allege (1) a primary violation by the controlled entity, (2) defendant's control of the primary violator, and (3) that defendant was a culpable participant in the fraud.  *Alpha Capital Anstalt*, 2018 WL 1627266, at *19.  As explained above, Count I fails to state a primary securities fraud claim.  But Count II also fails to allege that the Individual Defendants were culpable in the alleged fraud described in Count I, and in fact does not mention that alleged fraud at all.  Instead, Count II relies on allegations regarding actions taken by the Individual Defendants in managing the Partnership, including hiring auditors and participation in audits, monitoring the Partnership's portfolio, allegedly failing to disclose a change in the Partnership's investment strategy, and failing to return Plaintiff's investment.  (Am. Compl. ¶ 129-138.)  Even if true, these allegations all post-date Plaintiff's investment and would not support a claim for control person liability under Section 20(a).

## III.       ITERATIVE OTC AND ITERATIVE MINING SHOULD BE DROPPED

Iterative Mining, LLC and Iterative OTC, LLC should also be dismissed because Plaintiff does not allege any misconduct whatsoever by either entity.  The Amended Complaint alleges vaguely that these entities were successful and "grew" during the relevant period (*see* Am. Compl. ¶¶ 20, 98), but does not even suggest that Iterative OTC or Iterative Mining made any false statements to Defendant.  This is fatal to any securities fraud claim against them.  *See Janus Capital Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 141 (2011) (primary liability for a misstatement under Rule 10b-5 attaches only to the statement's maker). In fact, the Amended Complaint acknowledges that Iterative OTC was formed contemporaneously with the Partnership's launch (*id*., ¶ 55), and therefore did not exist when Plaintiff was considering its Partnership investment and ***could not possibly*** have made any statement on which Plaintiff relied.

The myriad infirmities in the Amended Complaint cannot be resolved and require dismissal.  If you decline to do so voluntarily, we will seek such relief from the Court.

Respectfully submitted,

*/s/ Robert J. Boller*
Robert J. Boller

CC:    Hon. Victor Marrero

---

[1] As described in Defendants' May 20, 2020 letter, Plaintiff's claims are also time-barred.

**BARNES & THORNBURG** LLP