# DILENDORF KHURDAYAN

| | |
|---|---|
| 60 Broad Street, 24th Floor | Rika Khurdayan, Esq. |
| New York, New York 10004 | Partner |
| Tel. 212.457.9797 | Cel. 646.764.1630 |
| Dilendorf.com | rk@dilendorf.com |

To:   ROBERT BOLLER                                                                                    **August 17, 2020**
      BARNES & THORNBURG LLP
      445 PARK AVENUE, SUITE 700
      NEW YORK, NY 10022

**VIA ECF AND EMAIL TO** RBOLLER@BTLAW.COM; CC: HON. V. MARRERO, USDJ.

RE:   *KDH CONSULTING GROUP LLC V. ITERATIVE CAPITAL MANAGEMENT L.P. ET AL.*
      **20-CV-03274 | PLAINTIFF'S RESPONSE TO DEFENDANTS' SECOND PRE-MTD LETTER**

Dear Mr. Boller:

     This is in response to your letter, dated August 10, 2020 ("Letter"). Plaintiff KDH Consulting Group LLC ("KDH") will oppose Defendants' motion to dismiss ("MTD"), if filed, and will defend the First Amended Verified Complaint ("Amended Complaint") containing well-pleaded allegations of securities fraud, as supported by the established precedent in this District.

     While KDH's arguments from the previous pre-MTD letter, dated May 27, 2020 (Dkt. No. 30) relating to the original Complaint are still applicable to the Amended Complaint and warrant denial of an MTD, the Amended Complaint described Defendants' fraudulent misrepresentations and omissions constituting the alleged overall fraud with even more particularity. Specifically, that the boilerplate, contradictory and misleading statements in the Defendants' offering materials inaccurately represented the actual risk profile and material terms of the investment, including inadequate principal objectives, illiquidity related to the trading strategy and not mining, concentration provisions, diminished and boilerplate conflict of interest language, inadequate disclosures in connection with the primary purpose of the fund, risks specifically related to mining, as well as the affiliated transactions. Am. Compl. ¶¶115-116.

     KDH reiterates that its "theory of securities law violations rests not upon a single decisive action which manifestly demonstrates [Defendants'] alleged wrongdoing, but on a series of interrelated events which, viewed as a whole, represent the big picture of fraudulent conduct." *Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 640 (S.D.N.Y. 2012). Boilerplate disclosures about speculative nature of the investment and risks, as well as general disclaimers, cannot shield Defendants from intentional misconduct and preclude reasonable reliance on misrepresentations made outside of the agreements. *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140-41 (2d Cir. 2019); *Dodona*, 847 F. Supp. 2d at 647.

     The offering documents, together with other written and oral statements and omissions, show that Defendants did not genuinely believe in what they represented to KDH as an investment opportunity. Defendants statements and omissions concealed Defendants' true intent at that time to

promote Defendants new mining strategy and separate mining business or, at the very least, the actual significant risk of such development.

1. **Plaintiff pleaded material omission and misrepresentation claims sufficiently for Defendants not to escape liability for their securities fraud**. Contrary to Defendants' contention, the Amended Complaint describes specifically how Defendants misled KDH from the very beginning. Despite having already determined that the ICO and cryptocurrency trading was no longer a viable investment strategy, Defendants' advertised this particular strategy and touted prior success in ICOs and cryptocurrency trading to solicit KDH's $1,000,000. Am. Compl. ¶¶3; 47; 48.

Defendants are simply wrong claiming that offering documents contain adequate disclosures about the fund's nature, strategy and risks. Specifically, Defendants omitted to mention the actual risk, known to them, of changing the fund's primary cryptocurrency trading and investment strategy to the mining operations and the resulting illiquidity. Am. Compl. ¶51. While Defendants were aware of the substantial risks associated with the illiquid mining strategy and Defendants' related operating business, Defendants chose to downplay such risks and omit them from any statements to KDH, including the offering documents. Am. Compl. ¶116(a); 116(c); 118.

Throughout the Amended Complaint, KDH adequately alleged misleading statements and omissions, as well as specified reasons why such statements were misleading. Am. Compl. ¶117. *See Dodona*, 847 F. Supp. at 646 ("Reading the Complaint in its entirety, it is clear that the alleged omission amounts to an allegation that Defendants inaccurately represented the risk, of which they were actually aware, associated with investing in the [red-flagged assets]."); *id.* at 647:

> [plaintiff] has adequately alleged an actionable omission because, assuming it is right about the known risks, the risk disclosures in the Offering Circulars were inaccurate and therefore misleading. … Complaint indicates that Goldman had determined in late 2006 that the risks associated with subprime-related assets were substantial enough to warrant a major shift in strategy. Yet, in addressing the risks, the Offering Circulars provide only boilerplate statements regarding the "SPECULATIVE" and risky nature of investing in securities, the possibility of market downturns, and the risks generally associated with mortgage-backed assets.

*Lululemon* cited in the Letter is also in line with KDH's securities fraud claims taken as a whole. *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 573 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) ("When deciding a motion pursuant to Rule 12(b)(6), a court must decide whether all facts taken together—that is, collectively—give rise to a strong inference that a maker of a statement acted with scienter.") In addition, *Abrahamson* cited by Defendants support KDH's claims stating that there is a line of "cases which have held that significant modifications in the rights of security holders may constitute a 'sale' of one security and 'purchase' of another under Section 10(b) and Rule 10b-5…" … where there is a "significant change in the nature of the investment or in the investment risks as to amount to a new investment." *Abrahamson v. Fleschner*, 568 F.2d 862, 868 (2d Cir. 1977). As alleged in the Amended Complaint, a portion of Defendants' misrepresentations relate to the significant change of KDH's limited partnership interest in the hedge fund to a proposed equity in a crypto mining operating company.

Individual Defendants should be liable under Section 20(a) as the Amended Complaint, if taken as true, alleges that Bannon and Buchanan are the ones who at all times controlled the rest of the Defendants and made fraudulent statements and omissions on their behalf. So, KDH's omission and misrepresentation claims are well-pleaded and should stand.

2.      **The Amended Complaint also contains sufficient allegations to state a claim under the "forced sale" doctrine.** "A shareholder who is forced to sell or alter her securities as the result of a fraudulent scheme is deemed a seller for purposes of the securities laws. The forced sale doctrine also eliminates the reliance requirement." *Gordon Partners v. Blumenthal*, No. 02 CIV 7377 LAK AJP, 2007 WL 431864, at *11 (S.D.N.Y. Feb. 9, 2007), *aff'd*, 293 F. App'x 815 (2d Cir. 2008). The Amended Complaint contains ample allegations of how Defendants, as a part of their fraudulent scheme, convinced KDH not to withdraw from the fund but stay in expectation of Defendants' promised long term liquidity strategy, so that Defendants could materially alter KDH's securities in order to own and profit from Defendant's mining business. *See e.g.*, Am. Compl. ¶¶63, 64, 110, 111. *See also Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 635 (2d Cir. 1967) ("Since the complaint alleges that plaintiff, in effect, has been forced to divest himself of his stock and this is what defendants conspired to do, reliance by plaintiff on the claimed deception need not be shown.")

3.      **Claims against Iterative Mining, LLC and Iterative OTC, LLC should stay.** As stated in relation to the original Complaint, KDH alleges a tight weave of connections between Iterative OTC, Iterative Mining and other Defendants all participating or used as instrumentality in the alleged fraudulent scheme. *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 406 (S.D.N.Y. 2010). Because of their positions and access to material non-public information, all of the Defendants knew or recklessly disregarded that the adverse facts specified in the Amended Complaint had not been disclosed to, and were being concealed from, KDH. As alleged in the Amended Complaint, Defendants made representations in the PPM on behalf of Iterative OTC and Mining, and these companies had significantly greater proprietary financial interests in the offering, which was not disclosed to KDH. Am. Compl. ¶115, 117. Finally, Defendants admitted that they were going to consolidate the fund with their flagship business, Iterative OTC. Am. Compl. ¶¶21, 99, 131.  These allegations of Defendants profiting through these entities and intending to do so from the very beginning are also relevant to demonstrate Defendants' scienter in the form of a motive and opportunity to commit the alleged securities fraud. *See ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).

Overall, Defendants' arguments in the Letter do nothing more than attempt to raise questions of fact regarding the sufficiency of risk disclosures in the offering documents and the amount of funds actually expended on mining strategy. Any inconsistencies and contradictions mentioned in the Letter may be attributed to the inconsistent and contradicting documents and statements that Defendants provided to KDH and other investors, which only support KDH's claims. To-date, Defendants refuse to account for funds' operations and provide KDH with access to books and records. As for the claim of sufficiently disclosing mining strategy and risks associated with such strategy – a simple comparison of disclosure documents delivered to investors during restructuring with those delivered at the time of soliciting investment from KDH clearly show what adequate risk disclosures would look like. *See* Dkt. Nos. 27-12 and 27-3. Defendants themselves state that the risk profile of the restructured venture is different than that of the original investment. Dkt. Nos. 27-11; 27-12 at p. 6. In any event, these issues of fact are inappropriate for resolution on a motion to dismiss.

*Rika Khurdayan*
Rika Khurdayan, Esq.