UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

KDH CONSULTING GROUP LLC,
                    Plaintiff,

                                                                **1:20 Civ. 03274 (VM)**

          – against –

ITERATIVE CAPITAL MANAGEMENT L.P., et al.,
                    Defendants.

-----------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO RECOVER COSTS AND DAMAGES FROM THE TRO SECURITY POSTED BY PLAINTIFF


BARNES & THORNBURG LLP

Robert J. Boller
Lawrence Gerschwer
445 Park Avenue, Suite 700
New York, NY  10022
646-746-2000 (Office)
646-746-2001 (Facsimile)
RBoller@btlaw.com

*Counsel for Defendants*


December 11, 2020

Defendants Iterative Capital Management, L.P., Iterative Capital GP, LLC, Iterative

OTC, LLC, Iterative Mining, LLC, Brandon Buchanan, and Christopher Dannen (collectively,

"Defendants"), through their undersigned counsel, for their renewed motion pursuant to Fed.

R. Civ. P. 65(c), to recover damages from the TRO security bond posted by Plaintiff KDH

Consulting Group, LLC ("Plaintiff"), state as follows:

## INTRODUCTION

Earlier this year, Defendants moved under Fed. R. Civ. P. 65(c) and 65.1 to recover the

security posted by Plaintiff KDH Consulting Group LLC, in connection with the entry of a TRO

in this matter.  The Court recently denied that motion, holding *inter alia* that Defendants had not

adequately substantiated the damages and costs requested in their moving papers.  The Court

further advised Defendants regarding which categories of requested costs were not recoverable.

Based on the Court's guidance, Defendants hereby submit a renewed motion to recover costs and

damages from the TRO security posted by Plaintiff.

## RELEVANT FACTUAL BACKGROUND

Defendants provided an extensive recitation of the relevant factual background in

connection with their original motion.  (Dkt. 41).  For purposes of this renewed motion,

Defendants will recite only those facts that are relevant here.

### Procedural Background

On April 27, 2020, Plaintiff commenced this action by filing the original Complaint.

(Dkt. 1.)  The original Complaint asserted 12 causes of action against Defendants, arising under

federal and state law.  (*Id.* at 21–39.)  One of those claims sought an injunction barring

Defendants from completing the contemplated wind down and restructuring of Iterative

Capital, L.P. (the "Partnership").  (*Id.* at 38–39.)

Also on April 27, Plaintiff moved *ex parte* by Order to Show Cause for a TRO against Defendants.  (Dkt. 4, 5.)  The Court (Part I) granted Plaintiff's *ex parte* TRO request that day and entered an Order (the "TRO Order") that, *inter alia:* (1) immediately enjoined Defendants from proceeding with the restructuring, (2) immediately enjoined Defendants from honoring any withdrawal or roll-over requests made by other limited partners and/or distributing any assets in kind to those partners, and (3) required Defendants to produce 17 different categories of documents to Plaintiff within five days.  (Dkt. 9.)  These categories of documents demanded by Plaintiff went well beyond anything that Plaintiff would have been entitled to under Delaware Partnership law or the terms of the parties' Limited Partnership Agreement.  (Dkt. 14 at 3.)  The TRO Order also required Plaintiff to post $20,000 in security to protect Defendants against any costs or damages they might incur from being wrongfully restrained.  (Dkt. 9.)

On May 1, Defendants submitted a letter to this Court, providing additional context to the parties' dispute and arguing that the TRO was improperly granted and should be lifted.  (Dkt. 14.) That day, the Court issued a new Order, suspending the portion of the TRO requiring Defendants' document production.  (Dkt. 16.)

On May 5, after oral argument, the Court issued another Order, dissolving the remaining portions of the TRO and denying Plaintiff's request for a preliminary injunction.  (Dkt. 18.)

On June 29, the Court entered an Order dismissing ten of the Complaint's twelve claims, including the claim that gave rise to the TRO in the first place; permitting plaintiffs to re-plead two of the counts; and instructing Defendants to move within 30 days for an award of costs from the security posted by Plaintiff.  (Dkt. 37.)

On July 20, Plaintiff filed its First Amended Complaint.  (Dkt. 40.)  On August 10, Defendants served a pre-motion letter upon Plaintiff's counsel, explaining why the First

Amended Complaint suffers from the same fatal infirmities as the original Complaint and should be dismissed.  Per the Court's rules, Defendants filed a copy of that letter to the docket.  (Dkt. 47.)  On August 17, Plaintiffs' counsel served a letter in opposition which was also filed on the docket.  (Dkt. 48.)  Those letters are pending.

**The Original TRO Security Motion**

On July 29, separate from the motion to dismiss correspondence, Defendants filed a motion to recover funds from Plaintiff's TRO security (the "Original TRO Security Motion"). (Dkt. 41.)  In the Original TRO Security Motion, Defendants identified various categories of costs, fees, and damages they incurred as a result of the improper TRO and sought to recover the entirety of the $20,000 security.  (*Id*.)  Those categories included (1) fees and costs incurred attempting to comply with the TRO's document production requirement, (2) time spent locating responsive documents, (3) fees and costs incurred analyzing the TRO's impact on the Defendants' pending restructuring, (4) fees and costs incurred analyzing the TRO's impact on Defendants' regulated businesses, (5) damage to Defendants' business relationships, and (6) damage to Defendants' reputation.  (*Id*. at 6-7.)  On August 4, Plaintiff filed its opposition to Defendants' recovery motion.  (Dkt. 46.)

**The Court's November 9 Order**

On November 9, the Court entered an order denying the Original TRO Security Motion (the "November 9 Order").  (Dkt. 49.)  In the November 9 Order, the Court explained that only those fees and costs incurred by a party in complying with an improper injunction are recoverable against TRO security under FRCP 65(c).  (*Id*. at 5 (citation omitted)).  Accordingly, the Court rejected four of Defendants' requested categories of recovery:  fees incurred analyzing the TRO's impact on the Defendants' businesses, fees incurred addressing the TRO's impact on

the pending restructuring, damage to Defendants' business relationships and damage to Defendants' reputation.  Per the Court, "while these costs may have resulted from the TRO, they were not incurred to facilitate Defendants' compliance with the TRO."  (*Id*. at 5-6. (citations omitted)).

The two remaining categories requested by Defendants—legal fees incurred in attempting to comply with the TRO and time spent by Defendants attempting to locate responsive documents—did result from Defendants' attempt to comply with the TRO.  With respect to these categories, however, the Court held that Defendants had not adequately substantiated their requested damages.  (*Id*. at 6.)

**Defendants' Renewed Motion To Recover The TRO Security**

On November 19, Plaintiff submitted a letter to the Court seeking to have the TRO security returned in reliance on the November 9 Order.  (Dkt.  51.)  On November 27, Defendants submitted a response letter indicating that, if given the opportunity, they would submit a renewed motion to recover from the TRO, consistent with the November 9 order.   (Dkt. 52.)

On November 30, the Court entered an order granting Defendants leave to renew their motion to recover.  (Dkt. 53.)  Defendants now so move.

**The Improper TRO Damaged Defendants**

Defendants incurred significant costs and damages as a result of the TRO.  In addition to disrupting the then-pending restructuring and interfering with Defendants' other businesses, the TRO caused Defendants to incur costs and damages in attempting to comply with it.

As explained in the Declaration of Brandon Buchanan, Co-Founder and Partner of Iterative Capital, submitted herewith, upon learning of the TRO's entry on April 27, Defendants

5

immediately moved to retain litigation counsel and address complying with the TRO.  (Buchanan

Dec., ¶ 3.)  Mr. Buchanan conferred with Defendants' transactional counsel to ascertain the

location of various documents and materials that had been gathered previously.  (*Id*.)  Mr.

Buchanan also contacted Plaintiff's counsel that day to discuss the document demands.  (*Id*.)

Plaintiff acknowledged this point in its June 22 letter, noting that after the TRO was entered,

Defendants "immediately reached out to Plaintiff in relation to the production."  (Dkt. 35 at 2.)

Mr. Buchanan then set about locating relevant documents.  (Buchanan Dec., ¶ 3.)  These

efforts were complicated and made significantly more difficult by the fact that this was taking

place in April, during the early parts of the COVID outbreak in New York and while

Defendants' entire staff was under stay-at-home orders and precluded from entering Defendants'

offices.  (*Id*. at ¶ 8.)

Over the next several days and until the Court's May 1 Order suspending the TRO's

document production requirements, Mr. Buchanan estimates that he spent 30 hours accessing and

gathering electronic files and attempting to comply with the TRO.  (*Id*. at ¶ 7.)  The value of that

lost time is difficult to quantify, but Mr. Buchanan estimates the value to be at least $16,500.

(*Id*. at ¶ 11.)

Separate from Mr. Buchanan's efforts to locate documents, Defendants' counsel spent

significant time on TRO compliance.  As explained in the Declaration of Robert Boller

submitted herewith, counsel first spent time analyzing the TRO's production requirements, then

began conferring with Mr. Buchanan and transactional counsel regarding what documents could

realistically be located and gathered under the circumstances.  (Boller Dec., ¶¶ 6-7.)  Next,

counsel prepared for and participated in a call with Plaintiff's counsel regarding the TRO and

what Plaintiff could produce given the circumstance and timing.  (*Id*. at ¶ 10-11.)  Counsel had

multiple discussions with Mr. Buchanan regarding a plan for gathering and producing documents

to Plaintiff.  (*Id*. at ¶ 12.)  Counsel spent time compiling a list of documents that could be

produced.  (*Id.*)  Finally, counsel spent time reviewing documents provided by Mr. Buchanan.

(*Id*. at ¶ 13.)  Defendants estimate that the total amount of legal fees incurred in complying with

the TRO was $8,030.  (*Id*. at ¶ 16.)  This amount is separate from, and represents a small fraction

of, the fees incurred by Defendants in connection with seeking to have the TRO lifted.  (*Id*. at ¶

20.)

In total, Defendants believe they incurred at least $24,530 in fees, costs, and damages

resulting from attempting to comply with the TRO.

## ARGUMENT

In the Second Circuit, wrongfully enjoined parties are entitled to a "presumption of

recovery" against a TRO bond for damages that they can prove.  *Nokia Corp. v. InterDigital, Inc.*,

645 F.3d 553, 557 (2d Cir. 2011).  Recoverable damages are those that arise are a result of

complying with the wrongful injunction.  *Id.* at 560.  And while a wrongfully restrained

defendant must demonstrate that its requested damages were proximately caused by the

wrongful TRO, the proof of damages "does not need to be to a mathematical certainty."  *Id*. at

559.

Here, there is no dispute that Defendants were wrongfully restrained within the

meaning of FRCP 65(c).  Thus, Defendants are entitled to recover those damages incurred as

a result of their compliance with the TRO entered in this case.  As explained above,

Defendants suffered significant damages in complying with the improper TRO.  Specifically,

Defendants incurred legal fees of at least $8,030 in connection with TRO compliance, which

included time spent analyzing the categories of documents required to be produced,

conferring with opposing counsel regarding production, and working with Defendants on the identification, gathering and review of relevant documents. Additionally, Defendants themselves spent significant time on locating and gathering documents. Defendants estimate the value of that time to be at least $16,500. These amounts are recoverable from the TRO security, which exists precisely to compensate aggrieved parties who are subjected to improper restraint, as Defendants were here.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that they are entitled, pursuant to FRCP § 65(c), to recover the full $20,000 from Plaintiff's TRO security. Defendants therefore request that the Court order the security be turned over to Defendants.

Respectfully Submitted,

*/s/ Robert J. Boller*
Robert J. Boller
Lawrence Gerscher
BARNES & THORNBURG LLP
445 Park Avenue, Suite 700
New York, NY 10022
646-746-2000 (Office)
646-746-2001 (Facsimile)
RBoller@btlaw.com
LGerschwer@btlaw.com

*Counsel for Defendants*

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2020, I served a copy of the foregoing upon the

Court and upon opposing counsel, listed below, via the SDNY ECF system.


Rika Khurdayan
Khurdayan PLLC
60 Broad Street, 24th Floor
New York, NY 10004
rika@kstechlaw.com

*Counsel for Plaintiff*

                                        */s/ Robert J. Boller*
                                        Robert J. Boller