UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

KDH CONSULTING GROUP LLC,

           Plaintiff,

– against –

ITERATIVE CAPITAL MANAGEMENT L.P., et al.,

           Defendants.

1:20 Civ. 03274 (VM)

**DECLARATION OF ROBERT BOLLER IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO RECOVER COSTS AND DAMAGES FROM PLAINTIFF'S TRO SECURITY**

------------------------------------------------------------------X

I, Robert Boller, declare under penalty of perjury that the following is true and correct:

1. I am a partner at Barnes & Thornburg LLP. I submit this declaration in support of Defendants' motion to recover costs from the TRO security provided by Plaintiff.

2. I have personal knowledge of the facts set forth herein.

3. Defendants retained my firm on April 28, 2020, to represent them in this matter.

4. The TRO issued on April 27 required Defendants to produce 17 categories of documents to Plaintiff within five days, *i.e.*, by May 2.

5. Between April 28 and April 30, I and other attorneys at my firm spent time attempting to comply with the document production provisions included in the TRO that had been issued on April 27, as described in more detail below.

6. First, on April 28, I spent time analyzing Plaintiffs' books and records demand and the categories of documents required to be produced.

7. I spoke with Brandon Buchanan, co-founder of Iterative Capital, several times on April 28 about the location and accessibility of the various categories of documents required to be produced. Because of COVID stay-at-home orders in place at the time, Mr. Buchanan and all of

Defendants' employees were working remotely and they did not have access to any hard copy files located at Defendants' office, which complicated matters.

8. I also spoke twice on April 28 with William Mongan of Akin Gump Strauss Hauer & Feld LLP, whose firm was representing Defendants in connection with their pending restructuring and who had responded on Defendants' behalf to a prior DRULPA § 17-305 records demand from Plaintiff. Among other things, we discussed the location of, access to, and means of providing certain documents required by the TRO. My partner, Christopher Lynch, joined me for the second call with Mr. Mongan.

9. I also spoke with Mr. Lynch and another partner, Lawrence Gerschwer, throughout the day regarding the plan for complying with the TRO.

10. Also on April 28, I contacted Plaintiff's counsel to discuss Defendants' objection to the TRO and to negotiate the scope and timing of Defendants' production. Plaintiff's counsel was unavailable to speak on the evening of April 28, so the parties agreed to convene a call at 9 AM on April 29. I then spent additional time on April 28 preparing for the call with Plaintiff's counsel.

11. On April 29, I participated in a call with Plaintiff's counsel regarding the TRO and our document production. Messrs. Gerschwer and Lynch from my firm also participated in that call.

12. I had several discussions throughout the day on April 29 with my partners and with Mr. Buchanan regarding the TRO and the mechanics of gathering and producing responsive documents. I also spent time compiling a list of responsive documents that could be produced quickly given the circumstances.

13. The following day, April 30, I reviewed various documents provided by Mr. Buchanan that would be responsive to the TRO production requirements. I also spent time reviewing prior books-and-records correspondence with Plaintiff's counsel to better understand the types of documents of particular interest to Plaintiff. I also spent time considering the best method of delivering the documents we might produce.

14. Throughout this April 28-30 period, I and my team were also hard at work drafting a letter to the Court requesting a conference to address the TRO, which we believed was improperly granted. The majority of the time spent on this matter during the April 28-30 period was spent in connection with researching and drafting papers in opposition to the TRO and in anticipation of a preliminary injunction hearing.

15. On the morning of May 1, we submitted our letter to the Court identifying several problems with the improperly granted TRO. Within a few hours, the Court entered an order suspending the document production aspects of the TRO. We spent no additional time in connection with attempting to comply with the TRO after that.

16. Attached hereto is a redacted copy of my firm's invoice for the relative time period. This invoice is based on the contemporaneous time entries made by the attorneys working on this matter. The non-redacted portions of the invoice show the time entries during the April 28-30 time period that relate to complying with the TRO and for which Defendants are entitled to recovery. In total, I estimate that Defendants incurred approximately $8,030 in fees for attorney time related to attempting to comply with the TRO, as described below.

17. I estimate the total time I spent related to TRO compliance as follows:

    a. On April 28, I billed 6.0 hours to this matter, of which I estimate that approximately 2.5 hours related to TRO compliance. The time related to TRO

compliance included time spent reviewing and analyzing the TRO's document production requirement; multiple discussions with the client, the client's other counsel, and my partners regarding the TRO's document production requirement and the location and accessibility of responsive documents; formulating a strategy for compliance; and preparing for a call with opposing counsel regarding the TRO and the production requirement.

b. On April 29, I billed 5.8 hours to this matter, of which I estimate that approximately 1.5 hours were related to TRO compliance. The time related to TRO compliance included time spent preparing for and participating in a call with opposing counsel regarding the TRO and compliance therewith; discussions with the client and my partners regarding the TRO's document production requirement; review/analysis of the specific categories of documents requested; and compiling a list of responsive documents that could be provided to Plaintiff.

c. On April 30, I billed 12.1 hours to this matter, of which I estimate that approximately 3.5 hours was related to TRO compliance. The time related to TRO compliance included time spent reviewing prior correspondence with Plaintiff's counsel regarding the books and records demand and reviewing documents responsive to the TRO's production requirement.

d. In total, I estimate that 7.5 of the 23.9 hours that I spent on this matter during the April 28-30 period was recoverable time spent in connection with attempting to comply with the TRO. My billable rate for this matter is $800

per hour, which amounts to approximately $6,000 in fees for my time spent on TRO compliance.

18. I estimate the total time spent by my partner, Christopher Lynch, related to TRO compliance as follows:

   a. On April 28, Mr. Lynch billed 5.8 hours to this matter, of which I estimate that approximately 1.0 hour was related to TRO compliance. The time related to TRO compliance included multiple discussions with Defendants' other counsel and internally regarding the TRO and the records production requirement.

   b. On April 29, Mr. Lynch billed 10.2 hours to this matter, of which I estimate that approximately 1.0 hour was related to TRO compliance. The time related to TRO compliance included the call with opposing counsel and internal follow-up discussions.

   c. In total, I estimate that 2.0 hours of the 23.9 hours that Mr. Lynch spent on this matter during the April 28-30 period was recoverable time spent in connection with attempting to comply with the TRO. Mr. Lynch's billable rate for this matter is $590 per hour, which amounts to approximately $1,180 in fees for Mr. Lynch's time spent on TRO compliance.

19. I estimate the total time spent by my partner, Lawrence Gershwer, related to TRO compliance as follows:

   a. On April 29, Mr. Gerschwer billed 2.0 hours to this matter, of which I estimate that approximately 1.0 hour was related to TRO compliance. The time related to TRO compliance included the call with opposing counsel, internal follow-up

discussions, and discussions with the client regarding the TRO response and compliance plan.

      b. In total, I estimate that 1.0 hours of the 11.5 hours that Mr. Gerschwer spent on this matter during the April 28-30 period was recoverable time spent in connection with attempting to comply with the TRO. Mr. Gerschwer's billable rate for this matter is $850 per hour, which amounts to approximately $850 in fees for Mr. Gerschwer's time spent on TRO compliance.

20. In total I estimate that approximately 10.5 hours of the 72.5 hours spent by attorneys at our firm on this matter during the April 28-30 period were spent on attempting to comply with the TRO.

December 10, 2020            __/s/Robert Boller_____

                                          Robert Boller

                                          BARNES & THORNBURG LLP