```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: March 23, 2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
KDH CONSULTING GROUP LLC,              :
                                       :
                      Plaintiff,       :           20 Civ. 3274
                                       :
        - against -                    :        **DECISION AND ORDER**
                                       :
ITERATIVE CAPITAL MANAGEMENT L.P., :
et al.,                                :
                                       :
                      Defendants.      :
-----------------------------------X

**VICTOR MARRERO**, United States District Judge.

        Plaintiff KDH Consulting Group LLC ("KDH") brings this
action against Iterative Capital Management L.P. ("Iterative
Capital Management"), Iterative Capital GP, LLC ("Iterative
Capital"), Iterative OTC, LLC ("Iterative OTC"), Iterative
Mining, LLC ("Iterative Mining"), Brandon Buchanan
("Buchanan"), and Christopher Dannen ("Dannen," and together
with Buchanan, "Individual Defendants") (collectively,
"Defendants"). The initial complaint alleged twelve counts.
(See "Complaint," Dkt. No. 20.) Counts One through Four
alleged violations of the federal securities laws, while
Counts Five through Twelve brought claims under state and
common law. (Complaint ¶¶ 102-86.) This Court subsequently
granted in part and denied in part Defendants' motion to
dismiss the Complaint. (See Dkt. No. 37.)

1

On July 20, 2020, KDH filed a First Amended Complaint
(the "FAC"), alleging two counts of violations of federal
securities laws. (See FAC, Dkt. No. 40.) Count One alleges
that Defendants had violated Section 10(b) of the Securities
Exchange Act of 1934 and the related Rule 10b-5. (FAC ¶¶ 113-
28.) Count Two alleges that the Individual Defendants
violated Section 20(a) of the Securities Exchange Act. (Id.
¶¶ 129-38.)

Now before the Court are the premotion letters filed by
the parties regarding Defendants' contemplated motion to
dismiss the FAC. Defendants notified KDH of their intent to
seek permission to file a motion to dismiss the Complaint
pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule
12(b)(6)") on August 10, 2020. (See "Letter Motion," Dkt. No.
47.) By letter dated August 17, 2020, KDH responded to the
Letter Motion, arguing that the Complaint sufficiently states
violations of Section 10(b), Rule 10b-5, and Section 20(a) of
the Securities Exchange Act. (See "Opposition," Dkt. No. 48.)

The Court now construes Defendants' Letter Motion as a
motion by Defendants to dismiss the Complaint pursuant to
Rule 12(b)(6).[1] For the reasons set forth below, the Letter
Motion is GRANTED IN PART and DENIED IN PART.

---

[1] Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x
69, 70 (2d Cir. 2019) (affirming the district court's ruling deeming
exchange of letters as motion to dismiss).

## I.   **BACKGROUND**

A.   FACTUAL BACKGROUND[2]

KDH became a limited partner in Iterative Capital, L.P. (the "Partnership," and together with Iterative Capital Master, L.P. and Iterative Mining Master, L.P., the "Fund Complex") in January 2018 with a $1,000,000 investment. KDH's investment is generally governed by three documents:

- The Subscription Agreement ("Subscription Agreement"), signed by KDH on January 5, 2018 (see "Hatami Decl.," Dkt. No. 27 ¶ 7 & Ex. A);
- The Limited Partnership Agreement ("LPA"), signed by Iterative Capital Management L.P. on January 12, 2018 (see Hatami Decl. ¶ 8 & Ex. B); and
- The Private Placement Memorandum ("PPM"), dated December 2017 (see Hatami Decl. ¶ 10 & Ex. C).

1.   The Initial Investment

KDH alleges that Defendants fraudulently induced it to invest in a cryptocurrency investment and trading fund by misrepresenting the purpose of the fund, its prior performance history, and the liquidity options. For instance, Dannen, who along with Buchanan is a principal of Iterative Capital Management, allegedly promised a highly liquid fund

---

[2] The Court presumes familiarity with the factual background of this litigation, which was described in greater detail in the Court's previous decisions, and provides only the facts necessary to resolve Defendants' Letter Motion. Except as otherwise noted, the factual background below derives from the FAC and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. Except when specifically quoted, no further citation will be made to the Complaint. When quoting the FAC, all internal quotation marks are omitted.

with quarterly withdrawal rights. Dannen also represented that "Iterative had a continuous successful history managing similar investments in different funds," but the Individual Defendants knew that cryptocurrency investment was no longer a viable strategy and that the prior investments had failed for this reason, resulting in Defendants having to return prior investments. (FAC ¶ 115.) At the time funds were being raised, "Individual Defendants and Iterative already knew that [token generation events] and cryptocurrency trading was no longer a viable investment strategy and planned to use Plaintiff's funds for highly illiquid mining operations." (FAC ¶ 3.)

KDH also alleges that the PPM made misrepresentations. The PPM indicates that the primary investment strategy was to purchase and hold cryptocurrencies, with 70% of the assets invested in trading cryptocurrencies and network tokens and the remaining 30% invested in cryptocurrency mining operations, including cryptocurrency mining equipment.[3] KDH alleges that this investment plan did not hold true. According

---

[3] "Cryptocurrencies are digital currencies, such as Bitcoin, that rely on encryption techniques to secure and verify financial transactions, independent of a central issuing or regulating authority." Pogodin v. Cryptorion Inc., No. 18 Civ. 791, 2019 WL 8165040, at *1 n.3 (E.D.N.Y. May 14, 2019). "Cryptocurrency 'mining' is the use of specialized computer hardware to verify the transactions in a particular cryptocurrency and add them to its cryptographically secured digital ledger, or 'blockchain,' in exchange for payment in the form of newly-minted units of the cryptocurrency." Id.

4

to KDH, although Defendants knew that cryptocurrency mining, not trading, would ultimately be the primary investment objective, Defendants' offering documents failed to disclose this objective and strategy, failed to reflect accurately their prior performance, and failed to include adequate information on the risks relating to mining.

KDH alleges that based on these representations and following "constant and increasing pressure from Individual Defendants to subscribe," KDH was formed and signed the subscription documents on or about January 5, 2018. (FAC ¶ 58.) KDH "and its principals completely relied on Defendants' experience and representations, did not have other financial advisers in relation to this investment but for Dannen and Buchanan, and pooled funds from several individuals to form Plaintiff specifically for the investment." (FAC ¶ 12.) KDH had no experience investing in cryptocurrencies or a private fund, which the Individual Defendants knew. Ultimately, KDH invested $1,000,000 in exchange for a limited partner interest in the Partnership.

### 2.   The Withdrawal Request

KDH also alleges that Defendants misrepresented the liquidity of their investment. When the cryptocurrency market (in particular, Bitcoin) declined shortly after the initial investment was made, KDH requested immediate withdrawal.

5

Buchanan assured KDH that their funds had not yet been invested, that the Fund Complex would not invest heavily in Bitcoin, and that KDH would be able to withdraw at any time. KDH alleges these representations were made to induce it to retain the investment rather than withdraw its funds. Then Defendants allegedly quickly turned the portfolio illiquid by deviating from the stated investment strategy and turning to mining, including spending $6.5 million of the remaining assets on "rapidly depreciating mining equipment." (FAC ¶ 17.) Although Defendants continued to make promises of immediate liquidity and withdrawal opportunities, "Defendants locked most of the funds in the mining 'side-pocket' not subject to withdrawal." (FAC ¶ 19.)

KDH claims that Defendants had a conflict of interest and engaged in self-dealing with Iterative OTC (Defendants' related over-the-counter trading business) and Iterative Mining (Defendants' mining business). KDH contends that Defendants had planned all along to make the mining objective, which was "disclosed as a minor ancillary strategy," the primary focus of the Fund Complex in order to profit separately through Iterative OTC to the exclusion of KDH and the other investors. (Id. ¶ 90.)

3.   Conversion to a Mining Operation

On December 20, 2019, Defendants wrote to KDH to inform it that "during Q1 2020, we will embark on an effort to convert the Fund [Complex] from an investment fund structure to a corporate structure and consolidate it with our other flagship business," Iterative OTC. (FAC ¶ 21.) It was only on March 1, 2020 that Defendants provided new disclosures relating to mining and therein admitted that mining is very different and much riskier than the investment objective contained in the PPM.

As part of the restructuring, Defendants presented a take-it-or-leave-it offer to KDH and other investors highlighting three options: (1) sign an "exiting investor" consent approving the restructuring and withdrawing from the Fund Complex in exchange for a minor portion of KDH's investment based on the undisclosed value of the remaining assets after deduction of significant restructuring expenses; (2) sign a "continuing investor" consent approving restructuring and receiving a de minimis illiquid stake in Defendants' new mining operation based on the undisclosed value of the remaining assets after deduction of significant restructuring expenses; or (3) receive a pro rata share of the Fund's assets in-kind, such as digital assets and outdated mining equipment, minus shipping expenses and be forced out of the Fund Complex prior to restructuring.

Defendants failed to provide a definitive figure of the proposed refund or contribution into the new venture and also failed to provide any information on the two businesses with which the fund would be consolidated and/or continue doing business. Buchanan did not respond to KDH's very basic questions about the restructuring.

On May 8, 2020, Defendants informed KDH that it had been forcibly removed from the Partnership and returned to it $126,352.42 and unvalued mining equipment. KDH then commenced this action.

B.   PROCEDURAL HISTORY

KDH brought suit, initially alleging twelve counts. Count One alleges violations of Section 10(b) ("Section 10(b)") of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities Exchange Commission ("SEC") Rule 10b-5 ("Rule 10b-5"). See 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Count Two, brought against the Individual Defendants only, alleges violations of Section 20(a) ("Section 20(a)") of the Exchange Act. See 15 U.S.C. § 78t(a). Count Three, brought against Iterative Capital Management L.P. only, alleges violations of fiduciary duty under Section 206 ("Section 206") of the Investment Advisers Act ("IAA"). See 15 U.S.C. § 80b-6. Count Four, brought against the Individual Defendants only, alleges that the Individual Defendants aided

8

and abetted violations of Section 206. The remaining counts were for common law fraud and fraudulent inducement (Count Five); breach of fiduciary duty (Count Six); breach of the duty of good faith, fair dealing, and loyalty (Count Seven); negligence and negligent misrepresentation (Count Eight); breach of contract, against Iterative Capital GP, LLC and Iterative Capital Management L.P. (Count Nine); unjust enrichment (Count Ten); attorneys' fees (Count Eleven); and injunctive relief (Count Twelve).

As part of the initial complaint, KDH sought an Order to Show Cause and Temporary Restraining Order to enjoin Defendants from converting the Partnership into an operating limited liability company (the "Restructuring") and taking other actions related to the Restructuring. (See "Memorandum of Law," Dkt. No. 5.) After the Court (Part I) granted the Temporary Restraining Order on April 27, 2020, Defendants sought immediate relief from the TRO. (See "May 1 Letter," Dkt. No. 14.) Consistent with the Court's order, KDH responded by letter on May 4, 2020. (See "May 4 Letter," Dkt. No. 17.) The Court deemed the May 1 Letter as a motion to dissolve the TRO pursuant to Federal Rule of Civil Procedure 65(b)(4) ("Motion to Dissolve"). The Court thereafter granted the Motion to Dissolve (see Dkt. No. 18), finding that KDH had not made a sufficiently compelling showing of irreparable

harm and that the balance of the equities did not weigh in KDH's favor. KDH Consulting Grp. LLC v. Iterative Capital Mgmt. L.P., No. 20 Civ. 3274, 2020 WL 2554382 (S.D.N.Y. May 20, 2020).

Shortly thereafter, Defendants filed a premotion letter conveying an intent to file a motion to dismiss under Rule 12(b)(6) for forum non conveniens. (See Dkt. No. 29.) Following an exchange of letters, the Court granted in part and denied in part Defendants' request. The Court allowed KDH to file an amended complaint with respect to Counts One and Two and ordered KDH to show cause as to why the remaining counts should not be dismissed with prejudice to refiling in this Court. (Dkt. No. 37.)

KDH timely filed the FAC, which now brings only two counts. Count One, brought against all Defendants, alleges violations of Section 10(b) and Rule 10b-5. Count Two, brought against only the Individual Defendants, alleges violations of Section 20(a). The instant Letter Motion followed.

C.   THE PARTIES' ARGUMENTS

Defendants make the following arguments as to Count One. Defendants argue that KDH's allegations with respect to a material omission "are internally inconsistent and self-contradictory." (Letter Motion at 1.) Defendants point to KDH's allegation that Defendants had planned to engage in

cryptocurrency mining all along and claim that KDH elsewhere acknowledges that mining received increased focus between April and June 2018. Defendants also argue that the PPM and other agreements' disclosures about the planned mining and risks of the investment strategy foreclose KDH's theory that Defendants omitted material information.

Defendants next argue that KDH's misrepresentation claim must also fail for four primary reasons. First, seven of the alleged misrepresentations postdate the initial January 2018 investment and thus could not have been made in connection with the purchase or sale of a security as required for Section 10(b). Second, the disclaimers "bar Plaintiff from relying on the three alleged oral misrepresentations made in late 2017 or early 2018." (Id. at 2.) Third, Defendants argue that KDH has mischaracterized the substance of the PPM and that "any honest reading of the PPM confirms that it disclosed the importance of mining to the investment strategy." (Id.) Defendants further assert that KDH has failed to explain how some of the alleged misrepresentations are false.

Defendants' final argument pertaining to Count One is that KDH cannot invoke the "forced sale" doctrine to assert a securities-fraud claim in connection with the wind-down of the partnership at issue. Defendants argue that such a theory is limited to situations in which a shareholder vote is

procedure by fraud, and KDH has failed to allege that any such action took place here.

Defendants also argue that Count Two should be dismissed. Defendants argue that as there is no valid primary securities-fraud claim alleged as Count One, Count Two is necessarily defective. Even assuming there is a valid fraud alleged as Count One, Defendants argue that KDH has failed to allege that the Individuals Defendants were culpable in that alleged fraud.

Finally, Defendants argue that claims against Iterative OTC and Iterative Mining should be dismissed. Defendants state that the FAC "does not even suggest that Iterative OTC and Iterative Mining made any false statements." (Id. at 3.)

In its Opposition, KDH counters each of these arguments. KDH argues that the misrepresentations and omissions were sufficiently pled and the disclosures in the offering documents are inadequate to overcome its allegations of reasonable reliance as a matter of law. KDH also argues that all the statements alleged were made in connection with the purchase or sale of securities based on Abrahamson v. Fleschner, 568 F.2d 862, 868 (2d Cir. 1977), which explained that "significant modifications in the rights of security holders may constitute a 'sale' of one security and 'purchase' of another under Section 10(b) and Rule 10b-5." (Opposition

at 2.) KDH further contends that the "forced sale" doctrine is applicable to its allegations because the FAC "contains ample allegations of how Defendants, as a part of their fraudulent scheme, convinced KDH not to withdraw from the fund but stay in expectation of Defendants' promised long term liquidity strategy, so that Defendants could materially alter KDH's securities in order to own and profit from Defendant's mining business." (Id. at 3.)

Regarding Count Two, KDH states that the FAC alleges that the Individual Defendants controlled the rest of Defendants at all relevant times and made fraudulent statements and omissions on their own behalf. As a result, the claims against them are well pleaded.

As to Iterative Mining and Iterative OTC, KDH argues that the FAC alleged "a tight weave of connections between Iterative OTC, Iterative Mining and other Defendants." (Id.) KDH also argues that "Defendants made representations in the PPM on behalf of Iterative OTC and Mining." (Id.) These allegations are, according to KDH, sufficient to establish these entities' liability.

## II.   **LEGAL STANDARDS**

A.   RULE 12(B)(6) MOTION TO DISMISS

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005), aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006); accord In re MF Glob. Holdings Ltd. Sec. Litig., 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013). In this context, the Court must draw reasonable inferences in favor of the non-moving party. See Chambers v.

14

Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the claim as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

In adjudicating a Rule 12(b)(6) motion, a court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999). However, plaintiffs claiming fraud -- including securities fraud concerning material misstatements and omissions -- must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") by "stat[ing] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Allegations that are conclusory or unsupported by factual assertions are insufficient." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

The PSLRA also imposes heightened pleading standards for plaintiffs alleging securities fraud. When a plaintiff alleges that defendants made misleading statements or omissions, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding

the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Plaintiffs "must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so." Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004). To adequately plead scienter, "the complaint shall . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). A court shall grant a motion to dismiss a securities fraud complaint if these requirements are not met.

B.   THE EXCHANGE ACT

To state a claim for misrepresentation or omission under Section 10(b) and Rule 10b-5, "a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." ATSI Commc'ns, 493 F.3d at 105; see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008).

Separately, "Section 20(a) of the Exchange Act imposes derivative liability on parties controlling persons who

16

commit Exchange Act violations." <u>In re Vivendi, S.A. Sec.</u>
<u>Litig.</u>, 838 F.3d 223, 238 n.6 (2d Cir. 2016) (internal
quotations omitted). "To establish a prima facie case" for
Section 20(a) liability, "a plaintiff must show (1) a primary
violation by the controlled person, (2) control of the primary
violator by the defendant, and (3) that the defendant was, in
some meaningful sense, a culpable participant in the
controlled person's fraud." <u>ATSI Commc'ns</u>, 493 F.3d at 108.

### III. <u>DISCUSSION</u>

The Court grants in part and denies in part the Motion.
Namely, the Court denies Defendants' request to dismiss Count
One, though the Court will limit which alleged misstatements
can support KDH's securities-fraud claim to those that
predated KDH's investment. The Court also denies Defendants'
request to dismiss Count Two against the Individual
Defendants. However, the Court grants Defendants' request to
dismiss the claims against Iterative OTC and Iterative
Mining, as KDH has not alleged these entities' control over
the misstatements at issue.

A. <u>COUNT ONE</u>

The Court concludes that KDH has sufficiently alleged a
claim under Section 10(b) and Rule 10b-5. Moreover, the
disclaimers contained in the offering documents are not
sufficient to warrant dismissal at this stage. However, the

17

Court agrees with Defendants that only the alleged misrepresentations and omissions that predate KDH's January 2018 investment can support its Section 10(b) claim, and the "forced sale" doctrine does not apply.

1. Misstatements Predating the January 2018 Investment

KDH has sufficiently alleged that Defendants either misrepresented or failed to convey material information. For example, KDH alleged that the Individual Defendants and Iterative Capital made various representations that the primary purpose of the Partnership was to purchase and hold cryptocurrency coins. (FAC ¶ 115.) According to KDH's allegations and the PPM, KDH was told that while cryptocurrency mining would constitute a portion of the strategy, only approximately 30% of the funds was expected to be used for this endeavor.[4] (FAC ¶ 115; PPM at 3.) Such representations were material to the investment decision

---

[4] Defendants correctly note that during the Court's hearing on the TRO, the Court observed that it did not read the relevant language in the PPM as suggesting "there is a mandatory limit of 30 percent." (Dkt. No. 31, at 16:15.) But the Court emphasizes that the legal standard governing a TRO or preliminary injunction are much different than that governing a motion to dismiss. "Unlike at the preliminary injunction stage, for purposes of a motion to dismiss, a Court must accept all well-pleaded factual allegations in the Amended Complaint as true and draw all reasonable inferences in Plaintiffs' favor." Nat'l Coal. on Black Civic Participation v. Wohl, No. 20 Civ. 8668, 2021 WL 480818, at *4 (S.D.N.Y. Jan. 12, 2021). Moreover, a plaintiff seeking injunctive relief has a "heavier burden" than a plaintiff "bears in pleading the plausible claim necessary to avoid dismissal." New Hope Family Servs., Inc. v. Poole, 966 F.3d 145, 165 (2d Cir. 2020). For these reasons, the Court's previous observation on KDH's interpretation of the relevant language in the PPM is inapposite at this stage.

because "investing in mining is very different and much
riskier than the stated investment objective in the PPM."
(FAC ¶¶ 8, 101.) KDH further alleged that Individual
Defendants and Iterative Capital knew their representations
were false when they were made. Although Defendants had
represented that mining would be "an ancillary strategy,"
focusing on mining "was part of Defendant's [sic] original
plan to spend investors' money on highly illiquid mining
equipment and profit from Defendants' separate OTC business."
(FAC ¶¶ 10, 90.)[5] KDH also alleges reliance on these
representations. (FAC ¶ 123.) Thus, KDH has sufficiently
alleged misrepresentation or omission under Section 10(b) and
Rule 10b-5.[6] See ATSI Commc'ns, 493 F.3d at 105.

    2.   Disclaimers

_____

[5] Defendants argue that KDH's allegations are internally inconsistent
because while the FAC alleges "that Defendants secretly believed all along
that cryptocurrency trading was not a viable strategy and instead planned
to run the Partnership as a mining operation," the FAC "also alleges that
Defendants **did not** focus on mining at first, and only changed their
strategy to increase the mining focus 'Upon information and belief, at
some point between April and June 2018 . . . .'" (Letter Motion at 1
(quoting FAC ¶ 70).) The Court fails to see the inconsistency. KDH has
alleged that between April and June 2018, Defendants "materially deviated
from the strategy for the Fund Complex disclosure in the PPM." (FAC ¶
70.) This is not inconsistent with its allegation that a material
deviation from the represented purpose of the fund had been planned all
along.
[6] Although KDH raises a number of misrepresentations or omissions made
before it invested in January 2018, KDH need only allege at least one
actionable misstatement to survive a motion to dismiss on this cause of
action. Therefore, the Court does not address the other alleged
misstatements at this time.

Defendants' argument that KDH cannot allege reliance in light of the disclaimers in the PPM and other documents is unavailing. Defendants point to various disclaimers that they argue are specific enough to foreclose a finding of reliance. The Court is persuaded that while there is some language in the disclaimers that could weigh in Defendants' favor, these statements do not necessarily vitiate reasonable reliance.

For instance, the PPM explains that withdrawal requests and redemption requests will be first satisfied from "the Master Funds that are the most liquid." (PPM at 42.) As a result, the remaining assets of the Master Funds may become "more illiquid," and "remaining Investors will, indirectly, hold a more concentrated position in the assets of the Mining Master Fund," which "may be, or become, more illiquid." (Id.) It is possible that KDH falls within this "remaining Investors" category and was therefore on notice that its assets may become illiquid, but there are no allegations from which the Court can determine that at this stage.

In addition, the PPM states that there is language in the PPM that "[t]he investment objectives, asset allocations and methods summarized above represent the General Partner's and Investment Manager's current intentions," but that

> [d]epending on conditions and trends in the markets
> and the economy in general, the General Partner and
> the Investment Manager may pursue any objectives,

20

> employ any investment techniques, redeploy assets or purchase any type of investment in any quantity (in relative or absolute terms) that they consider appropriate and in the best interest of the Master Funds whether or not described in this section."

(PPM at 4.) While this provision does give the General Partner and Investment Manager discretion to make changes, it contemplates such changes to be reactionary and made "[d]epending on conditions and trends in the markets and the economy in general." But KDH alleges that Defendants had already determined to invest in mining *before* its January 2018 investment was made. If that is true, then the alleged change would not have been a reactionary one made in response to then-present market conditions and therefore may not be covered by this statement.

"The reasonableness of a plaintiff's reliance is a nettlesome and fact intensive question and thus is often a question of fact for the jury rather than a question of law for the court." FIH, LLC v. Found. Capital Partners LLC, 920 F.3d 134, 141 (2d Cir. 2019) (internal quotation marks and citations omitted). In light of the fact-intensive nature of this question, as well as the ambiguity presented and the Court's obligation to draw all reasonable inferences in KDH's favor, the Court is not satisfied that dismissal is warranted based on the PPM's disclaimers.

Defendants also argue that KDH cannot base its misrepresentation claim on the oral misrepresentations made in late 2017 and early 2018 because of language in the Subscription Agreement and PPM disclaiming reliance on "any representations . . . except as set forth in the Private Placement Memorandum or the Partnership Agreement." (Letter Motion at 2 (quoting Subscription Agreement § 3(g); PPM at ii.) The Court is not persuaded. "Standing alone . . . a general disclaimer . . . is not sufficient as a matter of law to preclude reasonable reliance on material factual misrepresentations, even by a sophisticated investor." FIH, LLC, 920 F.3d at 141.

The Court also notes that there is language in the PPM stating that it "does not purport to be, and should not be construed as a complete description of the limited partnership agreement of the Fund or the investment management agreement by and among the Investment Manager, the Master Funds, the Offshore Fund . . ., the General Partner and the Fund." (PPM at iii.) Because this language contemplates other sources beyond the PPM serving as authority on the investment at hand, it is in some tension with the provision relied on by Defendants. And the general principle that "general disclaimers are insufficient to defeat reasonable reliance on material misrepresentations as

a matter of law" is particularly applicable when, as here, there is tension between the disclaimer and other language. See Hallett v. Stuart Dean Co., 481 F. Supp. 3d 294, 307 (S.D.N.Y. 2020) (quoting FIH, LLC, 920 F.3d at 141) (rejecting the argument that a disclaimer that stated that the agreement "contains the entire understanding of the parties . . . [and] may not be altered, modified, or amended except by written instrument . . ." rendered the plaintiff's allegations of reliance insufficient).

At a later stage, Defendants may very well succeed in arguing that the disclaimers in the agreements at issue defeat KDH's claim of reasonable reliance. But at the motion-to-dismiss stage, taking all allegations as true and all reasonable inferences in KDH's favor, the Court cannot conclude that KDH's reliance was unreasonable as a matter of law based on these disclaimers.

3. Misstatements Postdating the January 2018 Investment

While the Court concludes that the FAC contains sufficient allegations to support Count One as it relates to KDH's initial decision to invest, the Court agrees with Defendants that KDH cannot rely on misrepresentations or omissions that postdate its investment in January 2018. Any misstatements that postdate the January 2018 investment could

23

be relevant only to KDH's decision to not withdraw its funds following the cryptocurrency market crash. But misstatements that induce a plaintiff to hold or retain an investment are not actionable under Section 10(b). See First Equity Corp. of Fla. v. Standard & Poor's Corp., 869 F.2d 175, 180 n.2 (2d Cir. 1989) (noting that "plaintiffs suing under Section 10(b) of the Securities Exchange Act of 1934 may recover only for losses that result from decisions to buy or to sell, not from decisions to hold or refrain from trading"); Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC, 376 F. Supp. 2d 385, 407 (S.D.N.Y. 2005) (explaining that the difference between common-law fraud and a Rule 10b-5 claim is that "a claim for common law fraud is available to investors who retain their securities in reliance on a defendant's misrepresentations").

In its Opposition, KDH relies on Abrahamson v. Fleschner, 568 F.2d 862, 868 (2d Cir. 1978), to argue that a sale is deemed to occur when the rights of a security holder undergo a "significant change in the nature of the investment or in the investment risks as to amount to a new investment." The Court is unpersuaded. The Second Circuit has since explained that the type of change that is a de facto sale for purposes of Section 10(b) is "a major corporate restructuring requiring the same kind of investment decision by the shareholders as would a proposed merger with a separate

24

existing corporation." Gelles v. TDA Indus., Inc., 44 F.3d 102, 104 (2d Cir. 1994). The alleged change here does not rise to this level. KDH alleges that it subscribed to a "hedge fund-like cryptocurrency investment and trading fund" that was ultimately used "to build out mining operations" rather than trade and retain cryptocurrencies. (FAC ¶ 1.) But as mentioned above, the PPM had always envisioned that at least some portion of the funding would go towards mining. Thus, while the alleged change may constitute a reallocation of assets or redirection of investment, that is not a fundamental change like a merger or other major corporate restructuring.

Nor does the "forced sale" doctrine apply as KDH contends. "The forced sale doctrine relaxes the requirement that only traditional purchasers or sellers of securities have standing to bring a Section 10(b) claim." Gordon Partners v. Blumenthal, No. 02 Civ. 7377, 2007 WL 431864, at *11 (S.D.N.Y. Feb. 9, 2007). This doctrine developed from Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967). In Vine, a minority shareholder was considered a forced seller because the corporation had required minority shareholders to sell their shares for cash or else their stock would become worthless. Id. at 630-31. Vine, the owner of Class A stock in a corporation acquired by Beneficial in a short form merger, alleged that the defendants had acquired the requisite share

percentage necessary to "freeze out" Class A shareholders and consummate the merger by means of a fraudulent tender offer directed at other Class A shareholders. Id. "Because of the nature of a short form merger, plaintiff needed to show only 'deception which misled Class A stockholders and that this was in fact the cause of plaintiff's claimed injury.'" See Liana Carrier Ltd. v. Pure Biofuels Corp., 151 F. Supp. 3d 319, 327 (S.D.N.Y. 2015) (quoting Vine, 374 F.2d at 635).

While some courts have questioned whether Vine's exception is applicable in light of subsequent Supreme Court precedent, see Sarafianos v. Shandong Tada Auto-Parking Co., Ltd., No. 13 Civ. 3895, 2014 WL 7238339 (S.D.N.Y. Dec. 19, 2014), the Court need not resolve this issue here. Based on the allegations in the FAC, the "forced sale" doctrine would not apply even if the rule endures. This is because as it relates to KDH's decision not to withdraw its investment following the cryptocurrency market crash, KDH has not alleged "that its investment position has been fundamentally altered by an alleged forced sale" for the reasons given above. Id. (citing 7547 Corp. v. Parker & Parsley Dev. Partners, L.P., 38 F.3d 211, 229 (5th Cir. 1994) (concluding that "a securities exchange, such as in the case at bar, may constitute a forced sale for purposes of section 10(b) and Rule 10b-5 if the plaintiff can demonstrate a fundamental

change in the nature of the investment" (internal quotation marks omitted)).

To the extent KDH's Section 10(b) claim is also based on the conversion of "the Fund from an investment fund structure to a corporate structure and consolidate it with [Defendants'] other flagship business" during which KDH was expelled from the Partnership (FAC ¶ 21),[7] the Court finds these allegations to be deficient. As an initial point, KDH has not adequately explained what misrepresentation or omission was made in connection with this restructuring. In its section dedicated to Count One, KDH includes a few statements made by Defendants about the restructuring, but KDH does not explain how any of these statements are false or otherwise fraudulent. (See FAC ¶ 115.)

In the multiple paragraphs dedicated to discussing the restructuring (FAC ¶¶ 99-112), the Court can only find one allegation that might be considered a material omission or

---

[7] It is not apparent whether KDH is alleging securities fraud in connection with the restructuring. The Court notes that the FAC states that KDH "also brings this action for various false and misleading representations and material omissions that induced Plaintiff to subscribe to Defendant's [sic] fund and to forebear redemption rights." (FAC ¶ 28.) While this may suggest that KDH is bringing claims pertaining to the restructuring and its expulsion, KDH's Opposition argues that the "forced sale" doctrine applies because of the "ample allegations of how Defendants, as a part of their fraudulent scheme, convinced KDH not to withdraw from the fund but stay in expectation of Defendants' promised long term liquidity strategy, so that Defendants could materially alter KDH's securities in order to own and profit from Defendant's [sic] mining business." (Opposition at 3.) As it is unclear, the Court will assume KDH is alleging securities fraud in connection with the restructuring.

misrepresentation: the allegation that "Defendants offered no definitive figure of the proposed refund or contribution into the Mining NewCo, [and] did not provide any information on two businesses the Fund Complex was to consolidate and/or continue doing business with." (FAC ¶ 106.) But even assuming this is a material omission, KDH has failed to allege a causal connection between the restructuring and this omission. KDH has not explained how the alleged omission caused the restructuring to take place, through deceiving the other members of the Partnership into authorizing it or otherwise. See Liana Carrier Ltd., 151 F. Supp. 3d at 327 (holding that the allegations were insufficient to invoke the "forced sale" doctrine because the misleading statements were not an "essential link" in the accomplishment of the challenged merger and therefore no causal link between the two had been alleged (citation omitted)).

For the foregoing reasons, the Court concludes that Count One should not be dismissed insofar as it relates to securities fraud in connection with procuring KDH's initial investment, notwithstanding the disclaimers included in the PPM and other agreements. However, the Court agrees with Defendants that KDH cannot rely on misstatements that postdate the initial investment decision, as these misstatements are not made in connection with the purchase or

sale of securities and the "forced sale" decision does not apply.

B.    <u>COUNT TWO</u>

The Court next concludes that wholesale dismissal of Count Two is not appropriate. Defendants' primary argument supporting dismissal is that "Count I fails to state a primary securities fraud claim." (Letter Motion at 3.) But for the reasons described above, KDH has sufficiently alleged a primary securities-fraud claim, rendering this argument futile. Defendants' other argument supporting dismissal of Count Two is that KDH has not alleged "that the Individual Defendants were culpable in the alleged fraud described in Count I." (<u>Id.</u>) The Court is not persuaded.

"A plaintiff asserting a section 20(a) claim must allege at least particularized facts of the controlling person's conscious misbehavior or recklessness." <u>In re Satyam Computer Servs. Ltd. Sec. Litig.</u>, 915 F. Supp. 2d 450, 482 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). Knowledge of the false or omitted information at issue and a failure to disclose that information can constitute "conscious misbehavior or recklessness." <u>See</u> <u>Vanleeuwen v. Keyuan Petrochemicals, Inc.</u>, No. 13 Civ. 6057, 2014 WL 3891351, at *3 (S.D.N.Y. Aug. 8, 2014).

The Court agrees with Defendants that the allegations in the paragraphs of the FAC dedicated to Count Two focus on conduct that occurred after the initial January 2018 investment. (See FAC ¶¶ 129-38.) For the reasons discussed above, any misstatements made after the initial investment cannot support a Section 10(b) claim. Thus, any culpable conduct Individual Defendants engaged in in connection with these misstatements cannot serve as the basis for liability under Section 20(a).

Elsewhere, however, KDH has alleged that the Individual Defendants knew at the time of fundraising in December 2017 that cryptocurrency trading was no longer a viable investment strategy and that KDH's funds would be used for highly illiquid mining operations instead. (FAC ¶ 3.) It is true that this allegation, standing alone, lacks the particularized facts necessary to support KDH's claim. But KDH has also alleged that "Individual Defendants failed to mention that, for the same very reason, they returned funds to investors from the previous fund." (Id. ¶ 4; see also id. at ¶ 120.) KDH also alleged that Leo Zhang, another principal at Iterative Capital Management issued a public statement in 2019 stating that "we" -- referring presumably to himself and the other principals of Iterative Capital Management, including Individual Defendants -- had realized by mid-2017

30

that "this token mania is likely not going to continue" and the prior investment fund needed to be closed as a result. (Id. ¶ 48.)

Taking these allegations as true and drawing all reasonable inferences in KDH's favor, KDH has alleged that: (1) Individual Defendants were involved in a previous cryptocurrency-investment fund; (2) this fund failed due to the infeasibility of such investments; (3) the Individual Defendants were aware of this fact; and (4) the Individual Defendants concealed this fact and failed to correct the misrepresentation of Iterative's prior performance and the feasibility of the investment in the offering documents. Thus, KDH has sufficiently alleged culpability under Section 20(a).

C.   ITERATIVE OTC AND ITERATIVE MINING

The final issue before the Court is whether the claims against Iterative Mining and Iterative OTC should be dismissed. The Court concludes that dismissal of the claims against Iterative Mining and Iterative OTC is warranted. KDH has failed to allege that Iterative Mining or Iterative OTC made any of the misstatements at issue, and the misstatements made by other entities or individuals cannot be attributed to these two entities.

31

Defendants argue that dismissal is appropriate in light of the Supreme Court's decision in Janus Capital Group, Inc. v. First Derivative Traders, 564 U.S. 135, 141 (2011). There, the Supreme Court held that the "maker" of a statement for purposes of liability under Rule 10b-5 is someone with "ultimate authority" over the statements made. Id. Thus, no liability attached to a third party who helped prepare the prospectuses of its mutual fund client. Id. Defendants argue that the FAC does not allege that Iterative OTC or Iterative Mining made any false statements.

In response, KDH seeks to invoke the "group pleading" doctrine by arguing that the FAC "alleges a tight weave of connections between Iterative OTC, Iterative Mining and other Defendants all participating or used as instrumentality [sic] in the alleged fraudulent scheme." (Opposition at 3 (citing Anwar v. Fairfield Greenwich, Ltd., 728 F. Supp. 2d 372 (S.D.N.Y. 2010)).) KDH also argues that the PPM contained representations made "on behalf of Iterative OTC and Mining." (Id.)

Under the "group pleading" doctrine, "a plaintiff may rely on a presumption that *written* statements that are 'group-published,'" such as SEC filings and press releases, "are statements made by all individuals with direct involvement in the everyday business of the company." City of Pontiac Gen.

Empls. Ret. Sys. v. Lockheed Martin Corp., 875 F. Supp. 2d 359, 373 (S.D.N.Y. 2012) (internal quotation marks and citation omitted)). Courts in this District have held that the "group pleading" doctrine still exists following Janus Capital, as "that case addressed only whether *third parties* can be held liable for statements made by their clients" and "has no bearing on how corporate officers who work together in the same entity can be held jointly responsible on a theory of primary liability." Id. at 374 (citing cases).

KDH's reliance on the "group pleading" doctrine is to no avail. As an initial matter, this doctrine is primarily used to impute liability to corporate insiders. It is true that this Court has previously used it to impute liability to entities, in a situation in which there was "an intricate tangle of entities" and a corporate structure "comprised of . . . corporate entities that all apparently existed to accomplish the same task -- managing funds invested almost exclusively with Bernard Madoff." Anwar, 728 F. Supp. 2d at 387-88. This Court explained that "any entity playing an essential role in [the corporate structure] is responsible for what [the corporation] and its subsidiaries did downstream." Id. at 406. The roles of the various entities at issue included risk management, investment manager and general partner, placement agent, and due diligence. Id.

Here, there are no similar allegations. The PPM reflects that it was prepared by Iterative Capital and Iterative Capital Management. But Iterative OTC and Iterative Mining are not alleged to be corporate insiders of Iterative Capital and Iterative Capital Management. Indeed, there are no allegations of any kind to suggest that either Iterative OTC or Iterative Mining plays an essential role in the operation of either Iterative Capital or Iterative Capital Management. To the contrary, the FAC states that Iterative Capital is a managing member of Iterative OTC and Iterative Mining. There is therefore no basis to conclude that the PPM or any other offering document has made any statements on behalf of Iterative OTC and Iterative Mining. The "group pleading" doctrine cannot extend liability to Iterative OTC or Iterative Mining, and the claims against these entities must be dismissed.

## IV.   ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendants Iterative Capital Management L.P., Iterative Capital GP, LLC, Iterative OTC, LLC, Iterative Mining, LLC, Brandon Buchanan, and Christopher Dannen ("Defendants") to dismiss the complaint of plaintiff KDH Consulting Group LLC ("KDH") pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure (Dkt. No. 47) is **DENIED IN PART** and **GRANTED IN PART** as set forth above. In particular, Count One is **DISMISSED IN PART**, with prejudice, only insofar as it relies on misstatements that postdate KDH's January 2018 investment, and all claims against Iterative OTC, LLC and Iterative Mining, LLC are **DISMISSED.**

**SO ORDERED.**

Dated: New York, New York
      23 March 2021

                                        _____
                                           Victor Marrero
                                             U.S.D.J.