USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: April 7, 2021

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
KDH CONSULTING GROUP LLC,          :
                                   :
                    Plaintiff,     :    20 Civ. 3274 (VM)
                                   :
    - against -                    :    DECISION AND ORDER
                                   :
ITERATIVE CAPITAL MANAGEMENT, LP,  :
    et al.,                        :
                    Defendants.    :
-----------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiff KDH Consulting Group LLC ("KDH") brought this action against Iterative Capital Management L.P.; Iterative Capital GP, LLC; Iterative OTC, LLC; Iterative Mining, LLC; Brandon Buchanan ("Buchanan"); and Christopher Dannen (collectively, "Defendants"). The First Amended Complaint ("FAC") alleges violations of federal securities laws.

Now before the Court are KDH's motion for return of the security bond it posted when seeking a temporary restraining order ("TRO") (Dkt. No. 35), as well as Defendants' renewed motion for disbursement of funds from the security bond (Dkt. No. 54). The Court also has before it KDH's response in opposition to Defendants' renewed motion for disbursement. (Dkt. No. 60.) For the reasons set forth below, KDH's motion for return of the TRO security bond is GRANTED in part, and Defendants' renewed motion for disbursement of funds from the TRO security bond is GRANTED in part.

1

## I. BACKGROUND

A. <u>PROCEDURAL HISTORY</u>

KDH invested $1,000,000 in a limited partnership with Defendants. (Dkt. No. 40 ¶ 46.) On April 14, 2020, KDH served Defendants with a demand for books and records related to a proposed restructuring scheduled for April 28, 2020. (Dkt. No. 6 ¶ 2.) Defendants objected. KDH sought an Order to Show Cause and Temporary Restraining Order to enjoin Defendants from the proposed restructuring and to compel Defendants to provide the documents previously requested. (<u>See</u> Dkt. Nos. 1, 5.) On April 27, 2020, the Court (Part I) granted the request. (<u>See</u> "TRO," Dkt. No. 9.) KDH was required to post a $20,000 injunction bond pursuant to Federal Rule of Civil Procedure ("Rule") 65(c).

By letter dated May 1, 2020, Defendants sought immediate relief from the TRO and argued that KDH was unlikely to prevail at the preliminary injunction hearing. (<u>See</u> Dkt. No. 14.) In a telephone conference on May 5, 2020, the Court alerted the parties of its intent to construe the letter as a motion to dissolve the TRO pursuant to Rule 65(b)(4). (<u>See</u> Docket Minute Entry Dated May 5, 2020.) Upon hearing the parties' arguments and reviewing the record, the Court found that injunctive relief was not warranted. Specifically, the Court found that KDH had not made a sufficiently compelling

2

showing of irreparable harm and further found that the balance of the equities did not weigh in KDH's favor. Therefore, the Court granted the motion to dissolve the TRO pursuant to Rule 65(b)(4). (See Dkt. No. 18.)

On June 22, 2020, KDH filed a letter requesting return of its TRO security bond. (Dkt. No. 35.) On July 29, 2020, Defendants moved for disbursement of funds from the TRO security bond to cover alleged damages it had suffered as a result of the wrongfully issued TRO. (Dkt. No. 41.)

On November 9, 2020, the Court denied Defendants' request for disbursement for two reasons. ("November 9 Order," Dkt. No. 49.) First, Defendants sought to recover for certain categories of costs that were not incurred in order to comply with the TRO, but such incidental costs were not recoverable from the TRO security bond. (November 9 Order at 5-6.) As to the remaining costs that were potentially recoverable, Defendants had failed to properly substantiate these costs. (Id. at 6.)

By letter dated November 19, 2020, KDH reiterated its request for return of the TRO security bond. (Dkt. No. 51.) The Court ordered Defendants to respond, and Defendants requested leave to file a renewed motion for disbursement. (Dkt. Nos. 51-53.) Defendants then filed the instant motion.

On July 20, 2020, KDH filed the FAC. On March 23, 2021, the Court granted in part and denied in part Defendants' motion to dismiss the FAC. In relevant part, the Court held that KDH had failed to sufficiently allege misstatements in violation of federal securities law postdating KDH's $1,000,000 investment, including any alleged misstatements made in connection with the proposed restructuring, and dismissed such claims with prejudice. ("March 23 Order," Dkt. No. 65.)

B.   THE PARTIES' ARGUMENTS

Defendants argue that they incurred significant costs and damages as a result of the TRO, which wrongfully restrained them, and are thus entitled to a presumption of recovery from the $20,000 injunction bond. Defendants allege incurring the following costs: (1) $8,030 worth of legal fees related to analyzing and attempting to comply with the TRO's production requirement; and (2) $16,500 worth of time spent by Buchanan in attempting to identify and locate materials responsive to the document-production request. Defendants base the estimate of legal fees incurred in complying with the TRO on the affidavit of Defendants' legal counsel, Robert Boller ("Boller"). Defendants estimate that the value of Buchanan's labor based on an affidavit of Buchanan.

4

KDH opposes Defendants' renewed motion for disbursement. KDH contends that Defendants' renewed motion is an impermissible second bite at the apple and prejudices KDH. KDH also argues that the costs allegedly incurred by Defendants are speculative and inextricably tied to Defendants' overall litigation strategy. As such, KDH asserts that it is impossible to discern whether the alleged costs are attributable to litigating the matter generally or complying with the TRO specifically. KDH also argues that Defendants should have searched for the documents at issue even without a TRO or lawsuit because "KDH's demand for inspection of additional documents was reasonable and warranted not under [sic] the investment terms and Delaware Revised Uniform Limited Partnership Act § 17-305." (Dkt. No. 60, at 3.) As a result, KDH states that deduction of the costs of document production from the TRO security bond is unfair. Finally, KDH reiterates that the Court should discharge the TRO security and return it to KDH.

## II. LEGAL STANDARD

The Second Circuit has held "that wrongfully enjoined parties are entitled to a presumption of recovery against the [Rule 65(c) injunction] bond for provable damages." <u>Nokia Corp. v. InterDigital, Inc.</u>, 645 F.3d 553, 557 (2d Cir. 2011). However, in order to be entitled to a presumption of recovery,

5

"the wrongfully enjoined party must first demonstrate that the damages sought were proximately caused by the wrongful injunction" and "must also properly substantiate the damages sought," though not necessarily to a mathematical certainty. Id. at 559.

Consistent with the purposes of an injunction bond, parties may recover only those "costs and damages incurred as a result of complying with a wrongful injunction." Id. at 560; see also Auto Driveway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC, 928 F.3d 670, 676 (7th Cir. 2019) ("Because defendants are likely to incur some costs in *ensuring compliance* with this injunction . . . the risk of a wrongful injunction must be secured by Auto Driveway." (emphasis added)). Accordingly, attorneys' fees expended in litigating the injunction are not recoverable, although attorneys' fees "incurred in complying with the injunction" are. Nokia Corp., 645 F.3d at 560.

### III. DISCUSSION

As an initial matter, the Court rejects KDH's argument that Defendants' renewed motion is an impermissible second bite at the apple. The Court's November 9 Order did not deny Defendants' request with prejudice. Therefore, the Court granted Defendants permission to file a renewed motion for disbursement. And the Court notes that multiple other courts

6

that have denied defendants' requests for disbursement from bonds posted pursuant to Rule 65(c) for lack of substantiation, as the Court did in this case, to renew their motions with further substantiation. See, e.g., Triumph v. Ward, No. 11 CV 7927, 2011 WL 6754044, at *5 (N.D. Ill. Dec. 22, 2011).

The Court concludes that Defendants were wrongfully enjoined by the TRO and suffered damages as a result of complying with the TRO. However, the Court is not persuaded that Defendants suffered $16,500 worth of labor and therefore will grant recovery of only a portion of the amount requested. The remainder will be returned to KDH.

A.   WHETHER DEFENDANTS WERE WRONGFULLY ENJOINED

Whether a defendant was "wrongfully enjoined" requires ascertaining whether it "had the right to do the enjoined act." Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1051 (2d Cir. 1990). This inquiry generally occurs "in hindsight, in light of the ultimate decision on the merits after a full hearing." Id. Courts seem to agree that granting a motion to dismiss can support a determination that a defendant was wrongfully enjoined. "A dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and bars further action between the parties." Wainwright Sec.

7

Inc. v. Wall St. Transcript Corp., 80 F.R.D. 103, 106 (S.D.N.Y. 1978) (citation omitted); see also Source Interlink Dist., LLC v. Bauer Publ'g Co., LP, No. 09 Civ. 1152, 2009 WL 1755270, at *2 (S.D.N.Y. June 22, 2009) ("If Bauer were to prevail on its motion to dismiss, it would have a strong argument that it was wrongfully restrained by the TRO.").

Here, the Court finds that Defendants were wrongfully restrained by the TRO. In determining whether Defendants had the right to do the enjoined act -- undergoing the proposed restructuring and withholding certain documents and records related to that proposed restructuring -- the Court notes that the March 23 Order dismissed KDH's claims pertaining to the proposed restructuring with prejudice. This dismissal functioned as a complete adjudication on the issue in Defendants' favor. In other words, because KDH cannot challenge the validity of Defendants' conduct pertaining to the proposed restructuring through the present suit, the Court finds for the purpose of the renewed motion for disbursement that Defendants were wrongfully enjoined. See Wainwright, 80 F.R.D. at 106; see also St. Mary of the Plains Coll. v. Higher Educ. Loan Program of Kan., Inc., No. 89 Civ. 1460, 1989 WL 159368, at *2 (D. Kan. Dec. 15, 1989) ("The court agrees with defendant that the order dismissing plaintiff's complaint pursuant to Rule 12(b)(6) was with

prejudice and constitutes a determination that the defendant was wrongfully enjoined.").

B. WHETHER, AND TO WHAT EXTENT, THE TRO DAMAGED DEFENDANTS

Defendants request disbursement from the TRO security bond for the following costs relating to identifying responsive documents that were plausibly incurred in order to comply with the TRO: (1) $8,030 in legal fees related to analyzing and attempting to comply with the TRO's production requirement; and (2) $16,500 worth of Buchanan's labor in attempting to identify and locate materials responsive to the document-production request. In support of these figures, Defendants provide the affidavits of Boller and Buchanan. Boller's affidavit includes an estimate of the hours billed by various attorneys at the firm for work relating to TRO compliance as well as the billable rates for these attorneys. Buchanan's affidavit does not contain any such calculations, and the $16,500 estimate is instead based on "the rate when [Buchanan] last charged for [his] time." (Dkt. No. 56 ¶ 11.)

The Court concludes that Defendants have "established definitively" that it was damaged by suffering attorney's fees and labor costs. Smart Study Co. v. Bichha123, No. 20 Civ. 7889, 2020 WL 7137338, at *3 (S.D.N.Y. Dec. 7, 2020) (citation omitted). However, the Court is not persuaded that the estimate of damages Defendants present is substantiated

9

by evidence in the record. "In assessing the quantum of damages, the Court had hoped to rely upon invoices, attorney's time entries, . . . and the like." Id. "Nevertheless, the Court must work with the evidence it has, and the amount need not be proven mathematically." Id. (internal quotation marks and citation omitted).

1.  Legal Fees

The Court accepts Boller's representation that Defendants incurred approximately $8,030 in attorneys' fees for compliance-related legal work. Moreover, the Court concludes that, contrary to KDH's contention, these fees are recoverable. Attorneys' fees and legal expenses incurred in complying with an injunction, including fees for legal advice regarding compliance with an injunction, are recoverable. See Nokia Corp., 645 F.3d at 560.

KDH argues that calls with its counsel "discussing limiting the TRO scope and extending time to produce, as well as Defendants' self-proclaimed attempts to locate documents, were not part of the TRO compliance and rather were a part of Defendants' litigation strategy either to (a) study case materials, which Defendants should have done in any case or (b) defend the case and move to lift the TRO, with which Defendants never complied." (Dkt. No. 60 at 2.) The Court is not persuaded. These actions, and the resultant legal fees,

10

stem directly from the requirement to produce certain documents and records imposed on Defendants by the TRO. KDH's argument that these costs are not recoverable because these actions were, or should have been, taken for other reasons lacks any basis in the factual record or case law.

Similarly, the Court rejects KDH's argument that it is inequitable to allow recovery for costs related to document production because "KDH's demand for inspection of additional documents was reasonable and warranted not under [sic] the investment terms and Delaware Revised Uniform Limited Partnership Act § 17-305." (Dkt. No. 60, at 3.) This argument relies on the validity of KDH's claim that it possessed a right under state law to inspect the books and records at issue. But that claim is neither before the Court nor necessary to determine for purposes of resolving the motions at hand. The Court therefore declines KDH's invitation to pass judgment on the propriety of KDH's demand for inspection of books and records under state law.

  2.  Labor Costs

As to labor costs, the Court does not accept Buchanan's representation that Defendants incurred $16,500 in labor costs as a result of the thirty hours he spent on document-production work. Buchanan bases this $16,500 figure on the rate he last charged for his time ($550) when he was a

11

practicing attorney earlier in his career. But while Buchanan's time may have been worth that rate when he was a practicing attorney years earlier, the Court has no information from which to conclude that Buchanan's time would still be valued at that rate given that he is no longer a practicing attorney and functions in a different capacity as a principal of Iterative Capital Management, L.P. In other words, Buchanan's "approach to calculating labor costs is too speculative and depends too much on information that was not provided to the Court in any documented fashion." Smart Study, 2020 WL 7137338, at *4. Thus, although the Court concludes that Defendants incurred some amount of damages as a result of Buchanan's labor, because it lacks sufficient evidence of the exact amount incurred, the Court will award a reduced amount of the total requested amount.

The Court will reduce Buchanan's estimate of $16,500 by 40% and award $9,900 for time spent identifying and locating responsive materials. In other cases in which inadequate substantiation was provided, courts have reduced the amount of damages requested to a more conservative figure. See id. (awarding a lower-than-requested rate of $15 per hour for a store owner's labor costs). Given that Buchanan no longer bills an hourly rate, it is difficult to estimate the cost of his labor here. However, the Court factors in considerations

12

such as Buchanan's senior role as a principal, as well as the difficulty involved in identifying and reviewing responsive documents, in reaching the determination that a $9,900 award would adequately compensate Defendants for Buchanan's time.

In sum, the Court will award Defendants $8,030 for attorney's fees and $9,900 for labor, for a total of $17,930 in damages incurred as a result of complying with the TRO. "While these calculations are necessarily imprecise given the evidence submitted, the Court finds that they appropriately compensate [Defendants] for [their] losses." Id.

## IV. ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion filed by Defendants Iterative Capital Management L.P.; Iterative Capital GP, LLC; Iterative OTC, LLC; Iterative Mining, LLC; Brandon Buchanan; and Christopher Dannen to recover the bond posted by Plaintiff KDH Consulting Group LLC ("KDH") pursuant to Rule 65(c) of the Federal Rules of Civil Procedure (Dkt. No. 54) is **GRANTED in part**, and the Clerk's Office is respectfully directed to deduct $17,930 from the bond posted by KDH in KDH Consulting Group v. Iterative Capital Management, LP, 20 Civ. 3274, and to promptly disburse those funds to Defendants; and it is further

13

**ORDERED** that the motion filed by KDH for return of its bond (Dkt. No. 35) is **GRANTED in part,** and the Clerk's Office is respectfully directed to return to KDH the remainder of the bond posted by KDH in this case once $17,930 has been deducted as explained above.

**SO ORDERED.**

Dated:   New York, New York
         7 April 2021

_____
Victor Marrero
U.S.D.J.