# POLLOCK | COHEN LLP

60 BROAD STREET, 24TH FLOOR
NEW YORK, NEW YORK 10004
(212) 337-5361

*CONTACT:*
Raphael Janove
Rafi@PollockCohen.com
(215) 667-8607

October 13, 2021

Judge Victor Marrero
United State District Judge
Southern District of New York
500 Pearl Street, Suite 1610
New York, NY 10007

      Re: *KDH Consulting Group, LLC v. Iterative Capital Management, L.P.*, et al, 20-cv-3274

Dear Judge Marrero:

Plaintiff writes to inform the Court that on October 8, 2021, it filed a complaint in Delaware against some of the same Defendants as in the above-captioned Action (the "New York Action"), including the Individual Defendants Brandon Buchanan and Christopher Dannen. *See* Case No. 2021-0868 (Del. Ch.) (the "Delaware Suit").

The Delaware Suit seeks to enforce the Amended and Restated Limited Partnership Agreement ("LPA") of Iterative Capital, L.P. (the "Partnership"). Plaintiff brings claims for breach of contract, specific performance, unjust enrichment, and conversion arising from Defendants' refusal to relinquish, and transfer to Plaintiff, assets to which it is entitled as a former limited partner of the Partnership. The complaint is attached hereto as Exhibit A.

Plaintiff's prior counsel attempted to redeem these assets by letter motion in the New York Action, but this Court held that it "lack[ed] jurisdiction over claims arising from the parties' contract in light of the forum-selection clause contained therein." ECF No. 68 at 2. Since then, Defendants have continued to withhold these assets, even though the assets' value exceeds the damages Plaintiff seeks in the New York Action. Plaintiff therefore had no choice but to file the Delaware Suit.

Hon. Victor Marrero
October 13, 2021
Page **2** of **2**

      Plaintiff will keep this Court apprised as the Delaware Suit develops.

                Respectfully submitted,

                _/s/ Raphael Janove_
                Adam Pollock
                Raphael Janove
                **Pollock Cohen LLP**
                60 Broad Street, 24th Fl.
                New York, NY 10004
                Telephone: (212) 337-5361
                Adam@PollockCohen.com
                Rafi@PollockCohen.com
                _Attorneys for Plaintiff_

cc:    All counsel of record (via ECF)

Enclosures

Exhibit A

EFiled:  Oct 08 2021 01:21PM EDT
Transaction ID 66998014
Case No. 2021-0868-

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| KDH CONSULTING GROUP LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ITERATIVE POW HOLDINGS, LLC, | )   C.A. No._____ |
| ITERATIVE CAPITAL MANAGEMENT, L.P., | ) |
| ITERATIVE CAPITAL GP, L.L.C., BRANDON | ) |
| BUCHANAN, and CHRISTOPHER DANNEN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

---------------------------------------------------------

## VERIFIED COMPLAINT

Plaintiff KDH Consulting Group LLC ("KDH"), by its attorneys, as for this

Verified Complaint against Defendants Iterative PoW Holdings, LLC (as successor

to Iterative Capital, L.P.), Iterative Capital Management, L.P., Iterative Capital GP,

L.L.C., Brandon Buchanan, and Christopher Dannen (collectively, "Defendants"),

alleges, as to Defendants and their conduct, and upon information and belief, as

follows:

### NATURE OF THE ACTION

1.     KDH brings this action pursuant to 6 *Del. C.* § 17-111 to enforce the

Amended and Restated Limited Partnership Agreement ("LPA") of Iterative Capital,

L.P. (the "Partnership"), and for breach of contract, specific performance, unjust

enrichment, and conversion arising from Defendants' refusal to relinquish, and transfer to Plaintiff, assets to which it is entitled as a former limited partner of the Partnership.

2.      No later than May 15, 2020, Defendants "mandatorily redeemed" Plaintiff's Partnership interest in connection with an exchange offer and conversion of the Partnership into a Limited Liability Company (Iterative PoW Holdings, LLC), which Defendants orchestrated over Plaintiff's objections (the "Restructuring"). Plaintiff did not elect to become a member of Iterative PoW Holdings, LLC, nor agree to be subject to the terms of its operating agreement.

3.      Pursuant to the terms of the Restructuring, as set forth in consent solicitations distributed by Iterative Capital Management, L.P. and Iterative Capital GP, L.L.C. (the Partnership's Investment Manager and General Partner, respectively), and as approved by a majority of partners of the Partnership, Plaintiff, was entitled to receive an in-kind distribution of its pro rata share of cryptocurrency and crypto mining assets previously held by Iterative Capital Master, L.P. and Iterative Mining Master, L.P. (together, the "Master Funds").[1]

4.      However, after mandatorily redeeming Plaintiff from the Partnership and completing the Restructuring, Defendants simply kept the entirety of the assets

---

[1] Prior to the Restructuring, the Partnership was a partner in the Master Funds.

Plaintiff was entitled to receive.  Plaintiff was recently informed that its assets are now held by defendant Iterative PoW Holdings, LLC.  Moreover, Defendants claim to have sold certain of Plaintiff's assets to the detriment of Plaintiff (though Defendants have made inconsistent statements and had refused to provide details regarding what they have done with Plaintiff's assets from May 2020 to the present).

5.      It appears Defendants refused to return Plaintiff's assets as retaliation for a separate lawsuit that Plaintiff filed in the U.S. District Court for the Southern District of New York (the "NY Action") against the principals of the Partnership asserting, *inter alia*, claims for violation of federal securities laws arising from Plaintiff's initial investment in the Partnership.[2]

6.      However, nothing in the LPA authorized the Defendants to simply take Plaintiff's assets as an offset to litigation expenses incurred in the NY Action, or elsewhere.  To the contrary, in addition to lacking an attorney fee-shifting provision, the LPA specifically prohibits allocating litigation expenses to any individual partner.

7.      Accordingly, Plaintiff brings suit to enforce the LPA, and for breach of contract, unjust enrichment, and conversion, seeking declaratory relief, specific

---

[2] *KDH Consulting Group LLC v. Iterative Capital Management L.P. Et Al.*, Case No. 20-cv-3274 (S.D.N.Y.).  Plaintiff's complaint in the NY Action was sustained in part and the case is currently in discovery.

performance, damages and attorneys' fees, for Defendants' misappropriation of Plaintiff's assets.

## THE PARTIES

8.     Plaintiff KDH Consulting Group LLC is a New York limited liability company with a principal place of business in New York, New York.  On January 12, 2018, KDH invested $1,000,000 to become a limited partner in Iterative Capital L.P. (the "Partnership").

9.     Defendant Iterative PoW Holdings, LLC ("PoW Holdings") is a Delaware limited liability company with its principal place of business in New York, New York.  PoW Holdings is the successor to the Partnership, which was converted into a Delaware limited liability company on May 15, 2020.

10.    Defendant Iterative Capital Management L.P. (the "Investment Manager") is a Delaware limited partnership with its principal place of business in New York, New York. The Investment Manager was the investment manager of the Partnership, and, on information and belief, is now the investment manager for PoW Holdings.

11.    Defendant Iterative Capital GP, L.L.C. (the "General Partner") is a Delaware limited liability company with its principal place of business in the state of New York, New York.  It was the general partner of the Partnership.

12.     Defendant Brandon Buchanan ("Buchanan") is or was, at least until July 2021, the managing member of the General Partner and the general partner of the Investment Manager.  Upon information and belief, he resides in New York.

13.     Defendant Christopher Dannen ("Dannen") is the managing member of the General Partner and the general partner of the Investment Manager.   Upon information and belief, he resides in New York.

14.     Buchanan and Dannen are collectively referred to as the "Individual Defendants."

15.     Upon information and belief, at all relevant times and until present, the Individual Defendants owned, managed and/or controlled each other Defendant.

## JURISDICTION

16.     This Court has subject matter jurisdiction pursuant to 6 *Del. C.* § 17-111, which provides that "[a]ny action to interpret, apply or enforce the provisions of a partnership agreement, or the duties, obligations or liabilities of a limited partnership to the partners of the limited partnership . . . or any other instrument, document, agreement or certificate contemplated by any provision of this chapter, may be brought in the Court of Chancery."

17.     This Court has personal jurisdiction over Defendants PoW Holdings and the General Partner, pursuant to 6 *Del. C.* § 18-105.

5

18.     This Court has personal jurisdiction over the Investment Manager pursuant to 6 *Del. C.* § 17-105.

19.     This Court has personal jurisdiction over the Individual Defendants pursuant to 10 Del. C. § 3104.  Each of the Individual Defendants are identified in the LPA as the "Principals" of the Partnership, and upon information and belief, are managers of, and ultimately control, PoW Holdings and the General Partner.  Each of the Individual Defendants sought investor consent to restructure the Delaware partnership into a limited liability company.  Additionally, Buchanan: (i) signed the LPA and "consent[ed] to the exclusive jurisdiction and venue for any action arising out of [the LPA] in the Delaware Court of Chancery," in section 8.5 of the LPA.  Furthermore, Buchanan filed the Certificate of Conversion and Certificate of Formation in Delaware in order to effect the Restructuring, which was critical to divesting Plaintiff of its property.

## SUBSTANTIVE ALLEGATIONS

20.     In late 2017, the Individual Defendants offered Plaintiff an investment opportunity in a "hedge fund-like" cryptocurrency investment and trading fund whose "primary investment strategy . . . is to purchase and hold coins".

21.     As set forth in the Private Placement Memorandum (the "PPM"), the Partnership would invest its assets in non-parties Iterative Capital Master, L.P. (the

"Capital Master Fund") and Iterative Mining Master, L.P. (the "Mining Master Fund," collectively "The Master Funds").[3]

22.    The Capital Master Fund would purportedly "focus solely on investment strategies that seek to generate the highest level of profits through direct investments in Coins."

23.    The Mining Master Fund would invest in assets and mining equipment and would generate cryptocurrency coins.  It would also "focus on meeting the demand for specific Coins from Iterative OTC[, L.L.C.]," which was a separate, over-the-counter cryptocurrency trading business wholly owned by the Investment Manager.  Iterative OTC had the right of first refusal to purchase coins generated by the Mining Master Fund.

24.    On January 12, 2018, KDH invested $1,000,000 and became a limited partner in the Partnership.  A copy of the Partnership's Amended and Restated Limited Partnership Agreement ("LPA") is attached as Exhibit A.

25.    In a December 20, 2019 letter, Defendants informed investors that "[t]he current Fund structure has handcuffed us and prevented us from being able to scale our mining operation. As such, during Q1 2020, we will embark on an effort

---

[3] Non-party Iterative Capital, Ltd., a Cayman Islands exempted company, also invested in the Master Funds on behalf of offshore investors.

to convert the Fund from an investment fund structure to a corporate structure and consolidate it with our other flagship business, the OTC desk (Iterative OTC, LLC)."

26.     Defendants wrote that they had also "suspend[ed] the right of all investors to withdraw or redeem from the Fund in accordance with the applicable governing documents of the Fund."

27.     On March 1, 2020, Defendants solicited consents from limited partners of the Partnership to approve the "[c]onversion and [c]onsolidation of [the] Iterative Capital Fund Structure" by means of a "Consent and Disclosure Letter" ("March 1, 2020 Consent Solicitation").  The March 1, 2020 Consent Solicitation explained that:

> Iterative has organized a series of transactions with respect to the Feeder Funds, and Iterative Capital Master, L.P. (the "**Capital Master Fund**") and Iterative Mining Master, L.P. (the "**Mining Master Fund**" and together with the Capital Master Fund, the "**Master Funds**"), the two "master funds" through which the Feeder Funds directly or indirectly invest all of their investible assets (such Feeder Funds, together with the Master Funds, the "**Fund Complex**"). An alternative to a full dissolution and liquidation of the Fund Complex, these transactions are designed to result in, at each Investor's option: (1) immediate liquidity for Investors who wish to exit their investment ("**Exiting Investors**") or (2) the ability for Investors who wish to continue their investment in the Fund Complex' mining activities ("**Continuing Investors**") to do so through a more streamlined and cost-efficient structure, as described in more detail below (the "**Proposed Transactions**").

> * * *

If the requisite approvals are received and the Proposed Transactions are consummated, the following will occur:

- Iterative Capital, L.P. (the "**Domestic Fund**"):

  o *Exiting Investors:*

    ▪ The Master Funds will sell a sufficient amount of their crypto assets to generate sufficient cash proceeds to make distributions in full to all Exiting Investors;

    ▪ Exiting Investors in the Domestic Fund will then receive an amount equal to (a) the net asset value of their investment in the Domestic Fund as of December 31, 2019 (as calculated in accordance with the limited partnership agreement of the Domestic Fund, the "**Domestic LPA**"), less (b) their pro rata share of the costs and expenses associated with the Proposed Transactions (including any costs associated with the sale of the Master Funds' crypto assets and reasonable reserves established by the Investment Manager to pay for anticipated final audit expenses of the constituents of the Fund Complex being dissolved); and

    ▪ Following the distribution described above, Exiting Investors will be redeemed in full from the Domestic Fund.

  o *Continuing Investors*:

    ▪ Following the redemption of the Exiting Investors, as described above, the Domestic Fund will be converted to a Delaware limited liability company ("**Mining NewCo**") and governed by the operating agreement attached hereto as Appendix II to Exhibit C (the "**Mining NewCo LLCA**");

    ▪ Mining NewCo will be treated as a partnership for U.S. federal income tax purposes;

    ▪ Each Master Fund will distribute the Continuing Investors' pro rata share of such Master Fund's

9

> > assets to Mining NewCo (i.e., all remaining cryptocurrency positions and mining equipment); and
>
> - ▪ Following the occurrence of the transactions described below with respect to the Offshore Fund, the Master Funds will be promptly wound-up (in the case of the Mining Master Fund) or struck-off (in the case of the Capital Master Fund) and dissolved.

> > \* \* \*

> The Proposed Transactions have been approved by Iterative. In order to consummate the Proposed Transactions generally, we are seeking the approval of each Investor. <u>Investors who do not timely respond or who do not elect to be either an Exiting Investor or Continuing Investor will be mandatorily redeemed prior to the effectiveness of the Proposed Transactions through an in-kind distribution of their pro rata share of the Master Funds' assets (and bear any cost and tax liability associated with such in-kind distribution). Such in-kind distribution is expected to consist of both crypto assets (in the form of a hardware wallet) and mining equipment (disconnected from the internet and packaged in a shipping container at the expense of the receiving Investor).</u>

(emphasis in original). A copy of the March 1, 2020 Consent Solicitation is attached hereto as Exhibit B.[4]

28.   On March 18, 2020, Defendants communicated to Plaintiff and the other limited partners of the Partnership via email that they had determined to extend

---

[4] The "conversion and consolidation of the Iterative Capital Fund Structure" described in the March 1, 2020 Consent Solicitation (and in a subsequent consent solicitation discussed below) are referred to herein as the "Restructuring".

the deadline to receive written consents approving the Restructuring until April 27, 2020.

29.     On April 14, 2020, Defendants again solicited consents from limited partners of the Partnership to approve the "[c]onversion and [c]onsolidation of [the] Iterative Capital Fund Structure" by means of a second "Consent and Disclosure Letter" ("April 14, 2020 Consent Solicitation").  A copy of the April 14, 2020 Consent Solicitation is attached hereto as Exhibit C.

30.     Other than providing updated net asset values for the Feeder Funds and moving the deadline for consents, the April 14, 2020 Consent Solicitation did not materially differ from the March 1, 2020 Consent Solicitation.  *See, e.g.*, Ex. C at p. B-2:

> **OTHER THAN WITH RESPECT TO THE CHANGE IN VALUATION OF THE FUND COMPLEX' ASSETS DESCRIBED ABOVE AND THE EXTENDED DEADLINE BY WHICH INVESTOR WRITTEN CONSENTS MUST BE RECEIVED, ALL TERMS AND ASSOCIATED RISKS OF THE PROPOSED TRANSACTIONS WILL REMAIN THE SAME AS DESCRIBED IN THE ORIGINAL CONSENT AND DISCLOSURE LETTER.**

(emphasis in original).

31.     Like the March 1, 2020 Consent Solicitation, the April 14, 2020 Consent Solicitation stated:

11

The Proposed Transactions have been approved by Iterative. In order to consummate the Proposed Transactions generally, we are seeking the approval of each Investor. <u>Investors who do not timely respond or who do not elect to be either an Exiting Investor or Continuing Investor will be mandatorily redeemed prior to the effectiveness of the Proposed Transactions through an in-kind distribution of their pro rata share of the Master Funds' assets (and bear any cost and tax liability associated with such in-kind distribution). Such in-kind distribution is expected to consist of both crypto assets (in the form of a hardware wallet) and mining equipment (disconnected from the internet and packaged in a shipping container at the expense of the receiving Investor).</u>

32.     Plaintiff did not consent to the Restructuring and/or opt to become a Continuing Investor or Exiting Investor.

33.     Instead, on April 27, 2020, Plaintiff, through prior counsel, brought a lawsuit challenging the restructuring and asserting a securities fraud claim in connection with its initial investment. *KDH Consulting Group LLC v. Iterative Capital Management L.P. Et Al.*, Case No. 20-cv-3274 (S.D.N.Y.) (the "NY Action"). The court in the NY Action dismissed the state law claims but sustained, in part, the securities fraud claim. This case is currently in discovery.

34.     Defendants proceeded with the Restructuring. On May 15, 2020, the Partnership filed, with the Delaware Secretary of State, a Certificate of Formation of Iterative PoW Holdings, LLC and a Certificate of Conversion from a Delaware Limited Partnership to a Delaware Limited Liability Company which converted the

Partnership into Iterative PoW Holdings, LLC, a Delaware limited liability company. *See* Exhibit D, hereto.

35.    However, even though Plaintiff was "mandatorily redeemed [from the Partnership] *prior to* the effectiveness of the Proposed Transactions," (emphasis added), Defendants failed to distribute to Plaintiff, its "in-kind distribution of [its] pro rata share of the Master Funds' assets."

36.    On May 8, 2020, the Individual Defendants informed Plaintiff that its in-kind distribution consisted of the following cryptocurrency assets:

**KDH - In Kind Distribution**

CRYPTOCURRENCIES

| Cryptocurrency | Quantity | 3/31 NAV | Amount in-Kind |
|---|---|---|---|
| BTC | 1.5 | $ 6,438.645 | $ 9,699.19 |
| DCR | 7,328.8 | $ 11.522 | $ 84,439.16 |
| ETC | 452.5 | $ 4.947 | $ 2,238.73 |
| ETH | 40.1 | $ 133.594 | $ 5,356.05 |
| LTC | 7.8 | $ 39.300 | $ 305.95 |
| RVN | 63,834.0 | $ 0.015 | $ 979.93 |
| SC | 11,051,349.0 | $ 0.0013 | $ 14,110.80 |
| VTC | 237.8 | $ 0.210 | $ 49.93 |
| VBK | 7,124.0 | $ 0.003 | $ 19.90 |
| XMR | 114.8 | $ 47.779 | $ 5,485.10 |
| ZEL | 121,227.6 | $ 0.03 | $ 3,441.77 |
| ZEN | 40.1 | $ 5.64 | $ 225.90 |
| BNB* | 0.2 | $ 12.40 | $ 2.11 |
| **TOTAL** | | | **$ 126,352.42** |

37.    The Individual Defendants also provided Plaintiff with the following list of Plaintiff's mining equipment assets:

| MINING EQUIPMENT | |
|---|---|
| **ASSET** | **Quantity** |
| GPU Miners | 22 |
| Bitmain L3 Antminer | 3 |
| Innosilicon D9 Machines | 3 |
| Obelisk DCR-1 | 17 |
| Obelisk SC-1 Batch 1 | 4 |
| Whatsminer D1 (48T) 2018-12 | 16 |
| Whatsminer D1 (48T) | 16 |
| Whatsminer D1 (44T) | 6 |
| Obelisk SC-1 Batch 2 | 22 |
| **TOTAL** | **109** |

38.     The cryptocurrency assets and mining equipment assets identified in paragraphs 36–37 are referred to herein as "Plaintiff's Assets."

39.     The Individual Defendants wrote that Plaintiff's "limited partnership interest has been effectively redeemed as of April 28, 2020." However, they refused to relinquish Plaintiff's Assets, explaining that "the in-kind proceeds . . . are being held pending resolution of the [NY Action] in accordance with the terms of the limited partnership agreement."

40.     Contrary to Defendants' representations, the LPA does not permit them to withhold Plaintiff's Assets.  And the LPA has no provisions forcing Plaintiff, a former limited partner of a non-existent partnership, into membership of Defendant PoW Holdings, let alone justifying PoW Holdings' continued retention of Plaintiff's Assets.

41.   The LPA does not contain any attorney fee-shifting provision, nor anything justifying charging any litigation expenses or liabilities to a single limited partner.

42.   Instead, the LPA specifically provides that litigation costs are allocated to the "Partnership" as a whole, and not to any individual investor.  LPA § 4.2(b) states: "Expenses payable by the Partnership include . . . (vii) the costs, fees and expenses of legal counsel and any other litigation or investigation involving Partnership activities."

43.   Furthermore, the LPA's indemnification provision expressly prohibits charging any individual limited partner with expenses.  LPA § 4.5(b) states: "The Partnership (***but not the Partners individually***) must indemnify each Indemnified Person to the fullest extent permitted by law against any cost, expense (including reasonable attorneys' fees), judgment or liability incurred by or imposed upon it in connection with any action . . ."

44.   Finally, Defendants sought and obtained the approval of the Partnership's partners pursuant to the Consent Solicitations, which expressly provided that partners like Plaintiff who did not choose to be an "Exiting Investor" or a "Continuing Investor" would be mandatorily redeemed prior to the

Restructuring "through an in-kind distribution of their pro rata share of the Master Funds' assets."

45.     Defendants' continued bad-faith retention of Plaintiff's Assets lays bare their true motivation: to retaliate against Plaintiff for suing to stop the Restructuring and to vindicate its rights under the federal securities laws.

46.     Defendants are unjustifiably using Plaintiff's Assets as a piggy bank to finance the defense costs of litigating a securities lawsuit.

47.     Plaintiff has repeatedly tried, both formally and informally, to demand the transfer of Plaintiff's Assets to Plaintiff.  Defendants have not budged, and even still refuse to explain to Plaintiff what they have done with Plaintiff's Assets after May 2020.

48.     For instance, on March 16, 2021, Plaintiff, through its former counsel, formally requested the immediate return of Plaintiff's Assets.  Plaintiff advised that "Iterative's withholding of the admitted liquidation proceeds, which are subject to depreciation in value, may increase Plaintiff's damages significantly."

49.     At the time of the March 17, 2021, email, the value of the cryptocurrency portion of Plaintiff's Assets alone was over $1.6 million, not counting any mining assets.

16

50.    On July 9, 2021, Plaintiff's counsel again formally wrote to Defendants demanding return of Plaintiff's Assets, noting that as the date of the letter, KDH's cryptocurrency assets alone were worth at least $1.4 million.

51.    On Friday, July 16, 2021, Defendants, through counsel, disclosed for the first time that, at some point late in 2020, they had purportedly liquidated more than half of Plaintiff's cryptocurrency assets to finance their litigation costs.

52.    On August 17, 2021, Defendants issued Plaintiff a Schedule K-1 (IRS Form 1065) from Iterative POW Holdings, LLC, even though Plaintiff is not a member of that entity and was mandatorily redeemed from the Partnership prior to the Partnership's conversion to a limited liability company.

53.    Defendants have failed to account to KDH whether Defendants used Plaintiff's Assets in any way, whether Defendants segregated them from other assets, who had custody of the assets, whether Plaintiff's pro rata share of the mining equipment was unplugged and segregated from the rest of the mining operations, or whether Defendants continued to utilize Plaintiff's equipment for their new mining venture.

54.    In sum, Defendants refused to distribute Plaintiff's Assets to Plaintiff or even to explain what they have done with Plaintiff's Assets since May 2020. Accordingly, Plaintiff has no choice but to commence this Action.

17

## COUNT I – DECLARATORY JUDGMENT

55.     Plaintiff re-alleges and incorporates by reference each of the previous Paragraphs of their Complaint.

56.     10 *Del. C.* §§ 6501 et seq. and 6 *Del. C.* § 17-111 empower the Court of Chancery to make declaratory judgments on the rightful interpretation of contracts, including Delaware limited partnership agreements.  Under the Delaware Declaratory Judgment Act, in addition to a declaratory judgment, "[f]urther relief based on a declaratory judgment or decree may [also] be granted whenever necessary or proper." 10 *Del. C.* § 6508.

57.     There is a real, present, and justiciable controversy between the parties over whether Plaintiff was "mandatorily redeemed" from Iterative Capital, L.P. and whether Plaintiff is entitled to a distribution of Plaintiff's Assets, as described in paragraphs 36–37, above.

58.     Plaintiff hereby pleas for a declaratory judgment that:

    a.      Plaintiff was redeemed as a limited partner of Iterative Capital, L.P. on April 28, 2020;

    b.      upon the redemption of Plaintiff's limited partnership interest in Iterative Capital, L.P. and pursuant to the terms of the Consent

Solicitations and the Restructuring, Plaintiff was entitled to a distribution of Plaintiff's Assets;

c.    Defendants were not entitled to retain, and have wrongfully retained and converted Plaintiff's Assets in bad faith;

d.    any purported transfer of title to Plaintiff's Assets are invalid, null, and void;

e.    any other action(s) taken by the Defendants whatsoever with respect to Plaintiff's Assets, to the extent those actions purport to further convey, transfer or encumber the rights associated with them to persons other than the Plaintiff, are also null and void; and

f.    any other declaration the Court finds appropriate to effect justice.

59.    Plaintiff does not have an adequate remedy at law.

## COUNT II – BREACH OF CONTRACT AND SPECIFIC PERFORMANCE
### (Against all Defendants)

60.    Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

61.    Plaintiff, as a limited partner of the Partnership and pursuant to the terms of the LPA and the Consent Solicitation, was entitled to receive Plaintiff's

Assets when Plaintiff was mandatorily redeemed from the Partnership, prior to the Partnership converting into Iterative POW Holdings, LLC.

62.     Defendants have acted in bad faith and wrongfully withheld Plaintiff's Assets in violation of the LPA and the terms of the Consent Solicitation.

63.     The LPA and the terms of the Consent Solicitations mandate that Defendants distribute Plaintiff's Assets to Plaintiff.

64.     Plaintiff does not have an adequate remedy at law.

## COUNT III – UNJUST ENRICHMENT

### (Against all Defendants)

65.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

66.     Plaintiff, as a limited partner of the Partnership and pursuant to the terms of the Consent Solicitation, was entitled to receive Plaintiff's Assets when it was mandatorily redeemed from the Partnership, prior to the Partnership converting into Iterative POW Holdings, LLC.

67.     Defendants, by and through PoW Holdings, have acted in bad faith and wrongfully withheld Plaintiff's Assets.

68.     Defendants, by and through PoW Holdings, have wrongfully profited from withholding Plaintiff's Assets for their own use and profit.

69.     Defendants have therefore unjustly retained a benefit to the loss of Plaintiff, and their retention of Plaintiff's Assets is against the fundamental principles of justice or equity and good conscience.

70.     Plaintiff does not have an adequate remedy at law.

## COUNT IV – CONVERSION

### (Against all Defendants)

71.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

72.     Plaintiff, as a limited partner of the Partnership and pursuant to the terms of the Consent Solicitation, was entitled to receive Plaintiff's Assets when it was mandatorily redeemed from the Partnership, prior to the Partnership converting into Iterative POW Holdings, LLC.

73.     Instead of distributing Plaintiff's Assets to Plaintiffs, Defendants, by and through PoW Holdings, simply kept Plaintiff's assets for their own use and profit.

74.     Among other things, Defendants have claimed to have sold some of Plaintiff's Assets.  On information and belief, Defendants have also converted the use of Plaintiff's mining equipment and may have used those mining assets to generate cryptocurrency and profit thereby.

21

75.     Plaintiff does not have an adequate remedy at law.

**WHEREFORE**, Plaintiff demands a judgment as follows:

a)  a declaration that Defendants have breached the LPA, acted in bad faith and wrongfully refused to return Plaintiff's assets;

b)  an order awarding Plaintiff the relief of specific performance, and ordering Defendants to deliver to Plaintiff, the cryptocurrency and mining equipment assets identified in paragraphs 36-37, above;

c)  an accounting for any coins and related profits generated by the use of Plaintiff's mining equipment;

d)  determining and awarding to Plaintiff the damages it has sustained, as a result of the misconduct set forth above, including the entire value of Plaintiff's assets as of March or July 2021, whichever is higher, and the value of any coins generated by Plaintiff's mining equipment;

e)  awarding to Plaintiff restitution from the Defendants and ordering disgorgement of all profits, benefits, and other compensation obtained by them;

f)  awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses;

g)  awarding pre- and post-judgment interest; and

h)  granting such other and further relief as the Court deems just and equitable.

Dated: October 8, 2021

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (#3569)
**DELEEUW LAW LLC**
1301 Walnut Green Road
Wilmington, DE 19807
Telephone: (302) 274-2180
Facsimile: (302) 351-6905
Email: brad@deleeuwlaw.com

OF COUNSEL

**POLLOCK COHEN LLP**
Raphael Janove
60 Broad St., 24th Floor
New York, NY 10004
Desk: (215) 667-8607
Office: (212) 337-5361
Email: rafi@pollockcohen.com